KEKER & VAN NEST, LLP
JOHN W. KEKER - #49092
JON B. STREETER - #101970
DARALYN J. DURIE - #169825
MICHAEL S. KWUN - #198945
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

Attorneys for Defendant
GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| OVERTURE SERVICES, INC., a Delaware corporation, | Case No. C 02-01991 CRB (EDL) |
| Plaintiff, | **GOOGLE'S REPLY TO OVERTURE'S FURTHER OPPOSITION TO MOTION FOR AN ORDER EXTENDING TIME TO SERVE INITIAL INVALIDITY CONTENTIONS** |
| v. | |
| GOOGLE INC., a California corporation, | Date: December 18, 2002 |
| Defendant. | Time: 3:00 p.m.<br>Dept: Courtroom E, 15th Floor<br>Judge: Hon. Elizabeth D. Laporte |

## I.    INTRODUCTION

Overture cannot deny that the claim chart it submitted under Patent L.R. 3-1(c) provides

no meaningful information beyond identifying the asserted claims and the accused

instrumentality – information that is <u>independently</u> required by subsections (a) and (b) of Patent

L.R. 3-1. If, as Overture contends, its claim chart complies with Patent L.R. 3-1(c), then the

claim chart requirement is superfluous.

## II.    ARGUMENT

**A.    Overture's claim chart has not disclosed, as required by Patent L.R. 3-1(c), the elements of the Google system that allegedly correspond to the limitations of the asserted claims.**

The requirements of subsections (a), (b), and (c) of Patent L.R. 3-1 are straightforward.

1

1   Every patent infringement claim raises the question whether an asserted patent claim "reads" on

2   an accused product.  *See, e.g., Amhil Enters., Ltd. v. Wawa, Inc.,* 81 F.3d 1554, 1562 (Fed. Cir.

3   1996) ("Literal infringement of a claim exists . . . when the properly construed claim reads on the

4   accused device exactly.").  The plaintiff's task is to read each limitation of each asserted claim

5   onto a corresponding element of each accused instrumentality.  *See, e.g., Allen Eng'g Corp. v.*

6   *Bartell Indus.,* 299 F.3d 1336, 1344 (Fed. Cir. 2002) (determining infringement requires a

7   comparison of the "claim limitations to the elements of the accused device").  Subsections (a),

8   (b), and (c) of Patent L.R. 3-1 require the patentee to disclose how it intends to accomplish this

9   task.  Subsection (a) asks, "What claims read on the defendant's products or services?"

10  Subsection (b) asks, "What products or services do those claims read on?"  And subsection (c)

11  asks, "What element of each accused instrumentality corresponds to each limitation of each

12  asserted claim?"  *See* Patent L.R. 3-1(c) (Overture must provide a claim chart "identifying

13  specifically where each element of each asserted claim is found within each Accused

14  Instrumentality").

> **1.    Overture has failed to identify specific elements in the Google AdWords Select service.**

15
16

17         Overture's disclosures answer the first two questions, but only dance around the third.

18  Four examples – all from the portion of Overture's claim chart that addresses the very first claim

19  – are illustrative:

20

| Selected Limitations Recited by Claim 1 of U.S. Patent No. 6,269,361 | Elements of the Google AdWords Select Service Identified by Overture's Claim Chart |
| --- | --- |
| receiving a search request from the searcher; | AWS receives a search request from the searcher. |
| ordering the identified search listings into a search result list in accordance with the values of the respective bid amounts for the identified search listings; | AWS gathers all search listings that match a particular search term and sorts the listings in accordance with their respective bid amounts. |
| receiving a retrieval request from the searcher to retrieve information associated with a search listing in the search result list; and | AWS receives a retrieval request associated with a search listing. |

| Selected Limitations Recited by Claim 1 of U.S. Patent No. 6,269,361 | Elements of the Google AdWords Select Service Identified by Overture's Claim Chart |
|---|---|
| recording a retrieval request event including account identification information corresponding to the network information provider, to permit maintenance of accurate account debit records. | AWS records a retrieval request event including account identification information to permit maintenance of accurate account debit records. |

*See* Kwun Declaration in Support of Google's Motion ("Kwun Decl."), Exh. 4 (filed Oct. 7, 2002).  Overture's claim chart fails to disclose that which it must disclose:  the specific element of Google's AdWords Select service ("AWS") that Overture contends corresponds to each limitation of each asserted claim.  *See* Patent L.R. 3-1(c).  What element of AWS, for example, satisfies claim 1's "receiving a search request from the searcher" limitation?  Overture merely asserts that AWS receives a search request from the searcher.  But where "specifically" in AWS is that element?  Overture does not say.

