LATHAM & WATKINS
  Anthony I. Fenwick (Bar No. 158667)
  Allon Stabinsky (Bar No. 197642)
135 Commonwealth Drive
Menlo Park, California 94025
Telephone:  (650) 328-4600
Facsimile:  (650) 463-2600

BRINKS HOFER GILSON & LIONE
  Jack C. Berenzweig (Admitted *Pro Hac Vice*)
  William H. Frankel (Admitted *Pro Hac Vice*)
  Jason C. White (Admitted *Pro Hac Vice*)
  Charles M. McMahon (Admitted *Pro Hac Vice*)
NBC Tower - Suite 3600
455 North Cityfront Plaza Drive
Chicago, Illinois 60611
Telephone:  (312) 321-4200
Facsimile:  (312) 321-4299

Attorneys for Plaintiff
OVERTURE SERVICES, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| OVERTURE SERVICES, INC., a Delaware Corporation,<br><br>           Plaintiff,<br><br>  vs.<br><br>GOOGLE INC., a California Corporation,<br><br>          Defendant. | No.  C02-01991 JSW (EDL)<br><br>**DECLARATION OF CHARLES M. MCMAHON IN SUPPORT OF OVERTURE'S MOTION FOR A PROTECTIVE ORDER PREVENTING EXCESSING THIRD PARTY DISCOVERY** |

I, Charles M. McMahon, declare as follows:

1.      I am an associate at the law firm of Brinks Hofer Gilson & Lione, counsel of record for plaintiff Overture Services, Inc. ("Overture") in this matter.  I make this declaration in support of Overture's Motion for a Protective Order Preventing Excessive Third Party Discovery.  I make the following declaration based upon my personal knowledge, and I could and would testify thereto under oath if called upon to do so.

2.      On June 19, 2003, Google Inc. ("Google") provided Overture with notice that it had served twenty-five (25) subpoenas on third parties who may have advertised with Overture's cost-per-click beta search system on or before May 28, 1998.  A copy of the June 19, 2003 Notice of Subpoenas is attached as Exhibit A.  The subpoenas sought production of "all documents relating to [any Overture system wherein paid search listings are ranked through an auction process] prior to June 1998" and "all financial records reflecting any payments to [Overture] relating to [Overture's system] prior to June 1998."  A true and correct copy of a sample subpoena served with Google's June 19, 2003 Notice of Subpoenas is attached as Exhibit B.

3.      On July 21, 2003, Google notified Overture that it was serving subpoenas on forty-six (46) additional third parties, seeking the same categories of documents as Google's twenty-five (25) earlier subpoenas.  A true and correct copy of the July 21, 2003 Notice of Subpoenas is attached as Exhibit C.  A true and correct copy of a sample subpoena served with Google's July 21, 2003 Notice of Subpoenas is attached as Exhibit D.

4.      On July 23, 2003, I telephoned Christine P. Sun, counsel for Google, to request that Google withdraw at least the last forty-six subpoenas and agree not to serve any further subpoenas on third parties.  Ms. Sun refused to do so, and explained that Google plans to serve over 200 more third party subpoenas seeking the same categories of documents.  After our conversation, Ms. Sun confirmed this position in a voice message to me.  In a letter to Ms. Sun dated July 24, 2003, I confirmed the

BRINKS HOFER GILSON & LIONE
NBC Tower – Suite 3600
455 North Cityfront Plaza Drive
Chicago, Illinois  60611-5599
Telephone: (312) 321-4200
Facsimile:  (312) 321-4299

1  substance of my conversation with Ms. Sun and Ms. Sun's voice message to me.  A

2  true and correct copy of the July 24, 2003 letter is attached as Exhibit E.

3      5.    Based upon Ms. Sun's representations, I understand that Google plans to

4  serve a total of approximately 300 such subpoenas.  These 300 subpoenas are

5  redundant of discovery Overture has already provided to Google in this case.  In

6  particular, Overture produced documents relating to its cost-per-click system as it

7  existed prior to June 1998, including archival copies of the source code for that system

8  as it existed on every day between March 3, 1998, and May 28, 1998.  This source

9  code provides sufficient evidence of which features were present in Overture's system

10  prior to June 1998.  Moreover, to the extent that Overture has been able to locate any

11  other documents related to the cost-per-click system prior to June 1998, Overture has

12  produced those documents to Google as well.

13      6.    In my telephone conversation with Ms. Sun, I attempted to amicably

14  resolve this issue in accordance with Fed. R. Civ. P. 37 and Civil L.R. 37-1(a).  Because

15  Google has refused to withdraw at least the latest round of forty-six subpoenas and has

16  refused to refrain from serving any further subpoenas, Overture is left with no alternative

17  but to raise this issue with the court.

18      7.    Attached as Exhibit F is a true and correct copy of the Westlaw printout for

19  *Perry v. Best Lock Corp.*, No. IP 98-C-0936-H/G, 1999 WL 33494858 (S.D. Ind. Jan. 21,

20  1999).

21      8.    Attached as Exhibit G is a true and correct copy of the Westlaw printout

22  for *Harris v. Wells*, Nos. B-89-391 and B-89-482 (WWE), 1990 WL 150445 (D. Conn.

23  Sep. 5, 1990).

24  / / /

25  / / /

26  / / /

27

28

DECLARATION OF CHARLES M. MCMAHON IN
SUPPORT OF MOTION FOR PROTECTIVE ORDER          - 3 -
C 02-01991 JSW (EDL)

BRINKS HOFER GILSON & LIONE
NBC Tower – Suite 3600
455 North Cityfront Plaza Drive
Chicago, Illinois  60611-5599
Telephone:  (312) 321-4200
Facsimile:   (312) 321-4299

1    I declare under penalty of perjury under the laws of the United States of America

2    that the foregoing is true and correct.  Executed this 4th day of August 2003 in Chicago,

3    Illinois.

4

5    .

