LATHAM & WATKINS
   Anthony I. Fenwick (Bar No. 158667)
   Allon Stabinsky (Bar No. 197642)
135 Commonwealth Drive
Menlo Park, California 94025
Telephone:     (650) 328-4600
Facsimile:     (650) 463-2600

BRINKS HOFER GILSON & LIONE
   Jack C. Berenzweig (Admitted *Pro Hac Vice*)
   William H. Frankel (Admitted *Pro Hac Vice*)
   Jason C. White (Admitted *Pro Hac Vice*)
   Charles M. McMahon (Admitted *Pro Hac Vice*)
NBC Tower - Suite 3600
455 North Cityfront Plaza Drive
Chicago, Illinois 60611
Telephone:     (312) 321-4200
Facsimile:     (312) 321-4299

Attorneys for Plaintiff
OVERTURE SERVICES, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| OVERTURE SERVICES, INC., a Delaware Corporation,<br><br>                         Plaintiff,<br><br>        vs.<br><br>GOOGLE INC., a California Corporation,<br><br>                         Defendant. | No.  C02-01991 JSW (EDL)<br><br>**OVERTURE'S OPENING CLAIM CONSTRUCTION BRIEF** |

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................................1

II.  OVERVIEW OF THE TECHNOLOGY ..............................................................1

     A.   Bidded Cost-Per-Click Advertising ...........................................................1
     B.   The Account Management Features Of The '361 Patent ............................2

III. CONTROLLING LEGAL PRINCIPLES ............................................................3

IV.  CLAIM INTERPRETATION ISSUES ................................................................6

     A.   *Search Listing* ..........................................................................................6
          1.   Proposed Interpretations And Areas of Dispute ............................6
          2.   The Ordinary Meaning Of "Search Listing"..................................6
               a.   The Claim Language Confirms Overture's
                    Identification Of The Proper Ordinary Meaning Of
                    "Search Listing" ................................................................7
               b.   The Specification Also Confirms Overture's
                    Identification Of The Proper Ordinary Meaning Of
                    "Search Listing" ................................................................8

     B.   *Search Result List* ...................................................................................9
          1.   Proposed Interpretations And Areas of Dispute ............................9
          2.   The Ordinary Meaning Of "Search Result List".........................10
               a.   The Claim Language Confirms Overture's
                    Identification Of The Proper Ordinary Meaning Of
                    "Search Result List"........................................................10
               b.   The Specification Also Confirms Overture's
                    Identification Of The Proper Ordinary Meaning Of
                    "Search Result List"........................................................11
          3.   The Doctrine Of Claim Differentiation Supports Overture's
               Interpretation................................................................................12

     C.   *[Modifiable] Bit Amount* .......................................................................12
          1.   Proposed Interpretations And Areas Of Dispute .........................13
          2.   The Ordinary Meanings Of "Modifiable" And "Bid" ................13
          3.   Overture's Interpretation Is Consistent With The Intrinsic
               Evidence; Google's Is Not ..........................................................14

     D.   A Modifiable Bid Amount That Is *Independent Of* Other
          Components Of The Search Listing............................................................15
          1.   Proposed Interpretations And Areas of Dispute ..........................15
          2.   The Ordinary Meaning Of "Independent Of"..............................15

     E.   The Three Ranking Terms ........................................................................15

          1.   Ordering . . . *In Accordance With* The Values Of The
               Respective Bid Amounts..............................................................16
               a.   Proposed Interpretations And Areas Of Dispute ............16
               b.   The Ordinary Meaning Of "In Accordance With"..........16

OVERTURE'S OPENING CLAIM
CONSTRUCTION BRIEF                        - i -
C 02-01991 JSW

BRINKS HOFER GILSON & LIONE
NBC Tower – Suite 3600
455 North Cityfront Plaza Drive
Chicago, Illinois 60611-5599
Telephone:  (312) 321-4200
Facsimile:  (312) 321-4299

2.    Arranged In An Order *Determined Using* The Bid Amounts / Position . . . *Determined Using* The Bid Amount ........................17
    a.    Proposed Interpretations And Areas of Dispute ............................17
    b.    The Ordinary Meaning Of "Determined Using"...........................17
    c.    The Doctrine of Claim Differentiation Supports Overture's Interpretation......................................................18

3.    Arranged In An Order *Corresponding To* The Bid Amounts ....................19
    a.    Proposed Interpretations And Areas of Dispute ............................19
    b.    The Ordinary Meaning Of "Corresponding To"...........................19
    c.    The Doctrine of Claim Differentiation Supports Overture's Interpretation......................................................20

4.    The Varying Claim Scope of the Three Ranking Terms ...........................21

F.    *In Response To* ...........................................................................21
    1.    Proposed Interpretations And Areas of Dispute .........................................21
    2.    The Ordinary Meaning Of "In Response To".............................................21

G.    *Database* .................................................................................22
    1.    Proposed Interpretation And Areas of Dispute .........................................22
    2.    The Ordinary Meaning Of "Database" ....................................................22

H.    *Deducted From An Account* .........................................................22
    1.    Proposed Interpretations And Areas Of Dispute .........................................23
    2.    The Ordinary Meaning Of "Deducted From An Account" .......................23

I.    *Account Record* ........................................................................24
    1.    Proposed Interpretations And Areas of Dispute .........................................24
    2.    The Ordinary Meaning Of "Account Record"...........................................24

J.    *From A/The Searcher* ................................................................24
    1.    Proposed Interpretations And Areas Of Dispute .......................................24
    2.    The Ordinary Meaning Of "From A/The Searcher" ................................25

V.    CONCLUSION...........................................................................25

OVERTURE'S OPENING CLAIM
CONSTRUCTION BRIEF
C 02-01991 JSW

- ii -

**BRINKS HOFER GILSON & LIONE**
NBC Tower – Suite 3600
455 North Cityfront Plaza Drive
Chicago, Illinois 60611-5599
Telephone: (312) 321-4200
Facsimile: (312) 321-4299

# TABLE OF AUTHORITIES

## CASES

*Abbott Labs. v. Syntron Bioresearch, Inc.*,
  Nos. 02-1203 and 02-1257, 2003 U.S. App. LEXIS 13825
  (Fed. Cir. July 10, 2003) ................................................................. 4

*Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.*,
  67 U.S.P.Q.2d 1132 (Fed. Cir. 2003) ...................................... 3, 4, 5

*Dow Chem. Co. v. United States*,
  226 F.3d 1334 (Fed. Cir. 2000) ........................................... 12, 18

*Inverness Med. v. Warner Lambert Co.*,
  309 F.3d 1373 (Fed. Cir. 2002) ...................................................... 21

*Karlin Tech., Inc. v. Surgical Dynamics, Inc.*,
  177 F.3d 968 (Fed. Cir. 1999) ............................................. 12, 18

*Northern Telecom Ltd. v. Samsung Elecs. Co.*,
  215 F.3d 1281 (Fed. Cir. 2000) ...................................................... 5

*Northrop Grumman Corp. v. Intel Corp.*,
  325 F.3d 1346 (Fed. Cir. 2003) ...................................................... 5

*Rexnord Corp. v. Laitram Corp.*,
  274 F.3d 1336 (Fed. Cir. 2001) ...................................................... 5

*Robotic Visions Sys., Inc. v. View Eng'g, Inc.*,
  189 F.3d 1370 (Fed. Cir. 1999) ........................................... 12, 18

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
  299 F.3d 1313 (Fed. Cir. 2002) ................................................. 3, 4

*Texas Digital Sys., Inc. v. Telegenix, Inc.*,
  308 F.3d 1193 (Fed. Cir. 2002) ............................................. passim

*Vitronics Corp. v. Conceptronic, Inc.*,
  90 F.3d 1576 (Fed. Cir. 1996) ...................................................... 5

BRINKS HOFER GILSON & LIONE
NBC Tower – Suite 3600
455 North Cityfront Plaza Drive
Chicago, Illinois  60611-5599
Telephone:  (312) 321-4200
Facsimile:  (312) 321-4299

## I.    INTRODUCTION

Overture Services, Inc. ("Overture") filed suit against Google, Inc. ("Google") for infringement of U.S. Patent No. 6,269,361 (the "'361 patent"). (A copy of the '361 patent is included as Exhibit 1 in Volume I of the exhibits submitted herewith.)[1] Overture has asserted that Google infringes claims 1-2, 4-5, 7-18, 20-30, and 33-67 of the '361 patent. The parties have agreed that twelve claim terms require interpretation by the Court. The parties' proposed interpretations are included in the Joint Claim Construction Statement ("JCCS"), a copy of which is included as Exhibit 2.