In both its Opposition and its Further Opposition, Overture notes that it cited several Google web pages as part of its Preliminary Infringement Contentions.  *See* Oppo. at 2:8-13 (filed Oct. 10, 2002); Further Oppo. at 3:28-4:2 (filed Dec. 9, 2002); *see also* Kwun Decl., Exh. 3 at 2:12-15; McMahon Declaration in Support of Overture's Opposition ("McMahon Decl."), Exh. 1 (filed Oct. 10, 2002).  However, nowhere in its Preliminary Infringement Contentions, its Opposition, or its Further Opposition does Overture offer a comparison on an element-by-element basis of the asserted claims and those web pages.  *See* Patent L.R. 3-1(c) (requiring identification "specifically where <u>each element</u> of each asserted claim is found" (emphasis added)).  The entire point of Patent L.R. 3-1(c) is to require an element-by-element comparison, and therefore Overture's <u>non-specific</u> citation to several Google web pages  (without reference to specific claim limitations, or even to specific claims) cannot cure the deficiencies discussed above.

### 2. Overture's claim chart is deficient to the point of asserting "infringement contentions" for claims that Overture later conceded Google does not infringe.

In its Preliminary Infringement Contentions, Overture asserted that Google infringes

every claim of the 361 patent except claims 3, 6, and 19.  Kwun Decl., Exh. 3 at 2:4-6.  For claims 31 and 32, both of which depend from independent claim 30, Overture's claim chart includes conclusory statements that AWS meets the additional limitations required by those claims:

| Claims | Elements of the Google's AdWords Select Service Identified by Overture's Claim Chart |
| --- | --- |
| **31.**  The method of claim **30**, wherein the search result list further includes at least one search listing having a bid amount of zero. | AWS includes non-paid listings on a search result list. |
| **32.**  The method of claim **30**, wherein the search result list further includes at least one search listing that is not included in the account database. | AWS includes listings on a search result list that are not included in the account database. |

*See* Kwun Decl., Exh. 4 at 7.  The day after Google filed the motion now before the Court, however, Overture informed Google that it was not in fact asserting that Google infringes claims 31 and 32, Kwun Declaration in Support of Reply ("Kwun Reply Decl."), Exh. A, thereby tacitly admitting that Overture does not believe that AWS includes the additional limitations recited by claims 31 and 32.  Overture's claim chart is so conclusory and so circular that Overture managed not to notice that it included limitations that even Overture admits are not present in AWS.

Overture flouts the rules and argues that it only needs to provide "preliminary" infringement contentions, not "detailed" contentions.  Overture's Further Oppo. at 4:19-21.  But Google seeks precisely what Patent L.R. 3-1(c) requires – a claim chart that <u>specifically</u> identifies where each claim limitation is found in AWS.

**B.    Overture has demonstrated that it is capable of providing a far more specific disclosure of its infringement contentions.**

Overture appears also to argue that any deficiencies in its claim chart should be excused because it needs further discovery before stating its specific infringement contentions.  Overture, however, provided the PTO with a sworn declaration identifying its infringement contentions (with respect to several other companies' systems) – without the benefit of discovery – in greater

4

GOOGLE'S REPLY RE MO. FOR AN ORDER EXT. TIME TO SERVE INIT. INVALIDITY CONTENTIONS
CASE NO. C 02-01991 CRB (EDL)

1  detail than it has provided in this case. And the 361 patent itself describes elements of preferred

2  embodiments by repeatedly referring to an example web page – an approach that Overture had

3  refused to take in identifying the elements of AWS that allegedly meet the limitations of the

4  asserted claims.

5          **1.      Overture stated infringement contentions with greater specificity while
               prosecuting the application for the 361 patent.**
6

7          While prosecuting the application for the 361 patent, Overture filed a "petition to make

8  special" pursuant to 37 C.F.R. § 1.102(d) to expedite the patent office's consideration of its

9  application. Kwun Reply Decl., Exh. B. Overture averred that it had made a "rigid comparison

10  between the Internet search engine services of [several alleged] infringers or potential infringers

11  and the pending claims." *Id.,* Exh. B at 2. The result of that comparison was detailed in a

12  declaration of named inventor Darren J. Davis. *Id.,* Exh. C.