6

7                                    *s/Charles M. McMahon*

8                                    Charles M. McMahon

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF CHARLES M. MCMAHON IN        - 4 -
SUPPORT OF MOTION FOR PROTECTIVE ORDER
C 02-01991 JSW (EDL)

**BRINKS HOFER GILSON & LIONE**
NBC Tower – Suite 3600
455 North Cityfront Plaza Drive
Chicago, Illinois  60611-5599
Telephone:  (312) 321-4200
Facsimile:   (312) 321-4299

# Exhibit A

KEKER & VAN NEST, LLP
JOHN W. KEKER - #49092
DARALYN J. DURIE - #169825
MICHAEL S. KWUN - #198945
CHRISTINE P. SUN - #218701
710 Sansome Street
San Francisco, CA  94111-1704
Telephone:  (415) 391-5400
Facsimile:  (415) 397-7188

Attorneys for Defendant and Counterclaimant
GOOGLE TECHNOLOGY INC., sued under its former name
GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

|  |  |
|---|---|
| OVERTURE SERVICES, INC., a Delaware corporation,<br><br>        Plaintiff and Counterdefendant,<br><br>        v.<br><br>GOOGLE INC., a California corporation,<br><br>        Defendant and Counterclaimant. | Case No. C 02-01991 JSW (EDL)<br><br><br><br>**NOTICE OF SUBPOENAS** |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:  Please take notice that,

pursuant to Rule 45 of the Federal Rules of Civil Procedure, Defendants have subpoenaed the

following third parties to produce and permit inspection of documents on July 21, 2003:

3-D Safety

ABACUSAAmerica, Inc.

Accesspoint

Ad Up Corporation

Advanced Graphic Solutions

1

1    Antenna Group

2    Ask Jeeves, Inc.

3    Attorneys Trust Service

4    Battery Outlet

5    Brave New Worlds, Inc.

6    Brunching Shuttlecocks

7    CareCounsel, LLC

8    Chip Shot Golf

9    CitySearch

10    Classic FX

11    CommTouch Software Inc.

12    CRO Consulting Group

13    Dean B. Mazzei

14    Did-it.com

15    Disney

16    Distinct Corporation

17    Draper Fisher Jurvetson

18    DVD Express

19    E-Com Resource Guide Gazette

20    Egghead

21    The documents to be produced are indicated in Schedule A to the attached subpoenas.

22    Dated:  June 19, 2003                          KEKER & VAN NEST, LLP

23

24

         By: _____

25    CHRISTINE P. SUN
      Attorneys for Defendant and
26    Counterclaimant GOOGLE
      TECHNOLOGY INC., sued under its
27    former name GOOGLE INC.

28

314250.01

# Exhibit B

AO 88 (Rev. 11/91) Subpoena in a Civil Case

# United States District Court

| CENTRAL | **DISTRICT OF** | CALIFORNIA |

OVERTURE SERVICES, INC.,

                        PLAINTIFF(S),

              **V.**

GOOGLE INC.,

                       DEFENDANT(S),

## SUBPOENA IN A CIVIL CASE

CASE NUMBER:[1] C 02-01991 JSW (EDL)
PENDING IN THE USDC
NORTHERN DISTRICT OF
CALIFORNIA

TO:
BATTERY OUTLET
16350 VENTURA BOULEVARD ,SUITE 397
ENCINO, CALIFORNIA  90230

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | |
|  | DATE AND TIME |
|  | |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
SEE ATTACHMENT A

| PLACE | DATE AND TIME |
|---|---|
| COMPEX LEGAL SERVICES, INC. | 7/21/03 |
| 146 SOUTH SPRUCE | 9:00 AM |
| SOUTH SAN FRANCISCO, CA  94080 | |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  | |

    Any organization not a party to the suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| CHRISTINE P. SUN ATTORNEY-AT-LAW ATTORNEY(S) FOR DEFENDANT, GOOGLE INC. | 6/19/03 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
KEKER & VAN NEST
710 SANSOME STREET
SAN FRANCISCO, CA  94111                    (415)391-5400

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

[1] If action is pending in district other than district of issuance state district under case number.

## Attachment A

## DEFINITIONS

A)    "YOU" or "YOUR" refers to Battery Outlet, its subsidiaries, divisions, predecessor companies, any joint venture to which it may be a party, and/or each of its employees, agents, officers, directors, representatives, consultants, accountants, and attorneys, including any person who served in any such capacity at any time.

B)    "GOTO'S SYSTEM" means any GOTO system wherein paid search listings are ranked through an auction process.

C)    "GOTO" means GoTo.com, and/or each of its employees, agents, officers, directors, representatives, consultants, accountants, and attorneys, including any person who served in any such capacity at any time.

D)    "DOCUMENT(S)" means and includes any kind of written, typewritten, or printed material whatsoever, and any computer readable media, including, but without limitation, papers, agreements, contracts, notes, memoranda, presentations, presentation materials, correspondence, letters, emails, telegrams, statements, invoices, personal diaries, records, books, maps, blueprints, forms, transcriptions and recordings, translations to any language, magnetic tapes, discs, printed cards, programming instructions, assembly diagrams, schematic diagrams, data books, data sheets, application notes, brochures, specifications, and manuals of which YOU have knowledge or information, either in YOUR possession or under YOUR custody or control, relating to or pertaining in any way to the subject matters in connection with which it is used and includes, without limitation, originals, all file copies, and other copies, no matter how or by whom prepared, and all drafts prepared in connection with any such writings, whether used or not, regardless of whether the document still exists, and regardless of who has maintained custody of such documents.

E)    "RELATING TO" means concerning, referring to, summarizing, reflecting, constituting, containing, embodying, pertaining to, involved with, mentioning, discussing, consisting of, comprising, showing, commenting upon, evidencing, describing or otherwise RELATING TO the subject matter.