## II.    OVERVIEW OF THE TECHNOLOGY

Overture (formerly known as GoTo.com) pioneered the billion-dollar industry of bidded cost-per-click advertising on the Internet. The '361 patent relates to innovative features developed by Overture for bidded cost-per-click advertising, including account management systems that enable advertisers to conveniently and efficiently manage their own bidded cost-per-click advertisements. The following overview generally describes bidded cost-per-click advertising and Overture's patented account management technology.[2]

### A.    Bidded Cost-Per-Click Advertising

Bidded cost-per-click advertising enables an advertiser to place bids that influence the placement of its advertisement in a collection of advertisements that may be displayed to an Internet user in response to the user's search query. (Col. 3, ll. 62-65.)[3] For instance, the best ad position may be awarded to the highest bidder. (Col. 3, l. 65 – col. 4, l. 6.) Other factors also may be considered in combination with the bid amount to determine the ad's position. (Col. 4, ll. 60-64.)

---

[1] The exhibits to this brief are contained in two bound volumes that Overture submitted concurrently herewith. Volume I contains the '361 patent, the Joint Claim Construction Statement, sample claims with the disputed terms highlighted, dictionary definitions, and copies of relevant intrinsic evidence. Volume II contains the file history of the '361 patent.

[2] A more thorough description of online advertising systems can be found in columns 1-3 of the '361 patent.

[3] All citations in the form of col. ___, l. ___ are to the '361 patent, unless otherwise indicated.

OVERTURE'S OPENING CLAIM
CONSTRUCTION BRIEF
C 02-01991 JSW

- 1 -

BRINKS HOFER GILSON & LIONE
NBC Tower – Suite 3600
455 North Cityfront Plaza Drive
Chicago, Illinois  60611-5599
Telephone:  (312) 321-4200
Facsimile:   (312) 321-4299

1   This type of online advertising is called "cost-per-click" because an advertiser pays for its

2   ad only when an Internet user "clicks" on the ad to get to the advertiser's web site. (Col. 3,

3   l. 65 – col. 4, l. 2.) This differs from traditional banner-type advertisements that were typically

4   based on a cost-per-impression fee structure. (Col. 3, ll. 19-28.) In cost-per-impression systems,

5   the advertiser pays a fee for each time its ad is displayed to an Internet user, regardless of

6   whether the user clicks through to the advertiser's web site. (Col. 3, ll. 33-38.) Cost-per-click

7   ads present a more cost-effective alternative because the advertiser pays only for traffic that is

8   actually delivered to its web site. (Col. 3, ll. 51-58.)

9       **B.    The Account Management Features Of The '361 Patent**

10      Overture's innovations in the field of bidded cost-per-click advertising included

11  development of the account management features described in the '361 patent. These account

12  management features enable advertisers to manage their bidded cost-per-click ads conveniently

13  and efficiently. Some of these account management features were commercially implemented by

14  Overture through its automated advertiser interface, known as the DirecTraffic Center® system.

15      The development of Overture's original cost-per-click search system focused largely on

16  the Internet user's experience. In contrast, development of the DirecTraffic Center® system

17  focused on the advertiser's experience and the use of automated backend account management

18  technology. For instance, the patented invention enables an advertiser to log into an online

19  account management system via a password-protected authentication procedure. (Col. 6, ll. 26-

20  28; col. 10, l. 59 – col. 11, l. 10.) The advertiser may then add, delete, or modify search listings.

21  (Col. 6, ll. 28-29.) A database stores the advertiser's search listings, each of which is associated

22  with both a search term and a bid amount. (Col. 6, ll. 16-26; col. 12, ll. 21-42.)

23      When an Internet user enters a search query, a search engine searches the database for

24  search listings that would provide a match with the user's query. (Col. 4, ll. 60-64; col. 10,

25  ll. 7-21.) The search engine then generates a search result list of matching search listings.

26  (Col. 4, ll. 60-64; col. 10, ll. 19-21.) The search listings are arranged in an order that is

27  determined by one or more parameters, including the bid amount associated with each of the

28  search listings. (Col. 4, ll. 60-64.) Some or all of the information in the search result list can be

OVERTURE'S OPENING CLAIM
CONSTRUCTION BRIEF
C 02-01991 JSW

- 2 -

**BRINKS HOFER GILSON & LIONE**
NBC Tower – Suite 3600
455 North Cityfront Plaza Drive
Chicago, Illinois 60611-5599
Telephone: (312) 321-4200
Facsimile: (312) 321-4299

displayed to the Internet user, and the user can select a displayed entry by clicking on a hyperlink in that entry. (Col. 7, ll. 53-67.) Generally, when a user clicks on an advertiser's hyperlink, the user is redirected to the advertiser's web site. (Col. 9, ll. 49-60; col. 12, l. 64 – col. 13, l. 1.) Consistent with the cost-per-click model, the advertiser only pays when the user actually clicks through to the advertiser's site.

To adjust the position of its search listing in a search result list, the advertiser can increase or decrease its bid amount. (Col. 18, ll. 54-65.) The invention enables the advertiser to change its bid directly via the password-protected online account management system. (*Id.*) In addition, the advertiser can view activity reports for its existing search listings and generate an estimate of the cost to include a new search listing. (Col. 13, ll. 50-63; col. 20, l. 66 – col. 21, l. 53.) Together, the patented features of the '361 patent enable advertisers to manage conveniently and efficiently their bidded cost-per-click search listings.

## III. CONTROLLING LEGAL PRINCIPLES

The Federal Circuit's opinion last year in *Texas Digital Sys., Inc. v. Telegenix, Inc.,* 308 F.3d 1193 (Fed. Cir. 2002) provided an extensive and clarifying discussion of the principles that control claim construction and will therefore be cited extensively below.

A claim construction analysis must begin with and must remain focused on the words of the claim because the claim language defines the metes and bounds of claim scope. *Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.*, 67 U.S.P.Q.2d 1132, 1136 (Fed. Cir. 2003); *Texas Digital Sys., Inc. v. Telegenix, Inc.,* 308 F.3d 1193, 1201-02 (Fed. Cir. 2002). In interpreting the words of a claim, there is a "heavy presumption" that a claim term carries its ordinary and customary meaning, as understood by a person of ordinary skill in the relevant art. *Texas Digital*, 308 F.3d at 1202; *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002) (*citing CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002)). Dictionaries, encyclopedias, and treatises are particularly useful in determining the ordinary and customary meanings of claim terms, and it is entirely proper for the Court to consult these materials to determine the ordinary meaning of claim terms. *Texas Digital*, 308 F.3d at 1202. If a word has multiple dictionary definitions, some of which may have no relation to the claimed invention, the

OVERTURE'S OPENING CLAIM
CONSTRUCTION BRIEF
C 02-01991 JSW

- 3 -

BRINKS HOFER GILSON & LIONE
NBC Tower – Suite 3600
455 North Cityfront Plaza Drive
Chicago, Illinois 60611-5599
Telephone: (312) 321-4200
Facsimile: (312) 321-4299

intrinsic record should be consulted to identify the dictionary definition or definitions that are most consistent with the use of the words by the inventor. *Brookhill-Wilk 1*, 67 U.S.P.Q.2d at 1137; *Texas Digital*, 308 F.3d at 1203. The intrinsic record includes the claims, the written description, the drawings, and the file history. *Teleflex*, 299 F.3d at 1324. If more than one dictionary definition is consistent with the use of words in the intrinsic evidence, the claim terms may be construed to encompass all such consistent meanings. *Brookhill-Wilk 1*, 67 U.S.P.Q.2d at 1137; *Texas Digital*, 308 F.3d at 1203.