13          For example, Davis stated his belief that SearchUP, Inc.'s search engine would infringe

14  then-pending claims 15 and 30. *See id.*, Exh. C at ¶ 4. Davis identified a specific screen shot

15  that, according to Davis, included a "search result list," as recited by pending claims 15 and 30.

16  *See id.,* Exh. C at ¶ 4(d) (stating that the screen shot includes the "search result list") & Exh. D

17  (screen shot that was attached as Exhibit 4 to the Davis declaration). Pending claims 15 and 30

18  both recited that the search listings must "hav[e] . . . a bid amount" (*see id.,* Exh. C at ¶ 4(b), (c)),

19  and thus, as part of his comparison, Davis stated that "[t]he bid amount, e.g. $20/year, is shown

20  for each entry." *See id.,* Exh. C at ¶ 4(d); *see also id.,* Exh. D. Similarly, to support his assertion

21  that the "authenticated login access" limitation of pending claims 15 and 30 (*see id.,* Exh. C at

22  ¶ 4(b), (c)) was present, Davis identified a specific screen shot that he asserted showed that this

23  feature was present. *Id.,* Exh. C at ¶ 4(d); *see also id.,* Exh. E (screen shot that was attached as

24  Exhibit 5 to the Davis declaration). Davis further stated his belief that SearchUP, Inc.'s service

25  satisfied the "account identifier" limitation because "[t]he user's email address is used as the

26  account identifier." *Id.,* Exh. C at ¶ 4(d).

27          Davis went on to identify screen shots from the websites for Hitsgalore.com, I Seek It,

28  and BeFirst.com that he asserted contained "search result lists." *See id.,* Exh. C at ¶ 6(a), (b), (c);

302734.03

*see also id.,* Exhs. F-H (screen shots that were attached as Exhibits 11, 17, and 23 to the Davis declaration). In asserting that Hitsgalore.com's service would infringe pending claim 1 (which also recited a "bid amount" for search listings, *see id.,* Exh. C at ¶ 7(b)), Davis stated that the money amounts, for example $0.05, shown on the Hitsgalore.com "search result list" were "bid amounts." *Id.,* Exh. C at ¶ 7(c). Davis further stated that the limitation of "receiving a search request from a searcher" was shown to be present by virtue of the "search box at the top of Exhibits 9, 10, and 11, where the searcher can type in a search request, which may comprise one or more keywords." *Id.* Davis also asserted that a "click through" would be a "retrieval request," and that such requests must be recorded (as required by pending claim 1), because otherwise the service would not be able properly to deduct the bid amount from the website owner's account. *Id.* Davis provided a similarly detailed summary of the results of his comparison between the I Seek It and BeFirst.com services and the limitations of pending claim 1. *Id.,* Exh. C at ¶ 7(d), (e).

Overture's claim chart in the case at bar provides no such detail. For example, where is the "search result list" in AWS? Overture does not say. *See, e.g.,* Kwun Decl., Exh. 4 at 1 (section of claim chart for claim 1). What in AWS satisfies the "bid amount" limitation? Again, Overture does not say. *See id.* These examples are not mere nitpicks. When a user performs a search at the www.google.com website, the web page generated may include at least three different types of results. *See* Kwun Reply Decl., Exh. I (annotated print-out of a Google web search result page). Google is entitled to know what set of results Overture asserts is a "search result list"– type 1, type 2, type 3, a combination of the three, or perhaps something else that Overture has not yet explained.

Similarly, Google's service includes at least two different types of money amounts that Overture may be accusing of being a "bid amount." *See* McMahon Decl., Exh. 1 at 1 (Google web page stating that AWS users choose a "maximum cost-per-click" for each "Ad Group," but explaining that the actual amount charged per click will vary, depending on a variety of conditions). If Overture contends that the "maximum cost-per-click" is the "bid amount," it must so state. If it contends that the actual amount charged per click is the "bid amount," Google is

1    entitled to know that.  If it contends that something else is the "bid amount," Patent L.R. 3-1(c)

2    requires Overture to identify that other thing – specifically.

3         Overture argues that Google seeks a premature statement of Overture's proposed claim

4    constructions.  *See* Overture's Further Oppo. at 4:20-23.  However, the disclosure Google seeks

5    does not require Overture to expose its claim construction contentions.  For example, if Overture

6    thinks that the AWS "maximum cost-per-click" (or the actual cost per click charged in AWS, or

7    something else in AWS) is the bid amount, it need only say so – it is not required to define "bid

8    amount," but only to state what in AWS is a "bid amount."