## INSTRUCTIONS

A)    In answering this subpoena, YOU are required to furnish all documents that are available to YOU, under YOUR custody or control, not merely

1

such documents as the persons preparing the responses know of their own personal knowledge, but including, without limitation, documents in the possession of YOUR attorneys, employees, or other persons directly or indirectly employed by, or connected with YOU or YOUR attorneys or consultants, or anyone acting on YOUR behalf or otherwise subject to YOUR control.  In answering this subpoena YOU are requested to make a diligent search of YOUR records and of other papers and materials in YOUR possession or control or in the possession or control of YOUR employees, attorneys, consultants, or other representatives.

B)    In the event any information is withheld on a claim of attorney-client privilege or work product doctrine, YOU are required to provide a privilege log which includes at least the following information: the nature of the information contained in the withheld document, the date of the document, its source and subject matter, and to whom that information was disclosed, such as would enable the privilege claim to be adjudicated and cite any authority which YOU assert supports any claim of privilege.

C)    If YOU cannot respond to this subpoena fully, after a diligent attempt to attain the requested information, YOU are required to answer the subpoena to the extent possible, specify the portion of the subpoena YOU are unable to answer, and provide whatever information YOU have regarding the unanswered portion.

## DOCUMENTS REQUESTED

1.    All DOCUMENTS RELATING TO GOTO'S SYSTEM prior to June 1998.

2.    All financial records reflecting any payments to GOTO RELATING TO GOTO'S SYSTEM prior to June 1998.

2

Exhibit C

1  KEKER & VAN NEST, LLP
   JOHN W. KEKER - #49092
2  DARALYN J. DURIE - #169825
   MICHAEL S. KWUN - #198945
3  CHRISTINE P. SUN - #218701
   710 Sansome Street
4  San Francisco, CA  94111-1704
   Telephone:  (415) 391-5400
5  Facsimile:  (415) 397-7188

6  Attorneys for Defendant and Counterclaimant
   GOOGLE TECHNOLOGY INC., sued under its former name
7  GOOGLE INC.

8

9              UNITED STATES DISTRICT COURT

10           NORTHERN DISTRICT OF CALIFORNIA

11              SAN FRANCISCO DIVISION

12

13 | OVERTURE SERVICES, INC., a Delaware        Case No. C 02-01991 JSW (EDL)
   | corporation,
14 |
   |        Plaintiff and Counterdefendant,
15 |
   |     v.                                     **NOTICE OF SUBPOENAS**
16 |
   | GOOGLE INC., a California corporation,
17 |
   |        Defendant and Counterclaimant.
18

19

20

21

22

23

24

25

26

27

28

1    TO ALL PARTIES AND THEIR COUNSEL OF RECORD:  Please take notice that,

2    pursuant to Rule 45 of the Federal Rules of Civil Procedure, Defendants have subpoenaed the

3    following third parties to produce and permit inspection of documents on August 12, 2003:

4    Dealix

5    Emusic

6    Entrepreneur Media Inc.

7    Eslamboly & Barlavi

8    FindLaw

9    Full Moon Interactive Group

10    Futek Advanced Sensor Technology

11    Garwood Laboratories, Inc.

12    GIC Inc.

13    Gionata Mettifogo

14    Inference Corporation

15    Interworld Translations

16    Isuzu Motors

17    JaMar Galleries

18    James Cashel

19    Jonathan Hubbard

20    Kamm Co.

21    Kent Gordon

22    L.H. Salman Ltd.

23    Lang Co

24    League of American Investors

25    Lowestfare.com

26    Mad Phat Enterprises, Inc.

27    Marc Philips

28    Marketing Excellence, Inc

1

314250.01

1      Media SuperCollider

2      Musician Store

3      Net Data Systems

4      Net Objects

5      New Reality Entertainment

6      Olympia & Chase

7      Online Partners.com, Inc.

8      ONSALE, Inc.

9      Penny A. Edlund

10      PeopleLink

11      Presenting Solutions

12      Qualcomm

13      Rent Net

14      RVB Enterprises

15      Rwoof!, Inc.

16      Sarraf Jewelry

17      Sergei Geler

18      Sierra Del Sol Enterprises

19      Speedware Motorsports

20      TDK Semiconductors Corp.

21      Technews Corp.

22      //

23      //

24

25

26

27

28

NOTICE OF SUBPOENAS
CASE NO. C 02-01991 JSW (EDL)

314250.01

1    The documents to be produced are indicated in Schedule A to the attached subpoenas.

2

3    Dated:  July 21, 2003                                    KEKER & VAN NEST, LLP

4

5

6                                                   By: _____
                                                        CHRISTINE P. SUN
7                                                       Attorneys for Defendant and
                                                        Counterclaimant GOOGLE
8                                                       TECHNOLOGY INC., sued under its
                                                        former name GOOGLE INC.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

314250.01

Exhibit D

ORDER #:  A818649  -  001
AO 88 (Rev. 11/91) Subpoena in a Civil Case

# United States District Court

| SOUTHERN | DISTRICT OF | CALIFORNIA |

OVERTURE SERVICES, INC.,

PLAINTIFF(S),

## SUBPOENA IN A CIVIL CASE

GOOGLE INC.,

**V.**

CASE NUMBER:[1]   C 02-01991 JSW (EDL)
DEFENDANT(S),                   PENDING IN THE USDC
NORTHERN DISTRICT OF
CALIFORNIA

TO:
EMUSIC
4790 EASTGATE MALL
SAN DIEGO, CALIFORNIA  92121

☐  YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
SEE ATTACHMENT "A".

| PLACE<br>COMPEX LEGAL SERVICES, INC.<br>146 SOUTH SPRUCE<br>SOUTH SAN FRANCISCO, CA  94080 | DATE AND TIME<br>8/12/03<br>9:00 AM |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

    Any organization not a party to the suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br>    CHRISTINE P. SUN ATTORNEY-AT-LAW<br>ATTORNEY(S) FOR DEFENDANT,<br>GOOGLE INC. | DATE<br>7/15/03 |
|---|---|
| ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER<br>KEKER & VAN NEST<br>710 SANSOME STREET<br>SAN FRANCISCO, CA  94111 | (415)391-5400 |

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

[1] If action is pending in district other than district of issuance state district under case number.