The "heavy presumption" that the ordinary meaning of the claim terms applies is rebutted only when the patentee demonstrated an intent to deviate from the ordinary and accustomed meaning of a claim term by either redefining the term or by characterizing the invention in the intrinsic record in a manner that deviates from the term's ordinary meaning. *Texas Digital*, 308 F.3d at 1204 (*citing Teleflex*, 299 F.3d at 1324). For the Court to find that the patentee redefined a term in a way that deviates from its ordinary meaning, the patentee must have set forth *an explicit definition* of that term that is different from its ordinary meaning. *Texas Digital*, 308 F.3d at 1204. This requires that the definition appear with reasonable clarity, deliberateness, and precision. *Abbott Labs. v. Syntron Bioresearch, Inc.*, Nos. 02-1203 and 02-1257, 2003 U.S. App. LEXIS 13825, at *26 (Fed. Cir. July 10, 2003). For the Court to find that the patentee characterized the invention in a way that deviates from the ordinary meaning, the patentee must have disavowed or disclaimed scope of coverage by using words or expressions of *manifest exclusion or restriction*, representing a *clear disavowal* of claim scope. *Texas Digital*, 308 F.3d at 1204. If neither of these exceptions is present, the claim term must be given the full breadth of the term's ordinary meaning. *Brookhill-Wilk 1*, 67 U.S.P.Q.2d at 1138.

The "heavy presumption" is not rebutted when an accused infringer simply points to the preferred embodiment disclosed in the specification and argues that the claims should be limited to what is disclosed as a preferred embodiment. *Teleflex*, 299 F.3d at 1327 (*citing CCS Fitness*, 288 F.3d at 1366). Likewise, absent a clear disclaimer of particular subject matter, the fact that an inventor anticipated that an invention may be used in a particular manner and described that manner as a preferred embodiment does not limit the scope of the claims to that narrow context.

OVERTURE'S OPENING CLAIM
CONSTRUCTION BRIEF
C 02-01991 JSW

- 4 -

BRINKS HOFER GILSON & LIONE
NBC Tower – Suite 3600
455 North Cityfront Plaza Drive
Chicago, Illinois  60611-5599
Telephone:  (312) 321-4200
Facsimile:   (312) 321-4299

1   *Brookhill-Wilk 1*, 67 U.S.P.Q.2d at 1138; *Northrop Grumman Corp. v. Intel Corp.*, 325 F.3d

2   1346, 1355 (Fed. Cir. 2003).  In fact, when the specification includes language such as "it is to

3   be understood that the invention is not limited in its application to the details of construction and

4   the arrangements of components set forth in the following description or illustrated in the

5   drawings," the inventor has evidenced his intent not to limit his invention to the embodiments

6   disclosed in the specification and it is improper to do so.  *Rexnord Corp. v. Laitram Corp.*, 274

7   F.3d 1336, 1345 (Fed. Cir. 2001).

8        It is important to note that while the intrinsic record must be examined, it must be

9   examined only to make the determinations described above, and limitations from the

10  specification can never be read into the claims.  *Texas Digital*, 308 F.3d at 1204-05.  The *Texas*

11  *Digital* court reaffirmed this mandate and summarized the proper claim construction

12  methodology as follows:

13          By examining relevant dictionaries, encyclopedias, and treatises to
            ascertain possible meanings that would have been attributed to the
14          words of the claims by those skilled in the art, and by further
            utilizing the intrinsic record to select from those possible meanings
15          the one or ones most consistent with the use of the words by the
            inventor, the full breadth of the limitations intended by the
16          inventor will be more accurately determined and the improper
            importation of unintended limitations from the written description
17          into the claims will be more easily avoided.

18  *Id*. at 1205.

19       Extrinsic evidence cannot be used to construe the claims unless analysis of the intrinsic

20  evidence leaves the disputed claim term unclear.  *Vitronics Corp.*, 90 F.3d at 1584.  Extrinsic

21  evidence consists of any evidence external to the patent and its file history, such as technical

22  articles, inventor testimony, expert testimony, and, when relevant, statements made in the

23  prosecution of a related foreign application.  *Northern Telecom Ltd. v. Samsung Elecs. Co.*, 215

24  F.3d 1281, 1295-96 (Fed. Cir. 2000); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584

25  (Fed. Cir. 1996).  Even if extrinsic evidence is used, it cannot be used to arrive at a definition

26  that contradicts either the claim language or the teachings of the specification.  *Id.*  Indeed, where

27  the intrinsic evidence is clear, extrinsic evidence is entitled to no weight.  *Id.*

28

OVERTURE'S OPENING CLAIM
CONSTRUCTION BRIEF
C 02-01991 JSW

- 5 -

**BRINKS HOFER GILSON & LIONE**
NBC Tower – Suite 3600
455 North Cityfront Plaza Drive
Chicago, Illinois  60611-5599
Telephone:  (312) 321-4200
Facsimile:   (312) 321-4299

## IV.    CLAIM INTERPRETATION ISSUES

The parties have agreed that twelve disputed terms require interpretation by the Court.  In the following sections, Overture proposes interpretations of these terms using the claim construction methodology required by the Federal Circuit in *Texas Digital*.  Overture's proposed interpretations are based on the ordinary meaning of the disputed terms, and are consistent with the intrinsic evidence.  Because the meanings of all twelve disputed terms are clear from the intrinsic evidence, no extrinsic evidence should be considered.

### A.    *Search Listing*

The term "search listing" is found in all of the asserted claims.  Claim 1, which is representative, is shown in Exhibit 3, with the term "search listing" highlighted.

### 1.    Proposed Interpretations And Areas of Dispute

Overture's proposed interpretation is "a collection of information that includes at least one search term and that can be included in a search result list." (JCCS at 3.)  Google's proposed interpretation is "an entry in (or intended to be in) a search result list."  (*Id.*)  Overture believes that the primary dispute between the parties is whether a search listing is a collection of information that can be included in a search result list or whether a search listing is an entry in a search result list.  As explained below, Overture's proposed interpretation is consistent with the ordinary meaning of this term, as well as the use of this term in both the claims and the patent specification.  Google's proposed interpretation, however, is internally inconsistent and contrary to the intrinsic evidence.[4]

### 2.    The Ordinary Meaning Of "Search Listing"

Dictionary definitions evidence the ordinary meaning of the phrase "search listing." Starting with the primary word "listing," the various dictionaries identified by Overture and

---

[4] Overture does not fully understand Google's proposed definition for several reasons.  First, Overture does not understand how the two or more alternative definitions that Google has proposed for a single term can be used consistently in the claims.  Second, Overture does not understand what it means to be intended to be in a list, or how an entry can be intended to be in a list.

BRINKS HOFER GILSON & LIONE
NBC Tower – Suite 3600
455 North Cityfront Plaza Drive
Chicago, Illinois  60611-5599
Telephone:  (312) 321-4200
Facsimile:  (312) 321-4299

Google include different definitions of this term, as shown in Exhibit 4.[5]  Overture submits that guidance to the proper construction of "listing" as used in this claim term can be found in those dictionary definitions that invoke the familiar concept of a real estate "listing"—that is, a collection of information (concerning a particular piece of property in the real estate context) that exists on its own, whether or not it has been aggregated with other collections of information. Because there are different definitions for the term "listing," however, the Federal Circuit instructs that the intrinsic evidence must be examined to determine which of the definitions is most consistent with the inventors' use of this word.

> **a.    The Claim Language Confirms Overture's Identification Of The Proper Ordinary Meaning Of "Search Listing"**

The Federal Circuit has repeatedly stated that a claim construction analysis must begin with and remain focused on the claim language itself.  *E.g., Texas Digital*, 308 F.3d at 1201-02. Here, the claim language conclusively shows that Overture has adopted the proper ordinary meaning and Google has adopted the wrong ordinary meaning.  The relevant portions of claim 1 recite:

> maintaining a database including a plurality of ***search listings***, wherein each search listing is associated with a network location, ***at least one search term*** and a modifiable bid amount that is independent of other components of the search listing, the bid amount being associated with at least one of the search term and the network location, the bid amount corresponding to a money amount that is deducted from an account of a network information provider associated with the network location upon receipt of a retrieval request for the network location
>
> receiving a search request from the searcher;
>
> ***identifying the search listings having search terms generating a match with the search request***;

---

[5] The dictionary definitions shown in Exhibits 4, 6, 8, 11, 13, 15, 17, 19, 21, 23, 25, and 27 of Volume I submitted herewith are the definitions that Overture believes are relevant to the construction of the terms in dispute.  However, Overture has not attempted to identify the does not know which specific dictionary definitions that Google believes support its proposed claim constructions because Google did not identify any specific definitions in its portion of the Joint Claim Construction Statement.