9        **2.**     **The 361 patent specification identifies several limitations by referring to**

10                **illustrative web pages.**

11        Overture's extensive use of screen shots in its petition to make special is no mere

12   aberration.  Indeed, the 361 patent specification repeatedly uses web pages to show where claim

13   limitations are present in the disclosed preferred embodiments.  As noted in Google's moving

14   papers, the specification identifies search result list entries by pointing to specific parts of a web

15   page.  *See* Kwun Decl., Exh. 1 at col. 18, ll. 4-8 (referring to "[s]earch result list entries **710*a*-**

16   **710*h*"**) and fig. 7 (illustrating items **710*a*-710*h*** as parts of a web page).  Various components of

17   the "search result list" and "search listings" are also identified by reference to a web page.  *See,*

18   *e.g.,* Kwun Decl., Exh. 1 at col. 17, ll. 53-63 & fig. 7.

19       **3.**     **Overture can state its infringement contentions with greater specificity**

20                **without taking further discovery.**

21        Overture claims it requires further discovery prior to making more than conclusory

22   assertions of infringement.  For example, Overture attempts to lay the blame for its minimalist

23   claim chart on Google's delayed production of documents.  *See* Overture's Oppo. at 4:12-27.  As

24   of today, however, Overture has had approximately 60,000 pages of documents produced by

25   Google for over two months, yet has not served amended Infringement Contentions.  Kwun

26   Reply Decl. ¶¶ 2-5.  Moreover, Overture itself has delayed production of documents responsive

27   to Google's document requests for over a month – and, as of today, still has not produced such

28   documents.  *Id.* ¶ 6.

GOOGLE'S REPLY RE MO. FOR AN ORDER EXT. TIME TO SERVE INIT. INVALIDITY CONTENTIONS
CASE NO. C 02-01991 CRB (EDL)

302734.03

1    Overture also argues that it cannot state anything beyond its "belief" that the limitations

2  of the asserted non-method claim (claim 14) are present in AWS.  *See* Overture's Further Oppo.

3  at 2:16-20.  Rule 11 of the Federal Rules of Civil Procedure requires that Overture have a good

4  faith basis for believing that AWS meets the limitations of claim 14.  Google is entitled to know

5  (and thus Overture must disclose) the factual basis for Overture's assertion that Google infringes

6  claim 14 – and Patent L.R. 3-1(c) requires that this disclosure be made in an element-by-element

7  manner.

8    In the context of drafting the 361 patent and during the prosecution of that patent

9  application, Overture was capable of providing specific examples illustrating the elements of its

10  claims.  It is equally capable of doing so now.

11                      **III.    CONCLUSION**

12    As demonstrated in Google's moving papers, Overture's claim chart provides little

13  information beyond that which is independently required by Patent L.R. 3-1(a)-(b).  And, for the

14  reasons given above, neither Overture's Opposition nor its Further Opposition rebuts Google's

15  showing that Overture has failed to comply fully with Patent L.R. 3-1(c).  Google therefore

16  requests that the Court grant this motion.  Specifically, Google requests that the Court order

17  Overture to serve forthwith a revised version of its Preliminary Infringement Contentions that

18  fully complies with Patent L.R. 3-1, and that Google's deadline for serving its Preliminary

19  Invalidity Contentions accordingly be extended to forty-five days after the date on which

20  Overture serves revised Preliminary Infringement Contentions that fully comply with Patent L.R.

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

GOOGLE'S REPLY RE MO. FOR AN ORDER EXT. TIME TO SERVE INIT. INVALIDITY CONTENTIONS
CASE NO. C 02-01991 CRB (EDL)

302734.03

1    3-1.  *See* Patent L.R. 3-3 (Preliminary Invalidity Contentions must be served "[n]ot later than 45

2    days after service" of Preliminary Infringement Contentions pursuant to Patent L.R. 3-1).

3

4    Dated:  December 12, 2002                              KEKER & VAN NEST, LLP

5

6

                                                    By:  _____/s/ *Michael S. Kwun*_____
7                                                        MICHAEL S. KWUN
                                                         Attorneys for Defendant
8                                                        GOOGLE INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GOOGLE'S REPLY RE MO. FOR AN ORDER EXT. TIME TO SERVE INIT. INVALIDITY CONTENTIONS
CASE NO. C 02-01991 CRB (EDL)

302734.03