## Attachment A

## DEFINITIONS

A)    "YOU" or "YOUR" refers to Emusic, its subsidiaries, divisions, predecessor companies, any joint venture to which it may be a party, and/or each of its employees, agents, officers, directors, representatives, consultants, accountants, and attorneys, including any person who served in any such capacity at any time.

B)    "GOTO'S SYSTEM" means any GOTO system wherein paid search listings are ranked through an auction process.

C)    "GOTO" means GoTo.com, and/or each of its employees, agents, officers, directors, representatives, consultants, accountants, and attorneys, including any person who served in any such capacity at any time.

D)    "DOCUMENT(S)" means and includes any kind of written, typewritten, or printed material whatsoever, and any computer readable media, including, but without limitation, papers, agreements, contracts, notes, memoranda, presentations, presentation materials, correspondence, letters, emails, telegrams, statements, invoices, personal diaries, records, books, maps, blueprints, forms, transcriptions and recordings, translations to any language, magnetic tapes, discs, printed cards, programming instructions, assembly diagrams, schematic diagrams, data books, data sheets, application notes, brochures, specifications, and manuals of which YOU have knowledge or information, either in YOUR possession or under YOUR custody or control, relating to or pertaining in any way to the subject matters in connection with which it is used and includes, without limitation, originals, all file copies, and other copies, no matter how or by whom prepared, and all drafts prepared in connection with any such writings, whether used or not, regardless of whether the document still exists, and regardless of who has maintained custody of such documents.

E)    "RELATING TO" means concerning, referring to, summarizing, reflecting, constituting, containing, embodying, pertaining to, involved with, mentioning, discussing, consisting of, comprising, showing, commenting upon, evidencing, describing or otherwise RELATING TO the subject matter.

## INSTRUCTIONS

A)    In answering this subpoena, YOU are required to furnish all documents that are available to YOU, under YOUR custody or control, not merely

1

such documents as the persons preparing the responses know of their own personal knowledge, but including, without limitation, documents in the possession of YOUR attorneys, employees, or other persons directly or indirectly employed by, or connected with YOU or YOUR attorneys or consultants, or anyone acting on YOUR behalf or otherwise subject to YOUR control. In answering this subpoena YOU are requested to make a diligent search of YOUR records and of other papers and materials in YOUR possession or control or in the possession or control of YOUR employees, attorneys, consultants, or other representatives.

B)    In the event any information is withheld on a claim of attorney-client privilege or work product doctrine, YOU are required to provide a privilege log which includes at least the following information: the nature of the information contained in the withheld document, the date of the document, its source and subject matter, and to whom that information was disclosed, such as would enable the privilege claim to be adjudicated and cite any authority which YOU assert supports any claim of privilege.

C)    If YOU cannot respond to this subpoena fully, after a diligent attempt to attain the requested information, YOU are required to answer the subpoena to the extent possible, specify the portion of the subpoena YOU are unable to answer, and provide whatever information YOU have regarding the unanswered portion.

## DOCUMENTS REQUESTED

1.    All DOCUMENTS RELATING TO GOTO'S SYSTEM prior to June 1998.

2.    All financial records reflecting any payments to GOTO RELATING TO GOTO'S SYSTEM prior to June 1998.

Exhibit E

**Charles M. McMahon**
312-321-4782
cmcmahon@brinkshofer.com

**BRINKS**
**HOFER**
**GILSON**
**& LIONE**

A Professional Corporation
Intellectual Property Attorneys

NBC Tower · Suite 3600
455 N. Cityfront Plaza Drive
Chicago, Illinois 60611-5599
www.brinkshofer.com
Fax 312-321-4299
Telephone 312-321-4200

San Jose, CA
Indianapolis, IN
Ann Arbor, MI
Arlington, VA

July 24, 2003

*via facsimile*
(415) 397-7188

Christine P. Sun, Esq.
KEKER & VAN NEST, L.L.P.
710 Sansome Street
San Francisco, CA 94111-1704

Re:    *Overture Services, Inc. v. Google Inc.,*
       Civ. No. C02-01991 (N.D. Cal.)

Dear Christine:

    This is to confirm the substance of our telephone conversation and your subsequent voice message yesterday regarding Overture's objection to the numerous subpoenas Google has served or plans to serve on third parties.

    On June 19, 2003, Google notified Overture of its plans to serve subpoenas on twenty-five third-parties who may have advertised with Overture's cost-per-click beta search system on or before May 28, 1998.  The subpoenas seek production of documents relating to the Overture's system prior to June 1998 and any payments made in connection with that system prior to June 1998.

    On July 21, 2003, Google notified Overture that it would serve subpoenas on forty-six more third parties.  These additional subpoenas seek production of the same type of documents sought by the previous subpoenas.

    I called you yesterday to request that Google withdraw at least the last forty-six subpoenas and agree not to serve any further subpoenas on third parties.  You refused to do so, and you also explained that Google plans to serve over 200 additional third-party subpoenas seeking the same type of documents.  After our conversation, you confirmed this position in your voice message.  Based on your representations, we understand that Google plans to serve a total of approximately 300 such subpoenas.

    As I explained yesterday, Google's service of 300 third-party subpoenas is an abuse of the discovery process.  To the extent that such subpoenas seek information relating to Overture's system prior to June 1998, they are redundant of discovery Overture already has

Christine P. Sun, Esq.
July 24, 2003
Page 2

provided to Google in this case. In particular, Overture produced archival copies of the beta search system source code as it existed on every day between March 3, 1998, and May 28, 1998. This source code provides sufficient evidence of which features were present in Overture's system prior to June 1998.