BRINKS HOFER GILSON & LIONE
NBC Tower – Suite 3600
455 North Cityfront Plaza Drive
Chicago, Illinois  60611-5599
Telephone:  (312) 321-4200
Facsimile:   (312) 321-4299

***ordering the identified search listings into a search result list*** in accordance with the values of the respective bid amounts for the identified search listings

These portions of claim 1 clearly show that a search listing is a collection of information that includes at least a search term.  They also clearly show that only certain search listings (i.e., those search listings that have a search term that matches the search request), are part of the search result list.  The search listings that have a search term that does not match the search request do *not* become part of the search result list.  Thus, search listings may be included, but need not always be included, in a search result list.

This claim language demonstrates that the most relevant dictionary definitions are those that describe a listing as a collection of information that exists on its own, regardless of whether it has been aggregated with other listings.

> **b.    The Specification Also Confirms Overture's Identification Of The Proper Ordinary Meaning Of "Search Listing"**

Even if the Court finds that the claim language itself does not resolve the dispute, the specification confirms that Overture has chosen the proper ordinary meaning of "search listing." The specification makes clear that a search listing is a collection of information, like a real estate listing, and that a search listing is not limited to an entry in a list.  The specification explains that a search listing is created by an advertiser, is stored in a database, and exists independently of a search result list.  For example, the specification states that

> [o]ne embodiment of the system and method of the present invention provides a ***database*** having accounts for the web site promoters. Each account includes contact and billing information for a web site promoter. In addition, each account includes at least one ***search listing***, each ***search listing*** having five components: a description of the web site to be listed, the Uniform Resource Locator (URL) of the web site, a search term comprising one or more keywords, a bid amount, and a title for the ***search listing***. Each account may also include the promoter's payment history and a history of ***search listings*** entered by the user. The promoter logs in to his or her account via an authentication process running on a secure server. Once logged in, the promoter may add, delete, or modify a ***search listing***.

(col. 6, ll. 16-29)  There are several other portions of the specification that also make clear that a search listing is a collection of information that is created by an advertiser and then stored in a

OVERTURE'S OPENING CLAIM
CONSTRUCTION BRIEF
C 02-01991 JSW

- 8 -

BRINKS HOFER GILSON & LIONE
NBC Tower – Suite 3600
455 North Cityfront Plaza Drive
Chicago, Illinois  60611-5599
Telephone:  (312) 321-4200
Facsimile:  (312) 321-4299

database. (*E.g.*, Figure 2; Figure 5; abstract, ll. 8-19; col. 9, ll. 30-34; col. 12, ll. 21-29; col. 12, l. 40 – col. 13, l. 2; col. 17, ll. 9-18; col. 18, ll. 37-53; col. 19, ll. 8-37; col. 19, ll. 50-54; col. 19, l. 59 – col. 20, l. 12; col. 20, ll. 13-28; col. 20, ll. 32-44.)

The specification also makes clear that although a search listing **may** be included in a search result list, search listings exist independently of a search result list and need not always be included in a search result list. This is because only search listings having search terms that provide a match with the search query are included in a search result list. (*E.g.*, col. 17, ll. 19-34; *see also* col. 13, ll. 9-16; col. 14, ll. 25-27; col. 17, l. 53 – col. 18, l. 14; col. 22, ll. 22-27.)[6]

Therefore, the ordinary meaning of "search listing" that is supported by the claim language and consistent with the specification is "a collection of information that includes at least one search term and that can be included in a search result list." There is nothing in the intrinsic evidence that rebuts the heavy presumption that ordinary meaning governs construction of this term.

### B.    *Search Result List*

The term "search result list" is found in all of the asserted claims. Claim 1, which is representative, is shown in Exhibit 5, with the term "search result list" highlighted.

### 1.    **Proposed Interpretations And Areas of Dispute**

Overture's proposed interpretation is "a set of search listings that is obtained by calculation." (JCCS at 10.) Google's proposed interpretation is "the series of entries, selected from the database being searched by a searcher, arranged one after the other, containing the information responsive to the searcher's search." (*Id.*) The parties generally agree that a search result list includes a collection of information that is obtained or selected as the result of some type of action, such as a search and/or calculation. The primary dispute between the parties, however, is whether the contents of a search result list must simply be gathered together, or

---

[6] With respect to the adjective "search," which precedes the term "listing," the dictionary definitions cited by the parties are virtually identical, and convey the concept of making an examination to find or locate something. Overture's proposed interpretation of "search listing" addresses this concept because it requires that the search listing "include at least one search term."

OVERTURE'S OPENING CLAIM
CONSTRUCTION BRIEF
C 02-01991 JSW

- 9 -

BRINKS HOFER GILSON & LIONE
NBC Tower – Suite 3600
455 North Cityfront Plaza Drive
Chicago, Illinois  60611-5599
Telephone:  (312) 321-4200
Facsimile:   (312) 321-4299

1  whether the contents must be arranged one after the other and displayed to a searcher, as Google

2  suggests.  To the extent that Google's proposed interpretation requires that contents of a search

3  result list must be arranged one after the other and displayed to a searcher, Google's proposed

4  interpretation is inconsistent with the intrinsic evidence.  Overture's proposed interpretation,

5  which does not requires that the contents of a search result list be arranged in a particular order

6  or displayed to a searcher, is consistent with the ordinary meaning of "search result list," as well

7  as the use of that term in the patent specification.

8  **2.     The Ordinary Meaning Of "Search Result List"**

9  The definitions of "search" and "result" from the dictionaries identified by Overture and

10  Google are largely the same, as shown in Exhibit 6.  Together, the ordinary meanings of "search"

11  and "result" suggest the identification and collection of information, as the result of an action

12  such as a search and/or calculation.

13  With respect to the term "list," however, the dictionary definitions differ slightly, as

14  shown in Exhibit 6.  Several of these definitions support Overture's proposed construction,

15  which requires only that the contents of a search result list be collected together in some format.

16  Although some of the definitions suggest that the contents of a list must be written, printed, or

17  imagined one after the other, none of the definitions state, or even suggest, that the contents of a

18  list must be displayed to a searcher.  Moreover, a review of the intrinsic evidence shows that

19  Overture's proposed construction is consistent with the inventors' use of "search result list,"

20  while Google's is not.

21  **a.     The Claim Language Confirms Overture's**
         **Identification Of The Proper Ordinary Meaning Of**
22       **"Search Result List"**

23  As explained above, a claim construction analysis must begin with and remain focused on

24  the claim language itself.  *See Texas Digital*, 308 F.3d at 1201-02.  With respect to the term

25  "search result list," the claim language conclusively shows that Overture has adopted the proper

26  ordinary meaning and Google has adopted the wrong ordinary meaning.  By way of example,

27  claim 30 recites: "*generating* a search result list  comprised of search listings."  The actual words

28  of this claim, as well as those in all of the other independent claims, do not include any

BRINKS HOFER GILSON & LIONE
NBC Tower – Suite 3600
455 North Cityfront Plaza Drive
Chicago, Illinois  60611-5599
Telephone:  (312) 321-4200
Facsimile:  (312) 321-4299

1    references to displaying the search result list to a searcher.[7]  Thus, the actual words of the claims

2    demonstrate that the most relevant dictionary definitions are those that describe a listing as a

3    series of entries.