Moreover, many of the third parties on whom Google has served or plans to serve subpoenas are still advertiser-customers of Overture. As such, Google's subpoenas also serve to harass Overture's customers and unreasonably interfere with Overture's ongoing business.

Through our telephone conversation, Overture has attempted to amicably resolve this issue in accordance with the local rules. Because Google has refused to withdraw at least the latest round of forty-six subpoenas and has refused to refrain from serving any further subpoenas, we are left with no alternative but to raise this issue with the court

Best regards,

Charles M. McMahon

Exhibit F

**C**

Only the Westlaw citation is currently available.

United States District Court, S.D. Indiana, Indianapolis
Division.

Tracy L. PERRY, Plaintiff,
v.
BEST LOCK CORPORATION, Defendant.

No. IP 98-C-0936-H/G.

Jan. 21, 1999.

ORDER ON PLAINTIFF'S MOTION TO QUASH
SUBPOENAS

HAMILTON, J.

**\*1** Plaintiff Tracy L. Perry has moved to quash 19 non-party
subpoenas that defendant Best Lock Corporation has served
on plaintiff's present, past, and prospective employers. As
explained below, plaintiff's motion to quash is granted.

Plaintiff Perry worked for Best Lock for a little less than
two years. She has sued Best Lock for racial discrimination
and retaliation in employment under Title VII of the Civil
Rights Act of 1964, and for violating the Family and
Medical Leave Act of 1993. Best Lock has served
subpoenas under Rule 45 of the Federal Rules of Civil
Procedure on about 19 businesses, including plaintiff's
current employer, her former employers, and businesses
where she applied for work after her employment at Best
Lock ended. The subpoenas demand production of any
documents relating to plaintiff Perry. The subpoenas refer
specifically to security and loss prevention files; reference
checks; employee handbooks and policy and procedure
manuals given to Perry in any interviews; any complaints,
charges or claims for benefits made by or concerning Perry;
any documents relating to her employment, including terms
of employment, benefits, compensation, job descriptions,
performance evaluations, criticisms of performance,
complaints about performance; and, for good measure, any
other documents that refer to Tracy Perry. Perry contends
the broad sweep for documents held by so many former and
prospective employers is not reasonably calculated to lead
to the discovery of admissible evidence.

Best Lock argues first that Perry has no standing to object to
its discovery requests to others persons or entities. Perry
does not assert that the documents sought contain legally
privileged information about her. She has a right to argue,
however, that the court should exercise its power to control
the scope and cost of discovery in this case. See
Fed.R.Civ.P. 26(b)(2) (court may limit frequency or extent

of discovery if the burden or expense of the proposed
discovery outweighs its likely benefit, taking into account
the needs of the case, the amount in controversy, the parties'
resources, the importance of the issues at stake in the
litigation, and the importance of the proposed discovery in
resolving the issues). Also, discovery may impinge upon
legitimate privacy interests without threatening the narrow
areas of information and communication protected by legal
privileges. If opposing parties did not have standing to
object to subpoenas directed at non- parties, protection of
such legitimate privacy interests would be left solely to the
non-parties' willingness to spend money to fight the
requests. Best Lock's standing argument is not persuasive.

Best Lock also argues that Perry failed to comply with
Local Rule 37.1 before filing her motion. Under Local Rule
37.1, with certain exceptions not relevant here, the court
"may deny any discovery motion" unless counsel for the
moving party files a separate statement showing that
counsel has made a reasonable effort to reach agreement
with opposing counsel on the disputed issues. The rule is an
important measure for avoiding premature discovery
disputes. It often tends to promote reasonable compromises
between counsel without court intervention. The rule is not
rigid, however. Perry has explained why she did not comply
in this case: the volume of the requests, the immediate need
to put the non-party targets of the subpoenas on notice that
the subpoenas were being challenged, and the likely futility
of a conference. The court appreciates the need to alert the
targets of the subpoenas to the objections, and it is now
reasonably apparent that a conference would not have
produced agreement on these subpoenas. At this point there
would be no point in requiring a conference and a renewed
round of briefing on the subpoenas. The court therefore is
exercising its discretion to excuse plaintiff's failure to
comply with Local Rule 37.1.

**\*2** Best Lock argues that it needs the subpoenaed records:
(a) "to formulate any possible after-acquired evidence
defense"; (b) "to investigate any previous disciplinary and
performance problems of Plaintiff"; and/or (c) to "confirm if
Plaintiff has a penchant for bringing frivolous claims against
her employers." Such fishing expeditions probably fall
within the broad scope of permissible discovery pursuant to
Fed.R.Civ.P. 26(b)(1). A defense of after-acquired evidence
may be relevant to limit remedies in an employment
discrimination. It is also at least imaginable that Best Lock
could turn up evidence of previous disciplinary or
performance problems or prior frivolous claims that might
be so compelling as to warrant use at trial under the
standards of Fed.R.Evid. 403, 404(b), and 608(b)
(addressing use of extrinsic evidence to impeach on
collateral matters).

The fact that one can imagine these subpoenas leading to the

Not Reported in F.Supp.2d
(Cite as: 1999 WL 33494858 (S.D.Ind.))

discovery of admissible evidence is not alone sufficient to justify their enforcement. Under Rule 26(b)(2) of the Federal Rules of Civil Procedure, the court has the power and duty to look more closely at the discovery requests. Rule 26(b)(2) was amended in 1993 to enable courts to "keep tighter rein on the extent of discovery." Advisory Committee Notes, 1993 Amendments to Rule 26. The committee explained:

> The information explosion of recent decades has greatly increased both the potential cost of wide-ranging discovery and the potential for discovery to be used as an instrument for delay or oppression. * * * The revisions in Rule 26(b)(2) are intended to provide the court with broader discretion to impose additional restrictions on the scope and extent of discovery....
> *Id.*