**b.    The Specification Also Confirms Overture's
Identification Of The Proper Ordinary Meaning Of
"Search Result List"**

6        The specification confirms that generating a search result list does not equate to

7    displaying a search result list to a searcher.  The specification clearly distinguishes between the

8    act of *generating* a search result list and the act of *displaying* a search result list.  The

9    specification repeatedly states that after receiving a search query, the system generates a search

10   result list by identifying search listings that have search terms that match the search query.  The

11   specification also explains that, as a second step, some or all of the search result list may be

12   displayed to the searcher.  For example the specification states that

> [a] search engine program permits network users, upon navigating
> to the search engine web server URL or sites on other web servers
> capable of submitting queries to the search engine web server 24
> through their browser program 16, to type keyword queries to
> identify pages of interest among the millions of pages available on
> the World Wide Web. In a preferred embodiment of the present
> invention, the search engine web server 24 *generates* **a search
> result list** that includes, at least in part, relevant entries obtained
> from and formatted by the results of the bidding process conducted
> by the account management server 22. The search engine web
> server 24 generates a list of hypertext links to documents that
> contain information relevant to search terms entered by the user at
> the client computer 12. The search engine web server *transmits
> this list*, in the form of a web page, to the network user, *where it
> is displayed* on the browser 16 running on the client computer 12.
> A presently preferred embodiment of the search engine web server
> may be found by navigating to the web page at URL
> http://www.goto.com/. In addition, the search result list web page,
> an example of which is presented in FIG. 7, will be discussed
> below in further detail.

(Col. 8, l. 53 – col. 9, l. 7; *see also* col. 6, ll. 1-8; col. 10, ll. 16-21; col. 17, ll. 19-26.)

---

[7] Indeed, as described in more detail below, the act of displaying information from the search
result list is recited in several dependent claims.  Accordingly, the doctrine of claim
differentiation dictates that the term "search result list" itself cannot require displaying such data
to a searcher.

BRINKS HOFER GILSON & LIONE
NBC Tower – Suite 3600
455 North Cityfront Plaza Drive
Chicago, Illinois  60611-5599
Telephone:  (312) 321-4200
Facsimile:   (312) 321-4299

1    Accordingly, the specification makes clear that the act of generating a search result list,

2    as recited in the claims at issue, is separate and distinct from the act of displaying a search result

3    list to a searcher.  Therefore, the ordinary meaning of "search result list" most consistent with the

4    intrinsic record is "a set of search listings that is obtained by calculation."  There is nothing in

5    the intrinsic evidence that rebuts the heavy presumption that ordinary meaning governs

6    construction of this term.

7

8    **3.    The Doctrine Of Claim Differentiation Supports Overture's Interpretation**

9    Overture's proposed interpretation of "search result list," which does not require the

10    search result list to be displayed to a searcher, is supported by the doctrine of claim

11    differentiation.  The doctrine of claim differentiation dictates that an independent claim should

12    be given a broader scope than a dependent claim and limitations recited in a dependent claim

13    cannot be read into the independent claim.  *Dow Chem. Co. v. United States*, 226 F.3d 1334,

14    1341-42 (Fed. Cir. 2000); *Robotic Visions Sys., Inc. v. View Eng'g, Inc.,* 189 F.3d 1370, 1376

15    (Fed. Cir. 1999); *Karlin Tech. Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 971-72 (Fed. Cir.

16    1999).

17    In this instance, independent claims 15, 30, and 52 all recite, in one form or another,

18    generating a search result list.  Claims 48, 49, and 65 are dependent claims that depend from

19    claims 15, 30, and 52, respectively.  The only difference between the independent claims and

20    their respective dependent claims is that the dependent claims further require ***displaying*** data

21    from the search result list at a remote computer.  Because claims 15, 30, and 52 are the

22    independent claims, they must be broader than their respective dependent claims.  Accordingly,

23    claims 15, 30, and 52 cannot require displaying data from the search result list, which means that

24    the term "search result list" itself cannot require displaying such data to a searcher, as Google

25    has proposed.

26    **C.    *[Modifiable] Bit Amount***

27    The term "[modifiable] bid amount" is found in all of the asserted claims.  Claim 15,

28    which is representative, is shown in Exhibit 7.

OVERTURE'S OPENING CLAIM
CONSTRUCTION BRIEF
C 02-01991 JSW

- 12 -

BRINKS HOFER GILSON & LIONE
NBC Tower – Suite 3600
455 North Cityfront Plaza Drive
Chicago, Illinois  60611-5599
Telephone:  (312) 321-4200
Facsimile:   (312) 321-4299

1    **1.    Proposed Interpretations And Areas Of Dispute**

2    Overture's proposed definition of "[modifiable] bid amount" is "a quantity of money

3    [which can be changed] that a customer or client is willing to pay per click."  (JCCS at 15.)

4    Google's proposed definition is "the price the website promoter will pay upon occurrence of a

5    triggering event [changes to which can be controlled by the website promoter]."  (*Id.*)  Both

6    parties agree on two things: (1) a "bid amount" is a price or money amount; and (2) the price or

7    money amount is only charged upon the occurrence of a triggering event, such as a click.  The

8    primary disputes between the parties are:  (1) whether a "bid" is an amount that a customer or

9    client is ***willing to pay*** or a price that the website promoter ***will pay***; and (2) whether

10   "modifiable" simply means that the bid amount can be changed or whether it requires that the bid

11   amount can be changed by the website promoter.  As described below, Overture's proposed

12   interpretation is consistent with the ordinary meaning of "modifiable," the ordinary meaning of

13   "bid" and the inventors' use of the terms "modifiable" and "bid" in the patent specification.  By

14   contrast, Google's proposed interpretation is inconsistent with the ordinary meaning of both

15   "modifiable" and "bid" and is also contrary to the intrinsic evidence.

16   **2.    The Ordinary Meanings Of "Modifiable" And "Bid"**

17   The definitions of "modifiable" and "modify" from the various dictionaries identified by

18   Overture and Google are virtually identical, as shown in Exhibit 8.  All of the definitions refer to

19   the ability to be changed in some way.  None of these definitions refers to the manner in which a

20   change can be made, nor do they indicate who may make the changes.  Likewise, the

21   specification does not limit the manner in which the bid amount can be changed.  Indeed, the

22   specification describes that changes to the bid amount can be made in various ways.  (*E.g.*, col.

23   18, l. 66 – col. 19, l. 4; col. 19, ll. 38-58; col. 20, ll. 6-12.)  Accordingly, the ordinary meaning of

24   "modifiable" simply requires that the bid amount can be changed.  It does not require that the bid

25   amount be changed by the website promoter as Google's proposed interpretation suggests.

26   Indeed, Google's proposed interpretation represents a classic case of improperly reading a

27   limitation from the specification into the claims.

28

**BRINKS HOFER GILSON & LIONE**
NBC Tower – Suite 3600
455 North Cityfront Plaza Drive
Chicago, Illinois  60611-5599
Telephone:  (312) 321-4200
Facsimile:  (312) 321-4299

While the definitions of "bid" differ, as shown in Exhibit 8, these definitions all refer, in general, to an offer or proposal. One example given in several of the dictionaries as a common usage of "bid" is in conjunction with an auction, plainly a context relevant to the '361 patent. In an auction, bidders make bids to indicate their willingness to pay a certain price for something. Only one of the bidders, the winner of the auction, will actually pay the last bid made. The other bidders are not required to pay the amounts that they had previously bid, but those amounts are nonetheless called "bids." Thus, in the context of an auction the bids constitute an amount that a bidder is willing to pay, not an amount the bidder will necessarily pay. Thus, according to both dictionary definitions of the term "bid" and the most applicable common usage of that term, the ordinary meaning of "bid" is something that a bidder is willing to pay, *not* something that the bidder must pay in every instance.

The parties agree that (1) an "amount" is a price or a money amount, and (2) the term "[modifiable] bid amount" implies a triggering event, such as a click. Combining these principles with the ordinary meanings of the terms "modifiable" and "bid," yields the following ordinary meaning of "[modifiable] bid amount": "a quantity of money [which can be changed] that a customer or client is willing to pay per click." There is nothing in the intrinsic evidence that rebuts the heavy presumption that this ordinary meaning must be applied.

### 3.    Overture's Interpretation Is Consistent With The Intrinsic Evidence; Google's Is Not

The intrinsic evidence supports Overture's contention that the "bid" is the amount an advertiser is willing to pay, not what they will pay. While the specification discloses a preferred embodiment in which the bid amount is described as an amount that the advertiser will pay (col. 6, ll. 8-12), the specification does not limit the invention to this one example. For instance, the microfiche appendix to the '361 patent expressly states that "the bid price is the amount you're ***willing to pay*** for a user to click-through to your site from the GoTo search results listings after they have performed a search on one of your search terms." (See frames 81-82 of the microfiche sheet labeled OVG 022003, included as Exhibit 9) (emphasis added). Again, this intrinsic evidence supports Overture's interpretation of "bid" and shows that Google's

**BRINKS HOFER GILSON & LIONE**
NBC Tower – Suite 3600
455 North Cityfront Plaza Drive
Chicago, Illinois  60611-5599
Telephone:  (312) 321-4200
Facsimile:   (312) 321-4299

interpretation of "bid," which states that it is a price that a web site promoter will pay, is contrary to the intrinsic evidence.