If filing what is, by all appearances to the court, a fairly routine case alleging individual employment discrimination opens up the prospect of discovery directed at all previous, current, and prospective employers, there is a serious risk that such discovery can become "an instrument for delay or oppression." The broad scope of the "after-acquired evidence" defense was not intended to be an invitation to pursue discovery for the sole purpose of finding some basis for establishing such a defense. In the case recognizing the after-acquired evidence defense, *McKennon v. Nashville Banner Co.,* the Supreme Court recognized the danger at issue here: "The concern that employers might as a routine matter undertake extensive discovery into an employee's background or performance on the job to resist claims under the Act is not an insubstantial one. But we think the authority of the courts to award attorney's fees, mandated under the statute, 29 U.S.C. §§ 216(b), 626(b), and in appropriate cases to invoke the provisions of Rule 11 of the Federal Rules of Civil Procedure will deter most abuses." 513 U.S. 352, 363 (1995) (age discrimination case). The district court's power under Rule 26(b)(2) provides another mechanism for avoiding such abuses.

**\*3** The after-acquired evidence defense was developed to address situations in which the employer learns important information that would justify firing the employee and/or refusing to rehire the employee. The Court apparently assumed in *McKennon* that the information simply emerged in the otherwise ordinary course of the lawsuit and relevant discovery. [FN1] The Court's comment about potential abuse clearly implies that discovery is not warranted for the *sole* purpose of developing a possible after-acquired evidence defense.

> FN1. In *McKennon,* the plaintiff testified in her deposition that she had removed confidential financial documents from her employer and had kept copies at home. 513 U.S. at 355. The Supreme

Court's opinion and the lower court opinions are not specific about the line of questioning, but it is easy to imagine that routine and independently justifiable questions about relevant documents in plaintiff's possession could have turned up that information.

Best Lock's other suggested needs for the subpoenas are also highly attenuated. Best Lock suggests that it wants to investigate any previous disciplinary and performance problems or other frivolous claims that plaintiff may have brought against other employers. These requests are at the very outer boundaries of possible admissible evidence, especially in view of Fed.R.Evid. 404(b), 403, and 608(b). This court would not readily permit a trial of Perry's claims against Best Lock to spin into a trial of other disputes with other employers.

Under Rule 26(b)(2), this court must weigh the likely the burden or expense of the proposed discovery and its likely benefit. The court must take into account "the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." The last factor is critical here. Best Lock has not identified any specific concerns or targets or reasons for its sweeping and intrusive discovery requests. It has not provided any information suggesting it has a *specific* basis for believing that an after-acquired evidence defense might be developed here. Thus, there is no specific reason before the court suggesting that the discovery Best Lock seeks from plaintiff's past, current, and prospective employers would have any material importance for resolving the issues presented in this case. On this record, therefore, the subpoenas look like nothing more than a fishing expedition, or, more accurately, an exercise in swamp-dredging and muck-raking.

The resources of the parties are also relevant here. The subpoenas probably would not impose costs directly on Perry as great as would, for example, depositions of all 19 businesses. Nevertheless, the apparent disparity in resources and the defendant's ability to inflict additional costs on Perry as she pursues this case are relevant in determining whether to permit discovery that appears to have no more than marginal and attenuated relevance. The potential burdens of the proposed discovery are also substantial in terms of broadcasting to a large group of businesses that Best Lock views Perry as an untrustworthy troublemaker. Best Lock is entitled to its view. It is also entitled to obtain information through informal and voluntary channels. It is not entitled in this case to use the compulsory process of the United States courts to pursue the information it hopes exists.

**\*4** Accordingly, the 19 non-party subpoenas issued by defendant are hereby QUASHED. Each party shall bear its own costs and fees associated with the motion to quash.

So ordered.

1999 WL 33494858 (S.D.Ind.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

# Exhibit G

Not Reported in F.Supp.
(Cite as: 1990 WL 150445 (D.Conn.))

Only the Westlaw citation is currently available.

United States District Court, D. Connecticut.

William R. Harris, et al., Plaintiffs,
v.
Edwin E. Wells, Jr., et al Defendants.
Edwin E. Wells, Jr., et al., Plaintiffs,
v.
William R. Harris, et al., Defendants.

**B-89-391 (WWE), B-89-482 (WWE).**

Sept. 5, 1990.

Frank J. Silvestri, Jr., David P. Atkins, Zeldes, Needle & Cooper, P.C., Bridgeport, Conn., Andrew J. Levander, Richard D. Weinberg, Adam Rowland, Shereff, Friedman, Hoffman & Goodman, New York City, for plaintiff.

Richard F. Lawler, Eugene J. Riccio, Kari A. Pedersen, Whitman & Ransom, Greenwich, Conn., for AroChem Corp. and AroChem International.

Thomas D. Goldberg, James F. Stapleton, Carole F. Wilder, Day, Berry & Howard, Stamford, Conn., Robert B. McCaw, Thomas F. Connell, Wilmer Cutler & Pickering, Washington, D.C., for Edwin E. Wells, Jr., Stetson Capital Corp., Stetson Petroleum & Petrochemical Ventures Inc.

Peter M. Nolin, Schatz & Schatz, Ribicoff & Kotkin, Stamford, Conn., Joseph D. Pope, Kevin J. Toner, James C. McMillin, Werbel, McMillin & Carnelutti, New York City, for Allen & Co., Inc.

EGINTON

*RULING ON PENDING MOTIONS*

**\*1** Familiarity is presumed with the convoluted factual and procedural background behind these consolidated lawsuits in which discovery is being coordinated with a related action pending in the District Court for the Central District of California. (*See* Dkt. # 155). The Court will briefly summarize only those facts relevant to the currently pending discovery motions.

*FACTS*

On December 20, 1989, this Court reserved decision on a Motion to Compel brought by three of the Wells Group defendants. Decision was reserved pending review of approximately 100,000 documents produced by Harris and AroChem in response to the Wells Group's requests. These documents were the subject of a protective order entered by this Court on December 29, 1989. Upon completion of this review, the Wells Group was to inform the Court whether or not it intended to renew its Motion to Compel.