### D.    A Modifiable Bid Amount That Is *Independent Of* Other Components Of The Search Listing

The term "independent of" is found in all of the asserted claims.  Claim 15, which is representative, is shown in Exhibit 10, with the term "independent of" highlighted.

#### 1.    Proposed Interpretations And Areas of Dispute

Overture's proposed interpretation is "a modifiable bid amount that is **not dependent or contingent upon** other components of the search listing."  (JCCS at 20.)  Google's proposed interpretation is "a modifiable bid amount that is **unconstrained by** other components of the search listing."  (*Id.*)  The dispute between the parties is whether "independent of" means "not dependent or contingent upon" or "unconstrained by."  As explained below, Overture's proposed interpretation is consistent with both the ordinary meaning of "independent of" and the inventors' use of that term in the patent specification.  By contrast, Google's proposed interpretation is contrary to the ordinary meaning of "independent of."

#### 2.    The Ordinary Meaning Of "Independent Of"

The definitions of "independent" from the various dictionaries identified by Overture and Google are largely the same, as shown in Exhibit 11.  None of these definitions include the words "constrained" or "unconstrained."  Rather, these definitions show that the ordinary meaning of "independent" is "not dependent or contingent upon."  Accordingly, Google's proposed interpretation is directly contrary to the ordinary meaning of this term.  The correct ordinary meaning, as proposed by Overture, is "not dependent or contingent upon."  There is nothing in the intrinsic evidence that rebuts the heavy presumption that this ordinary meaning must be applied.

### E.    The Three Ranking Terms

Three of the twelve disputed terms relate to the ranking of search listings in a search result list.  These three disputed terms are (1) "in accordance with" (*i.e.,* "ordering . . . **in accordance with** the values of the respective bid amounts"); (2) "determined using" (*i.e.,*

OVERTURE'S OPENING CLAIM
CONSTRUCTION BRIEF
C 02-01991 JSW

- 15 -

BRINKS HOFER GILSON & LIONE
NBC Tower – Suite 3600
455 North Cityfront Plaza Drive
Chicago, Illinois  60611-5599
Telephone:  (312) 321-4200
Facsimile:  (312) 321-4299

"arranged in an order **determined using** the respective bid amounts"); and (3) "corresponding to" (*i.e.,* "arranged in an order **corresponding to** the bid amounts"). As explained below, these three terms include different words and have three different ordinary meanings. The three different ordinary meanings yield claims of varying scope. "In accordance with" is the narrowest of the three terms and yields the narrowest claim scope. "Determined using" is the broadest term and yields the broadest claim scope. "Corresponding to" falls within this spectrum, between "in accordance with" and "determined using." Overture's proposed interpretations of these three terms adopt the ordinary meanings because there is nothing in the intrinsic evidence that rebuts the heavy presumption that the ordinary meanings must be applied.

It appears, however, that Google has improperly interpreted all three of these terms to have essentially the same meaning—that search listings are ranked using only the bid amount, and that they are ranked in direct order of bid amount. Google's proposed interpretations are contrary to the ordinary meanings of these terms and the intrinsic evidence.

### 1.    Ordering . . . *In Accordance With* The Values Of The Respective Bid Amounts

The term "in accordance with" is found in claims 1-2, 4-5, and 7-13. Claim 1, which is representative, is shown in Exhibit 12, with the term "in accordance with" highlighted.

#### a.    Proposed Interpretations And Areas Of Dispute

Overture's proposed interpretation is "ordering . . . **in agreement with** the values of the respective bid amounts." (JCCS at 23.) Google's proposed interpretation is "ordering . . . **in conformance with** the values of the respective bid amounts." Of the three ranking terms, the parties are closest to agreement on the proper interpretation of "in accordance with."

#### b.    The Ordinary Meaning Of "In Accordance With"

The definitions of "accordance" from the various dictionaries identified by Overture and Google are largely the same, as shown in Exhibit 13. These definitions show that the ordinary meaning of "accordance" is agreement. Accordingly, the ordinary meaning of "in accordance with" is in agreement with. There is nothing in the intrinsic evidence that rebuts the heavy presumption that this ordinary meaning must be applied.

BRINKS HOFER GILSON & LIONE
NBC Tower – Suite 3600
455 North Cityfront Plaza Drive
Chicago, Illinois 60611-5599
Telephone: (312) 321-4200
Facsimile:  (312) 321-4299

1

2    **2.    Arranged In An Order *Determined Using* The Bid Amounts /
        Position . . . *Determined Using* The Bid Amount**

3        The phrase "arranged in an order **determined using** the bid amounts" is found in claims

4    14 and 52-67.  Claim 52, which is representative, is shown in Exhibit 14.  The phrase

5    "position . . . **determined using** the bid amount" is found in claims 15-18, 20-29, and 48.  Claim

6    15 is representative of this phrase, and also is shown in Exhibit 14, with the term "determined

7    using" highlighted.

8        **a.    Proposed Interpretations And Areas of Dispute**

9        Overture's proposed interpretations are "arranged in an order **ascertained by an analysis**

10    **that utilizes** the bid amounts" and "position . . . **ascertained by an analysis that utilizes** the bid

11    amount."  (JCCS at 32.)  Google's proposed interpretations are "arranged in an order **established**

12    **by** the bid amounts" and "position . . . **established by** the bid amount."  (*Id.*)  Again, Google

13    seems to contend that arranging search listings in an order "determined using" the bid amounts

14    requires using the bid amounts, ***and only the bid amounts***, to rank the search listings in direct

15    order of bid amount, from highest to lowest.  In this case, the dispute between the parties is

16    substantial.  Overture gives "determined using" the proper interpretation, as evidenced by both

17    the ordinary meaning of "determined using" and the inventors' use of "determined using" in the

18    '361 patent.  Google's proposed interpretation, in contrast, seeks to import limitations with no

19    basis in the claim language and is directly contrary to the intrinsic evidence.

20        **b.    The Ordinary Meaning Of "Determined Using"**

21        The definitions of "determine" and "using" from the various dictionaries identified by

22    Overture and Google are largely the same, as shown in Exhibit 15.  These definitions show that

23    the ordinary meaning of "determine" is ascertained through some type of analysis, and that the

24    ordinary meaning of "use" is utilize or employ.  They directly support Overture's proposed

25    construction.  Google, on the other hand, attempts to rewrite rather than define this term by

26    replacing "using" with "by."  This is simply a bald effort to narrow claim scope that has no

27    support in the claim language.  The claim language does not say "determined ***by*** the bid

28    amount";  nor does it say "determined using ***only*** the bid amount."  Combining the ordinary

OVERTURE'S OPENING CLAIM
CONSTRUCTION BRIEF
C 02-01991 JSW

- 17 -

**BRINKS HOFER GILSON & LIONE**
NBC Tower – Suite 3600
455 North Cityfront Plaza Drive
Chicago, Illinois  60611-5599
Telephone:  (312) 321-4200
Facsimile:   (312) 321-4299

1  meaning of the terms "determined" and "using" yields the ordinary meaning of "ascertained by

2  an analysis that utilizes," which is the definition proposed by Overture.

3         There is nothing in the intrinsic evidence that rebuts the heavy presumption that this

4  ordinary meaning, as proposed by Overture, must be applied.  Indeed, to the extent that Google

5  argues that the identified search listings must be ordered using *only* the bid amount, its argument

6  is directly contrary to the specification.  While the '361 patent discloses a preferred embodiment

7  that uses only the bid amount to determine the ranking order of search listings (*see* col. 13. ll. 9-

8  24), the specification expressly states that "[w]hen an Internet user enters the search terms in a

9  search engine query, the search engine will generate a search result list with the web site

10 promoter's listing in a position influenced by *one or more parameters* defined by the promoter"

11 (col. 4, ll. 60-64) (emphasis added).  Accordingly, Overture's proposed interpretation is

12 consistent with both the ordinary meaning of this term and the intrinsic evidence.  Google's

13 proposed interpretation impermissibly attempts to read a limitation from a preferred embodiment

14 into the claims.