On July 13, 1990, a hearing was held before this Court on a related matter. At that hearing the Wells group informed the Court that a review of the documents had been completed and it would be renewing its December, 1989 Motion to Compel. Pursuant to this Court's order the parties have filed briefs updating the issues raised in the Wells Group's original Motion to Compel and raising all other discovery issues which they contend remain outstanding.

In the time between the filing of its Motion to Compel and the July 13, 1990 hearing, the Wells group served subpoenas on approximately 23 non-parties seeking the production of documents, many of which the Wells group claims have been improperly withheld by Harris and AroChem. In response to these subpoenas, AroChem has filed two motions for protective orders prohibiting the Wells group from obtaining discovery from these non-parties. Approximately 16 of these non-parties, apparently reluctant to get involved in this dispute, have refused to respond to these subpoenas until ordered to do so by this Court or the District Court in California. In response, the Wells group filed a Motion to Compel in the District Court for the Central District of California seeking to compel production of documents from U.S.A. Petroleum, one of the non-parties who had earlier been served with a subpoena. A hearing on this matter was held before Magistrate Brown on August 21, 1990. The Magistrate declined to rule on this motion and deferred to this Court's ruling on the pending discovery motions. The Wells group has also filed a Motion to Compel production from Harry E. Peden, III, an attorney and director of AroChem, who was added as a defendant in the Wells amended complaint filed on April 10, 1990. This ruling will address the two motions to compel filed by the Wells group and the two motions for protective orders filed by AroChem.

*DISCUSSION*

I. *THE WELLS GROUP'S MOTION TO COMPEL PRODUCTION FROM HARRIS AND AROCHEM*

The Wells group claims that Harris and AroChem have failed to produce many highly relevant documents. In its Motion to Compel, the Wells group lists eleven categories of documents which it claims Harris and AroChem has failed to produce. The Court will address each of these claims individually.

**\*2** 1) *Documents regarding the stock ownership of AroChem* (Document Request Nos. 1 and 2)

Not Reported in F.Supp.
(Cite as: 1990 WL 150445 (D.Conn.))

Case 3:02-cv-01991-JSW   Document 70-3   Filed 08/04/2003   Page 30 of 32   Page 2

AroChem has agreed to produce these documents, therefore, there is no need for an order compelling such production.

2) *Documents regarding the refurbishment and operation of the facility* (Document Request Nos. 3, 5, 6, 8, 28, 36, 41 and 44)

Harris and AroChem are hereby ordered to produce all documents in their possession which are responsive to these requests and which have not already been produced.

3) *Documents relating to the escrow arrangement* (Document Request No. 4)

Harris and AroChem are hereby ordered to produce all documents relating to the $2.3 million escrow fund provided to them by Victory including but not limited to all documents relating to any drawdowns of that fund, the intended or actual use of any funds which were drawn down and the repayment of such funds, if any.

4) *Documents relating to Harris' and AroChem's trading activities* (Document Request Nos. 9, 10 and 37)

Harris and AroChem are hereby ordered to produce all documents relating to the purchase or sale of petroleum or petrochemical feedstocks or products by AroChem or by Harris (either individually, on behalf of AroChem, or through the use of AroChem's facilities). The Wells Group's request is denied, however, insofar as it relates to the personal trading activity of V.J. Dispenza, Joseph Sheperd or Harold Sebastian.

5) *Documents relating to actual or proposed financing to be provided to Harris or AroChem* (document Request Nos. 15, 20, 22, 38, 42, 46 and 47)

Harris and AroChem are hereby ordered to produce all documents which are responsive to these requests and which have not already been produced.

6) *Documents relating to compensation paid to AroChem employees, directors or consultants* (Document Request Nos. 19 and 45)

Harris and AroChem are hereby ordered to produce all documents which are responsive to these requests.

7) *Documents relating to members of AroChem's Board of Directors* (Document Request Nos. 18, 23 and 26)

These requests are hereby denied as presently framed. The requests are overbroad and should be revised to comply with the requirement of the Federal Rules that discovery requests "set forth the items to be inspected either by item or category with reasonable particularity." Fed.R.Civ.P. 34(b).

8) *Documents relating to Harris' Business Dealings* (Document Request Nos. 25 and 29)

Harris and AroChem are hereby ordered to produce all documents in their possession which are relevant to these requests.

9) *Documents relating to AroChem's Financial and other records* (Document Request Nos. 32, 33, 34, 35, 39 and 40)

Harris and AroChem are hereby ordered to produce all documents responsive to these requests to the extent that they have not already done so.

10) *Correspondence and documents relating to the Wells Group* (Document Request Nos. 31 and 43)

These requests are hereby denied as presently framed. The requests are overbroad and should be revised to comply with the requirement of the Federal Rules that discovery requests "set forth the items to be inspected either by item or category with reasonable particularity." Fed.R.Civ.P. 34(b).

*3 11) *Documents relating to Harris' claims for relief* (Document Request Nos. 48-59)

These requests are hereby denied as presently framed. The requests are overbroad and should be revised to comply with the requirement of the Federal Rules that discovery requests "set forth the items to be inspected either by item or category with reasonable particularity." Fed.R.Civ.P. 34(b).

All documents previously produced by Harris and AroChem are to be supplemented to include all responsive documents that were prepared or generated after July 17, 1989 and up to April 10, 1990, the date of the filing of the Wells Amended Complaint. Documents to be produced as a result of this order are to include all responsive documents generated up to the date of the filing of the Wells amended complaint.

Given the nature of the allegations in this case, it is hereby ordered that all documents that are produced in this litigation are subject to the December 20, 1989 protective order issued by this Court in connection with an earlier document production. Any violations of that order will be taken very seriously by this Court and upon proof of such violations, sanctions will be imposed.