15

16         **c.     The Doctrine of Claim Differentiation Supports
                     Overture's Interpretation**

17         The doctrine of claim differentiation dictates that an independent claim should be given a

18 broader scope than a dependent claim, and limitations recited in a dependent claim cannot be

19 read into the independent claim.  *Dow Chem.*, 226 F.3d at 1341-42; *Robotic Vision Sys.,* 189

20 F.3d at 1376; *Karlin Tech.,* 177 F.3d at 971-72.  To the extent that Google attempts to limit the

21 interpretation of "determined using" to a ranking system that uses only the bid amounts to

22 determine the order and where the rankings are ordered from the highest bid amount to the

23 lowest bid amount, the doctrine of claim differentiation further confirms that such an

24 interpretation is incorrect.

25         In this instance, independent claim 52 recites that the search listings in the search result

26 list are arranged in an order that is determined using the bid amounts of the search listings.

27 Claims 63 and 64 are dependent claims, each of which further describes the manner of ranking

28 search listings that is recited in claim 52.  As recited in dependent claim 63, the listings are

OVERTURE'S OPENING CLAIM
CONSTRUCTION BRIEF
C 02-01991 JSW

- 18 -

BRINKS HOFER GILSON & LIONE
NBC Tower – Suite 3600
455 North Cityfront Plaza Drive
Chicago, Illinois  60611-5599
Telephone:  (312) 321-4200
Facsimile:   (312) 321-4299

1  sorted in decreasing order from highest to lowest bid amounts.  Claim 64, which depends from

2  claim 63, provides even further details.  Claim 64 requires that a rank value be assigned to each

3  search listing of a search result list in the sorted order starting at the search listing that has the

4  highest bid amount (which is assigned the smallest rank value), and ending with the search

5  listing that has the lowest bid amount (which is assigned the largest rank value).

6      Because claim 52 is the independent claim, it must be broader than its dependent claims,

7  including claims 63 and 64.  Therefore, claim 52 cannot require ordering search listings in direct

8  order of bid amount from highest to lowest, which means that "determined using" cannot have

9  the narrow interpretation that Google implies.  Such a narrow interpretation would violate the

10  doctrine of claim differentiation.

### 3.    Arranged In An Order *Corresponding To* The Bid Amounts

12  The phrase "arranged in a order **corresponding to** the bid amounts" is found in claims

13  30, 33-47, and 49-51.  Claim 30, which is representative, is shown in Exhibit 16, with the term

14  "corresponding to" highlighted.

#### a.    Proposed Interpretations And Areas of Dispute

16  Overture's proposed interpretation is "arranged in an order **similar to** the order of the bid

17  amounts."  (JCCS at 37.)  Google's proposed interpretation is "arranged in an order **conforming**

18  **to** the bid amounts."  (*Id.*)  Once again, Google seems to improperly narrow "corresponding to"

19  to require using only the bid amounts to rank the search listings directly by bid amount.  This

20  narrow interpretation, however, is inconsistent with the ordinary meaning of "corresponding to."

21  By contrast, Overture's proposed interpretation is consistent with the ordinary meaning of this

22  term, as well as the use of this term in the patent specification.

#### b.    The Ordinary Meaning Of "Corresponding To"

24  The definitions of "corresponding" and "correspond" in the various dictionaries identified

25  by Overture and Google are largely the same, as shown in Exhibit 17.  Five of these six

26  definitions are consistent with Overture's proposed interpretation of "corresponding to."  Only

27  one of the definitions even includes the word "conforming," which is Google's proposed

28

OVERTURE'S OPENING CLAIM
CONSTRUCTION BRIEF
C 02-01991 JSW

- 19 -

BRINKS HOFER GILSON & LIONE
NBC Tower – Suite 3600
455 North Cityfront Plaza Drive
Chicago, Illinois 60611-5599
Telephone: (312) 321-4200
Facsimile: (312) 321-4299

definition.  Accordingly, the overwhelming majority of these dictionary definitions show that the ordinary meaning of the term "corresponding" is "similar," as proposed by Overture.

There is nothing in the intrinsic evidence that rebuts the heavy presumption that this ordinary meaning, as proposed by Overture, must be applied.  Indeed, to the extent that Google is arguing that the identified search listings must be ordered using only the bid amount, it is directly contrary to the specification, which expressly states that "[w]hen an Internet user enters the search terms in a search engine query, the search engine will generate a search result list with the web site promoter's listing in a position influenced by ***one or more parameters*** defined by the promoter."  (Col. 4, ll. 60-64) (emphasis added).  Accordingly, Overture's proposed interpretation is consistent with both the ordinary meaning of this term and the intrinsic evidence, while Google's proposed interpretation is directly contrary to both.

### c.    The Doctrine of Claim Differentiation Supports Overture's Interpretation

To the extent that Google is attempting to limit the interpretation of "corresponding to" to a ranking system that uses only the bid amounts to rank the search listings in direct order from the highest bid amount to the lowest bid amount, the doctrine of claim differentiation further confirms that such an interpretation is incorrect.

In this instance, claim 30 is an independent claim and it recites that the search listings in the search result list are arranged in an order corresponding to the bid amounts of the search listings.  Claims 46 and 47 are dependent claims and that each adds additional details about the manner ranking of search listings that is recited in claim 30.  Claim 46 depends from claim 30 and explains that in this dependent claim, the listings are sorted in decreasing order from highest to lowest bid amounts.  Claim 47 depends from claim 46 and further requires that a rank value is assigned to each search listing of the search result list in the sorted order starting at the search listing with the highest bid amount, which is assigned the smallest rank value, and ending with the search listing with the lowest bid amount, which is assigned the largest rank value.

Because claim 30 is the independent claim, it must be broader than its dependent claims, including claims 46 and 47.  Accordingly, to the extent that Google's proposed interpretation of

OVERTURE'S OPENING CLAIM
CONSTRUCTION BRIEF
C 02-01991 JSW

- 20 -

BRINKS HOFER GILSON & LIONE
NBC Tower – Suite 3600
455 North Cityfront Plaza Drive
Chicago, Illinois  60611-5599
Telephone:  (312) 321-4200
Facsimile:   (312) 321-4299

1  "corresponding to" limits the ordering of the search listing to an arrangement in which the search

2  listings are ranked in direct order of the bid amounts, it violates the doctrine of claim

3  differentiation.

### 4.    The Varying Claim Scope of the Three Ranking Terms

5        As demonstrated above, the three disputed ranking terms represent a spectrum of

6  different meanings and claim scope.  The terms range from the narrow "in accordance with," to

7  the intermediate "corresponding to," to the broad "determined using."  Google improperly

8  attempts to give all three terms the same definition, and selects as its definition a narrow

9  interpretation that is contrary to both the ordinary meanings and the intrinsic evidence.  A proper

10  claim construction analysis, however, dictates that these three different terms be given three

11  different interpretations.  *See Inverness Med. v. Warner Lambert Co*., 309 F.3d 1373, 1381-82

12  (Fed. Cir. 2002).

### F.    *In Response To*

14        The term "in response to" is found in all of the asserted claims.  Claim 1, which is

15  representative, is shown in Exhibit 18, with the term "in response to" highlighted.

### 1.    Proposed Interpretations And Areas of Dispute

17        Overture's proposed interpretation is "in reaction to."  (JCCS at 46.)  Google's proposed

18  interpretation is "in fulfillment of."  (*Id.*)  The dispute between the parties is whether "in

19  response to" means "in reaction to" or "in fulfillment of."

### 2.    The Ordinary Meaning Of "In Response To"

21        The definitions of "response" from the various dictionaries identified by Overture and

22  Google are largely the same, as shown in Exhibit 19.  These dictionary definitions show that the

23  ordinary meaning of "response" is "reaction," as Overture has proposed.  None of these

24  definitions even includes the word "fulfillment," which is Google proposed interpretation.  There

25  is nothing in the intrinsic evidence that rebuts the heavy presumption that this ordinary meaning

26  must be applied.