II. *THE WELLS GROUP'S MOTION TO COMPEL PRODUCTION FROM HARRY PEDEN III*

In response to the Wells Group's document requests, Peden refused to produce seven categories of documents on the grounds that the documents in these categories are either irrelevant or are protected from disclosure by the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.
(Cite as: 1990 WL 150445 (D.Conn.))

Case 3:02-cv-01991-JSW    Document 70-3    Filed 08/04/2003    Page 31 of 32    Page 5

attorney-client privilege. After a review of the categories of documents withheld (*see* Wells' Memorandum in Support of Motion to Compel at pp. 10- 11), the Court finds that the specific categories of documents sought by Wells are relevant to the core issues of this litigation and certainly meet the standard of Rule 26 of the Federal Rules of Civil Procedure which allows for discovery of "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978).

The Court also finds that these documents are not protected by the attorney- client privilege. When the client is a corporation, the attorney's obligation to protect the client's confidences runs to the corporate entity and not to any individual officer. *See Avianca, Inc. v. Corriea,* 705 F.Supp. 666, 680 n. 4 (D.D.C.1989); *Conn. Rules of Professional Conduct,* Rule 1.13 (applicable under Rule 3(a) of the Local Rules of this Court); Committee on Professional Ethics of the Connecticut Bar Association, Formal Op. 88-12 (1988), *reprinted in ABA/BNA Lawyers' Manual on Professional Conduct* 901:59 (1988). As a Delaware corporation, AroChem's directors are entrusted with the responsibility to manage the affairs of the corporation. Del.Code Ann., tit. 8, § 141 (1983). Consequently, it the corporation's directors who hold and control the corporation's attorney-client privilege. *See Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. 343 (1985); *In re O.P.M. Leasing Servs., Inc.,* 670 F.2d 383, 386 (2d Cir.1982).

**\*4** The question of the propriety of an assertion of privilege by one director against another was addressed in *Kirby v. Kirby,* No. 8604, slip op. (Del.Ch. July 29, 1987). In that case the court held that the attorney- client privilege belonging to the corporation cannot be invoked against its own directors. The Court found that under Delaware corporate law, "the directors, collectively, were the client at the time the legal advice was given ... [and they must] be treated as the 'joint client' when legal advice is rendered to the corporation through one of its officers or directors." *Id.* at 7.

Similarly, in litigation between shareholders and the corporate entity, the corporation cannot assert the attorney-client privilege against its shareholders. *Garner v. Wolfinbarger,* 430 F.2d 1093 (5th Cir.1970), *cert. denied,* 401 U.S. 974 (1971). *See also Quintel Corp., N.V. v. Citibank, N.A.,* 567 F.Supp. 1357 (S.D.N.Y.1983). Wells is both a shareholder and a director of AroChem. He has filed a derivative lawsuit on behalf of all AroChem shareholders. Moreover, even if a legitimate claim of privilege could have been asserted by Peden against Wells and/or the shareholders, Wells has in this Court's opinion demonstrated good cause to overcome such claims of privilege. *See*

*Garner v. Wolfinbarger,* 430 F.2d 1093, 1104 (5th Cir.1970), *cert. denied,* 410 U.S. 974 (1971). Finally, Peden has served AroChem not only as its legal advisor, but has served as an officer and director of the corporation and has apparently been involved in many aspects of the corporation's business. Peden's involvement in the business of AroChem further undermines his claim of privilege. *See United States v. International Business Machines Corp.,* 66 F.R.D. 206, 212-213 (S.D.N.Y.1974). For these reasons, Peden's claims of attorney-client privilege as a reason for his refusal to produce the requested documents must fail and the Wells Group's Motion to Compel Production of Documents from Peden must be granted. [FN1]

III. *AROCHEM'S MOTION FOR A PROTECTIVE ORDER*

Finally, the Court turns to AroChem's motions seeking two protective orders barring discovery by the Wells Group from various nonparties upon whom the Wells Group has served subpoenas and notices of depositions.

The Court finds that many of the requests served on these nonparties are duplicative of requests which have been served on Harris, AroChem and Peden. It is likely that a substantial portion of the discovery sought from these nonparties will be unnecessary once Harris, AroChem and Peden have produced the documents which are the subject of this ruling. Given the nature of the allegations in this case and the questions of credibility upon which this litigation turns, the most prudent course of conduct is one which, to the extent possible, minimizes the damage to AroChem's business during the course of this litigation. At the very least, discovery should be stayed against these nonparties until it can be determined whether or not all the documents sought by the Wells Group can be obtained from the parties. This result is desirable since all of these nonparties are engaged in business with AroChem. Constant attempts to bring these business associates into this litigation may well have negative effects on these business relationships. Therefore, this Court will grant AroChem's Motions for Protective Orders until such time as the Wells Group has reviewed the documents produced as a result of this ruling. At that time the Wells Group may, upon demonstrating that there remain documents or other information that can be obtained only through the conduct of discovery from non-parties, move to vacate these orders.

*CONCLUSION*

**\*5** For the foregoing reasons, the Wells Group's Motion to Compel Production of Documents from Harris and AroChem is GRANTED in part and DENIED in part; the Wells Group's Motion to Compel Production from Harry Peden III is hereby GRANTED; and AroChem's two motions for protective orders are hereby GRANTED to the extent noted above.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

FN1. In opposition to the Wells Group Motion to Compel, Peden argues only that the motion should be denied because counsel failed to comply with the requirement of Local Rule 9(d)(4) that there be a good faith attempt to resolve the issues prior to filing such a motion. The Wells Group claims to have complied with this requirement but to no avail. Denial of the Motion to Compel on the ground that the parties have failed to make attempts to resolve these issues would serve only to delay these proceedings further. Moreover, the history of this litigation to date suggests that any attempts at resolution will be futile at this time. Thus, without determining whether any good faith discussions in fact took place, the Court declines to deny the motion for failure to comply with the local rule.

1990 WL 150445 (D.Conn.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works