27

28

BRINKS HOFER GILSON & LIONE
NBC Tower – Suite 3600
455 North Cityfront Plaza Drive
Chicago, Illinois  60611-5599
Telephone:  (312) 321-4200
Facsimile:   (312) 321-4299

### G.  *Database*

The term "database" is found in all of the asserted claims.[8]  Claim 1, which is representative, is shown in Exhibit 20, with the term "database" highlighted.

#### 1.  **Proposed Interpretation And Areas of Dispute**

Overture's proposed interpretation is "a collection of related data, organized in such a way that its contents can be accessed, managed, and updated by a computer."  (JCCS at 51.)  Google's proposed interpretation is "a computer based system for recording and maintaining information."  (*Id.*)  The primary disputes between the parties are:  (1) whether a database requires a collection of data or merely the ability to store data; and (2) whether the contents of the database must be accessible, manageable, and updateable by a computer.

#### 2.  **The Ordinary Meaning Of "Database"**

The definitions of "database" from the dictionaries  identified by Overture and Google are largely the same, as shown in Exhibit 21.  All of the definitions show that the ordinary meaning of database requires (1) a collection of related data, and (2) that the data be organized in such a way that its contents can be accessed, managed, and updated by a computer.  These definitions also show that a computer based system that is merely capable of recording and maintaining information does not comport with the ordinary meaning of database.  Accordingly, the ordinary meaning of "database" is "a collection of related data, organized in such a way that its contents can be accessed, managed, and updated by a computer," as Overture has proposed.  There is nothing in the intrinsic evidence that rebuts the heavy presumption that this ordinary meaning must be applied.

### H.  *Deducted From An Account*

The term "deducted from an account" is found in claims 1-2, 4-5, and 7-10.  Claim 1, which is representative, is shown in Exhibit 22.

---

[8] In claims 15-18, 20-30, and 33-51, the actual term used is "account database."  For these claims, Overture contends that the term "account database" should be interpreted as "a collection of related data, organized in such a way that its contents can be accessed, managed, and updated by a computer, where the data relates to a customer or client."

BRINKS HOFER GILSON & LIONE
NBC Tower – Suite 3600
455 North Cityfront Plaza Drive
Chicago, Illinois  60611-5599
Telephone:  (312) 321-4200
Facsimile:  (312) 321-4299

### 1.    Proposed Interpretations And Areas Of Dispute

Overture's proposed interpretation is "taken away from a record of financial transactions." (JCCS at 55.) Google's proposed interpretation is "subtracted from a prepaid account." (*Id.*) The primary dispute between the parties is whether "account" means "record of financial transactions" or "prepaid account."

### 2.    The Ordinary Meaning Of "Deducted From An Account"

The parties agree that the ordinary meaning of "deduct" is take away from or subtract. The definitions of "account" from the dictionaries identified by Overture and Google are largely the same, as shown in Exhibit 23. These definitions show that the ordinary meaning of "account" is a "record of financial transactions." The term "prepaid," which Google has included in its proposed definition, is not listed in any of these definitions. Indeed, as explained in more detail below, Google's attempt to include the word "prepaid" in its definition is a classic example of reading a limitation from a preferred embodiment into a claim, which the Federal Circuit has uniformly held to be impermissible. Accordingly, the ordinary meaning of the phrase "deducted from an account" is "taken away from a record of financial transactions," as Overture has proposed.

There is nothing in the intrinsic evidence that rebuts the heavy presumption that this ordinary meaning must be applied. Indeed, Overture's proposed construction is entirely consistent with the intrinsic evidence, while Google's proposed construction is directly contrary to the intrinsic evidence. The patent specification clearly discloses two different types of accounts – accounts that are invoiced and that do not require prepayment and prepaid accounts. (Col. 13, ll. 3-9; col. 14, ll. 21-33.) Thus, Google's proposed interpretation is not only wrong because it attempts to incorporate limitations from a preferred embodiment into a claim, it is also directly contrary to the intrinsic record because while at least two different types of accounts are disclosed in the specification, Google's proposed interpretation only address one type of account and completely ignores the second type of account expressly disclosed.

BRINKS HOFER GILSON & LIONE
NBC Tower – Suite 3600
455 North Cityfront Plaza Drive
Chicago, Illinois  60611-5599
Telephone:  (312) 321-4200
Facsimile:   (312) 321-4299

## I.    *Account Record*

The term "account record" is found in claims 4-5, 7-10, 14-18, 20-30, and 33-67. Claim 15, which is representative, is shown in Exhibit 24.

### 1.    **Proposed Interpretations And Areas of Dispute**

Overture's proposed interpretation is "a collection of data that is part of a database, where the data relates to a customer or client." (JCCS at 59.) Google's proposed interpretation is "a record of information pertaining to an account." (*Id.*) It is difficult to characterize the dispute between the parties because Google's proposed interpretation is not a definition—it is merely a reordering of the words "account" and "record."

### 2.    **The Ordinary Meaning Of "Account Record"**

As noted above in Subsection H, the definitions of "account" from the dictionaries identified by Overture and Google are largely the same. (See Exhibit 23.) These definitions show that the ordinary meaning of "account" is "a customer or client." The definitions of "record" also are largely the same, as shown in Exhibit 25. These dictionary definitions show that the ordinary meaning of "record" is "a collection of data that is part of a database." Combining the ordinary meanings of "account" and "record" yield a definition of "account record" as "a collection of data that is part of a database, where the data relates to a customer or client," as Overture has proposed. There is nothing in the intrinsic evidence that rebuts the heavy presumption that this ordinary meaning must be applied.

## J.    *From A/The Searcher*

The term "from a/the searcher" is found in claims 1-2, 4-5, 7-13, 15-18, 20-29, 48, and 52-67. Claim 1, which is representative, is shown in Exhibit 26.

### 1.    **Proposed Interpretations And Areas Of Dispute**

Overture's proposed interpretation is "originated by the user who is seeking information." (JCCS at 63.) Google's proposed interpretation is "input by the individual using the search engine to perform a search." (*Id.*) The primary dispute between the parties is whether the term "from the searcher" requires the use of a search engine.

OVERTURE'S OPENING CLAIM
CONSTRUCTION BRIEF
C 02-01991 JSW

- 24 -

BRINKS HOFER GILSON & LIONE
NBC Tower – Suite 3600
455 North Cityfront Plaza Drive
Chicago, Illinois  60611-5599
Telephone:  (312) 321-4200
Facsimile:   (312) 321-4299

1

2.    **The Ordinary Meaning Of "From A/The Searcher"**

2      The definitions of "from," "searcher," and "search" from the dictionaries identified by

3  Overture and Google are largely the same, as shown in Exhibits 6 and 27.  These dictionary

4  definitions show that the ordinary meaning of "from," is "originated by."  The definitions for

5  "searcher" and "search" show that the ordinary meaning of "searcher," is "the user who is

6  seeking information."  None of the definitions cited by either party mention anything about a

7  search engine, as Google's proposed interpretation requires.  Accordingly, the true ordinary

8  meaning of "from a search" is "originated by the user who is seeking information," as Overture

9  has proposed.  There is nothing in the intrinsic evidence that rebuts the heavy presumption that

10  this ordinary meaning must be applied.

11  **V.    CONCLUSION**

12      Overture has interpreted the twelve disputed claim terms in keeping with the

13  requirements set forth by the Federal Circuit, including those in the Federal Circuit's particularly

14  instructive *Texas Digital* case.  Overture's interpretations are consistent with the ordinary

15  meanings of the disputed terms, as well as the inventors' use of those terms in the specification

16  and file history of the '361 patent.  Accordingly, Overture respectfully requests that the Court

17  adopt Overture's proposed interpretations of the disputed claim terms.

18

19      Dated: August 8, 2003                BRINKS HOFER GILSON & LIONE

20

21                                       By: _____ *s/ Charles M. McMahon* _____

22                                           Charles M. McMahon
                                             BRINKS HOFER GILSON & LIONE

23                                           Attorneys for Plaintiff
                                             OVERTURE SERVICES, INC.

24

25

26

27

28

BRINKS HOFER GILSON & LIONE
NBC Tower – Suite 3600
455 North Cityfront Plaza Drive
Chicago, Illinois  60611-5599
Telephone:  (312) 321-4200
Facsimile:  (312) 321-4299