1  KEKER & VAN NEST, LLP
   JOHN W. KEKER - #49092
2  DARALYN J. DURIE - #169825
   CHRISTINE P. SUN - #218701
3  710 Sansome Street
   San Francisco, CA 94111-1704
4  Telephone: (415) 391-5400
   Facsimile: (415) 397-7188
5
   Attorneys for Defendant and Counterclaimant
6  GOOGLE TECHNOLOGY INC., sued under its former name
   GOOGLE INC.
7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                SAN FRANCISCO DIVISION

11

12 | OVERTURE SERVICES, INC., a Delaware corporation, | Case No. C 02-01991 JSW (EDL) |
|---|---|
13 | Plaintiff and Counterdefendant, | **GOOGLE'S OPPOSITION TO OVERTURE'S MOTION FOR PROTECTIVE ORDER (REDACTED)** |
14 | v. | |
15 | GOOGLE INC., a California corporation, | Date:      August 19, 2003<br>Time:     9:30 a.m.<br>Courtroom: E, 15th Floor<br>Judge:   Hon. Elizabeth Laporte |
16 | Defendant and Counterclaimant. | |
17

18

19                    **REDACTED VERSION**

20            **(UNREDACTED VERSION FILED UNDER SEAL)**

21

22

23

24

25

26

27

28

316973.01

GOOGLE'S OPPOSITION TO OVERTURE'S MOTION FOR PROTECTIVE ORDER (REDACTED)
CASE NO. C 02-01991 JSW (EDL)

Dockets.Justia.com

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

I.   INTRODUCTION .........................................................................................................1

II.  RELEVANT BACKGROUND .....................................................................................2

     A.   The '361 Patent ..................................................................................................2

     B.   The Discovery Sought By Google .....................................................................4

III. ARGUMENT .................................................................................................................5

     A.   Overture Does Not Have Standing To Object To The Subpoenas On Behalf Of Third Parties, and, Even If It Did, Overture Has Admitted That, To Its Knowledge, No Advertisers Have Complained About The Subpoenas. ..........................................................................................................6

     B.   Overture Has Provided No Evidence That Google's Subpoenas Constitute Harassment Of Overture For An Improper Purpose..............................7

     C.   The Requested Information Is Relevant To Google's Infringement Defense and Cannot Be Ascertained By The Discovery Provided By Overture ..............................................................................................................9

IV.  CONCLUSION ............................................................................................................11

# TABLE OF AUTHORITIES

## FEDERAL CASES

Abbott Laboratories v. Geneva Pharmaceuticals, Inc.
 182 F.3d 1315 (Fed. Cir. 1999) ...................................................................................................9

Beckman Industrial v. International Insurance Co.
 966 F.2d 470 (9th Cir. 1992) ......................................................................................................7

Cobb v. Danzig
 190 F.R.D. 564 (S.D. Cal. 1999) ................................................................................................6

Dean v. Anderson
 2002 WL 1377729, 3 (D. Kan. June 6, 2002) ............................................................................6

Diamond State Ins. Co. v. Rebel Oil Co., Inc.
 157 F.R.D. 691 (D. Nev. 1994) ..................................................................................................7

Harris v. Wells
 1990 WL 150445 (D. Conn. Sept. 5, 1990) ................................................................................8

In re Seagate Tech. II Sec. Litig.
 1993 WL 293008, 1 (N.D. Cal. June 10, 1993) .........................................................................6

Joy Techs. v Flakt, Inc.
 772 F. Supp. 842 (D. Del. 1991) ................................................................................................8

Marvin Lumber & Cedar Co. v. PPG Industrial, Inc.
 177 F.R.D. 443 (D. Minn. 1997) ................................................................................................7

Perry v. Best Lock
 1999 WL 33494858 (S.D. Ind. Jan. 21, 1999) ...........................................................................8

Rosen v. Tabby
 1996 WL 636158 (E.D. Pa. Oct. 29, 1996) ................................................................................8

United States ex rel Bagley v. TRW, Inc.
 204 F.R.D. 170 (C.D. Cal. 2001) ...............................................................................................5

Vogue Instrument Corp. v. Lem Instrument Corp.
 41 F.R.D. 346 (S.D.N.Y. 1967) ..................................................................................................7

Wright v. Montgomery County
    1999 WL 145205 (E.D. Pa. March 15, 1999)..................................................................8

**FEDERAL STATUTES**
35 U.S.C. §102(b) ...................................................................................................................1, 2

## I. INTRODUCTION

Overture has sued Google for infringement of United States Patent 6,269,361 ("the '361 patent").[1] Essentially, the '361 patent discloses a "pay for placement" Internet search engine. When a user conducts a search for information on the Internet, the patented system returns a list of advertisements which are ranked pursuant to the amount that the advertiser is willing to pay.

Based on the evidence it has gathered thus far, Google believes that the '361 patent is invalid because the patented invention was in public use more than one year prior to May 28, 1999, the filing date of the application ("the critical date"). 35 U.S.C. §102(b). Beginning in early 1998, Overture offered a pay-for placement search engine to the public on its website that Google believes embodied some or all of the claims of the '361 patent (the "pre-critical date system").

Google has served subpoenas on entities that advertised on the pre-critical date system, seeking information about the features of that system. Overture does not contest the relevance of the information sought. Rather, Overture contends that the mere number of subpoenas *in and of itself* justifies limiting Google's ability to seek this information.

Overture has admitted to Google during meet-and-confer that, to its knowledge, none of the advertisers subpoenaed by Google has objected to the scope or the subject matter of the subpoenas. Nor any advertiser complained to Overture that it felt harassed, overly burdened, or otherwise by the subpoenas. Indeed, Overture's only "evidence" that *Overture* is harassed or burdened by the subpoenas is the argument of its attorneys.

The requested information is relevant and is not duplicative of the discovery already provided. Google will continue to serve the subpoenas in batches until it obtains the information necessary to support its public use defense. But Overture's motion to prevent Google from gathering highly relevant information from third parties – which is based purely on unsupported allegations of harm – does not satisfy its heavy burden under Rule 26.

---

[1] GoTo.com is the assignee of the patent, and changed its name to Overture in 2001. For simplicity, we refer to the company as "Overture" throughout.

## II. RELEVANT BACKGROUND

### A. The '361 Patent

The '361 patent claims "a system and method for influencing a position on a search result list generated by a computer network search engine." See '361 patent, attached as Exh. A to the Declaration of Christine P. Sun in Support of Google's Opposition ("Sun Decl."). Essentially, the '361 patent discloses a system where advertisers can pay to have their listings ranked higher in the results displayed to the individual seeking information on the search engine. As described in the '361 specification, the advertiser influences its position in the search result list by participating in "an online competitive bidding system." Id. at Col. 4:65 to 5:1. Typically, the bid is a price that will be charged for a "click" on the advertiser's listing. Predictably, the "higher the bid, the more advantageous the placement" of an advertiser's listing on the search result list. Id. at Col. 5:35-37.

During the prosecution of the '361 patent, the Patent Examiner rejected the claims based upon a May 19, 1998 press release describing the pre-critical date system ("the May 19, 1998 press release"). See Sun Decl., Exh. B (Office Action dated January 17, 1999) at GOG 31636-637; see also Sun Decl., Exh. C (May 19, 1998 press release) at OVG 015852.[2] The press release explained that "advertisers only pay for actual visits to their sites." Sun Decl., Exh. C at OVG_001402. The Examiner concluded that the May 19, 1998 press release was itself a public disclosure that anticipated the pending claims. Sun Decl., Exh. B at GOG 31636-637; see also 35 U.S.C. § 102(b). The Examiner also noted that, according to the press release, Overture's system had been in public use prior to the critical date. Sun Decl., Exh. B at GOG 31637; see also 35 U.S.C. § 102(b).

In response, the prosecuting attorneys argued that the press release did not disclose at least one limitation of each of the pending independent claims. See Sun Decl., Exh. F (April 6, 2000 Response) at GOG 31653-654. For example, for Claim 1, attorney John Rauch ("Rauch")

---

[2] Although Overture had previously represented that it had submitted a copy of each of the prior art references it deemed most closely related to the pending claims, see Sun Decl., Exh. D (Pet. to Make Special dated Oct. 22, 1999) at OVG_016112, Overture had failed to provide the Patent Office with a copy of this press release. See Sun Decl., Exh. E (Info. Discl. Stmt. dated Aug. 27,

of Brinks Hofer Gilson & Lione ("Brinks Hofer") asserted that the press release did not disclose "recording a retrieval request event" (i.e., a click on a particular advertisement). Id. at GOG 31653.

**REDACTED**

As to Claim 15, Mr. Rauch argued that the press release did not disclose determining a position for an "updated search listing." See Exh. F to Sun Decl. (Response dated April 6, 2000) at GOG 31653 (emphases added).

**REDACTED**

At the Examiner's request, Mr. Rauch submitted a declaration from the lead inventor, Darren Davis, attesting to the features of the pre-critical date system. See Exh. I to Sun Decl. (Declaration of Darren Davis, dated Sept. 16, 2000, regarding Patent Application No. 09/322,677). Based on the purported identification of missing features in the pre-critical date

1999).

1  system, the Examiner allowed the independent claims that ultimately issued.  <u>See</u> Exh. J to Sun
2  Decl. (Notice of Allowability) at GOG 31824-832.

**B.    The Discovery Sought By Google**

On September 20, 2002, Google served Overture with requests for production that sought, *inter alia*, information related to its prior public use defense.  <u>See</u> Sun Decl., ¶ 12, Exh. K.  These included requests for all advertising and promotional materials and other statements made to third parties about the features, advantages, and use of the pre-critical date system.  <u>Id.</u>  After meet and confer, Overture eventually agreed to produce documents responsive to those requests.  <u>See id.</u>, ¶ 13, Exh. L.  However, Overture has not produced any billing statements to customers of the pre-critical date system, or information sufficient to determine what Overture told customers about the features and costs of the pre-critical date system.  <u>Id.</u>, ¶ 14.  Nor does the source code produced by Overture fully answer the question; for example, it does not disclose whether Overture customers could make telephonic requests to change a search listing.

On December 11, 2002, Google asked Overture to identify all customers of the pre-critical date system.  <u>See</u> Sun Decl., Exh. M at 2.  On January 10, 2003, Overture responded to Google's interrogatory with a list of approximately 500 names and addresses.  <u>See id.</u>, Exh. N.  Google eventually culled down the list to about 300 advertisers that, based on Google's research, are still in business.  <u>Id.</u>, ¶ 15.

In May, 2003, Google took the deposition of the lead inventor, Darren Davis.  Mr. Davis twice submitted to the Examiner declarations attesting to his personal knowledge of the features of the pre-critical date system.  <u>See</u> Exh. O to Sun Decl. (Declaration of Darren Davis, dated October 22, 1999, In Support Of Petition To Make Special); <u>id.</u>, Exh. I.

**REDACTED**

In June 2003, Google served 25 subpoenas to advertisers located in California.  Sun

4

Decl., ¶ 17. The subpoenas asked for two categories of documents: all documents relating to the pre-critical date system, and all documents reflecting payments from advertisers to Overture for the use of that system. <u>See</u> Declaration of Charles McMahon In Support Of Motion For Protective Order, Exh. B. With each subpoena, Google enclosed a letter advising the advertiser that it could contact Google's attorneys or Google's vendor, Compex Legal Services, if the advertiser had any concerns about the subpoena. <u>See</u> Sun Decl., Exh. P. No advertiser has contacted Google or its vendor to express any such concern. <u>Id.</u>, ¶ 17. The letter also advised that the advertiser could contact Google's attorneys or Google's vendor, Compex Legal Services, if it desired an extension of time to respond to the subpoena. <u>Id.</u>, Exh. P. Google has granted extensions of time to each third party who has made such a request. <u>See</u> Sun Decl., ¶ 17.

Google has received only one substantive response to the 25 subpoenas served in June, which consists of a bill for month ending January 31, 2000. <u>See</u> Sun Decl., Exh. Q.[3] . The remaining responses indicated that the requested records either did not exist, could not be found, or were destroyed. <u>See id.</u>, Exh. R. As a result, in July 2003, Google served an additional 46 subpoenas to advertisers located in California. <u>See</u> McMahon Decl., Exh. C. The response date for those subpoenas is August 12, 2003. <u>Id.</u> Google intends to serve any additional subpoenas in waves until it gathers sufficient information related to its defense. <u>See</u> Sun Decl., ¶ 19.

### III.    ARGUMENT

Overture has moved for a protective order pursuant to Rule 26(c), under which "the court . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." Rule 26(c), Fed. R. Civ.P. Overture has the burden of establishing that there is "good cause" to issue the requested order. <u>See</u> <u>United States ex rel Bagley v. TRW, Inc.</u>, 204 F.R.D. 170, 175 (C.D. Cal. 2001) ("The party seeking a protective order has the burden of showing the existence of good cause."). To establish the existence of "good cause" a party must make a particularized showing of facts, and cannot rely on broad allegation or on conjecture. <u>See</u> <u>Beckman Indus. v. International Ins. Co.</u>, 966 F.2d

---

[3] The dearth of substantive responses presumably results from the fact that the requested records are more than five years old.

1  470, 476 (9th Cir. 1992) ("'Broad allegations of harm, unsubstantiated by specific examples or

2  articulated reasoning, do not satisfy the Rule 26(c) test.'") (internal citation omitted).

3  Moreover, "[e]ven if 'good cause' is shown, the court must balance the competing

4  interests of allowing discovery and the relative burdens to the parties." Cobb v. Danzig, 190

5  F.R.D. 564, 566 (S.D. Cal. 1999) (citing Wood v. McEwen, 644 F.2d 797, 801-802 (9th Cir.

6  1981)). Thus, the Court should not grant Overture's motion unless it concludes that it has shown

7  good cause and that any burden caused by the discovery it seeks to prevent outweighs the harm

8  caused to Google by being unable to serve additional third party subpoenas related to the pre-

9  critical date system.[4]

**A. Overture Does Not Have Standing To Object To The Subpoenas On Behalf Of Third Parties, and, Even If It Did, Overture Has Admitted That, To Its Knowledge, No Advertisers Have Complained About The Subpoenas.**

Overture contends that Google's subpoenas constitute harassment to Overture's customers, "many of [them which are] small businesses without the resources to properly defend themselves against Google's subpoenas." Opening Brief at 6:4-6. The Court should reject this argument for two reasons.

First, Overture does not have standing to object to the subpoenas on behalf of the advertisers, regardless of whether they are "small businesses." In re Seagate Tech. II Sec. Litig., 1993 WL 293008, *1 (N.D. Cal. June 10, 1993) (no right for movant to object to subpoenas directed towards its investment banks); see also Dean v. Anderson, 2002 WL 1377729, *3 (D. Kan. June 6, 2002) (husband has no right to object to subpoena for bank records on behalf of wife); Vogue Instrument Corp. v. Lem Instruments Corp., 41 F.R.D. 346, 348 (S.D.N.Y. 1967) (denying motion to quash as movants, "being neither persons in possession or control of the documents, nor the persons to whom the subpoenas are directed, lack standing to attack the subpoenas."). Rule 45 of Federal Rules of Civil Procedure limits the right to challenge

---

[4] Even if the Court were inclined to grant Overture's motion, the proposed order is overbroad. Although Overture proclaims, *inter alia*, that the order will prevent harassment of Overture customers caused by Google's requests for documents, the order it has proposed ostensibly prevents Google from seeking documents from any third party, which could include Overture vendors and former Overture employees, related to Overture's cost-per-click system prior to June 1998.

1  document requests to non-parties to the person or entity to whom the subpoena is directed. Rule
2  45, Fed. R. Civ.P. Accordingly, Overture may not challenge the subpoenas on its customers'
3  behalf.
4      Second, when asked point blank during its meet and confer with Google, Overture could
5  not name a single advertiser who believed that the subpoenas constituted harassment. Sun Decl.,
6  ¶ 20. Nor could Overture identify one single customer who believed that the subpoenas were
7  overly burdensome. Id. Not one advertiser has complained to Google or its vendor about these
8  subpoenas. Id., ¶ 20. Now, Overture has brought this motion, claiming again that its customers
9  are being harassed, but again with no evidence to support its allegations. Overture has had at
10 least two opportunities to put forth *some* evidence of this purported harassment and failed to do
11 so. The Court should reject Overture's unsupported allegations outright.

**B.  Overture Has Provided No Evidence That Google's Subpoenas Constitute Harassment Of Overture For An Improper Purpose**

    Overture also claims that Google's subpoenas are unduly burdensome and harassing to Overture. First, Overture has put forth no evidence of this proclaimed "burden" or "harassment." Indeed, Overture does not even *attempt* to articulate why the subpoenas will cause or have caused harm to Overture's ongoing business. This broad and unsubstantiated allegation of harm does not meet Overture's heavy burden of proving that it is entitled to a protective order. See Beckman Industrial v. International Insurance Co., 966 F.2d 470, 476 (9th Cir. 1992).

    Diamond State Insur. Co. v. Rebel Oil Co., Inc., 157 F.R.D. 691, 695 (D. Nev. 1994) is illustrative of Overture's heavy burden even where the disputed subpoenas seem on their face duplicative of other requests. In Diamond State, the defendant, the insured party, sought identical documents from plaintiff, the insurer, and the agent who issued the policy to defendant, which was not a party to the suit. Id. at 693-94. The agent brought a motion to quash defendant's subpoena on the grounds that compliance would be burdensome, expensive, and duplicative of documents available from the plaintiff. Id. at 696. The court rejected all three grounds, noting first that the agent had failed to substantiate its generalized allegations of harm with an affidavit or other evidence. Id. With respect to the argument that the subpoena was

1  duplicative, the court noted the "apparent duplication" of portions of requests made to the agent
2  and the plaintiff. Id. Nonetheless, the court denied the motion to quash, recognizing that the
3  discovery requests were made to two separate business entities and "the documents actually
4  maintained in the files of each entity may not be identical." Id. at 697. See also Wright v.
5  Montgomery County, 1999 WL 145205, *9 (E.D.Pa. March 15, 1999) (denying motion to quash
6  where movant failed to show undue burden) ; Rosen v. Tabby, 1996 WL 636158, *2 (E.D.Pa.
7  Oct. 29, 1996) (same).

8      Like the movant in Diamond State, here, Overture relies on unsupported, generalized
9  allegations of harm. Overture also relies on the mere fact that the contested discovery requests
10 are apparently duplicative of requests to other parties as the primary reason to grant its motion.
11 But, as the court recognized in Diamond State, Google seeks documents from separate business
12 entities that will not necessarily have documents that are responsive to Google's requests.
13 Moreover, once Google does receive sufficient documents related to its infringement defense, it
14 will stop serving additional subpoenas related to that defense on advertisers. Thus, Overture's
15 assertions of burden and harassment are not only devoid of any factual support, but also
16 inapplicable as a matter of logic to the circumstances here.

17     Second, the cases cited by Overture do not apply here. Marvin Lumber & Cedar Co. v.
18 PPG Indus., Inc., 177 F.R.D. 443, 445 (D. Minn. 1997), involved a concern about excessive
19 "travel time," which will not result from Google's subpoenas for documents. In Joy Techs. v
20 Flakt, Inc., 772 F. Supp. 842 (D. Del. 1991) and Harris v. Wells, 1990 WL 150445 (D. Conn.
21 Sept. 5, 1990), the courts concluded that there had been a showing of actual, competitive injury,
22 and that the document requests were wholly duplicative of information available from the
23 parties. Finally, in Perry v. Best Lock, 1999 WL 33494858 (S.D. Ind. Jan. 21, 1999), the
24 subpoenas broadly sought sensitive employment information which impinged on the plaintiff's
25 right of privacy. Even if Overture could claim that documents produced by advertisers are
26 somehow confidential to Overture, any such concern is addressed by the Protective Order
27 entered in this case.
28

**C.   The Requested Information Is Relevant To Google's Infringement Defense and Cannot Be Ascertained By The Discovery Provided By Overture**

Google contends that the '361 patent is invalid because the invention was in public use within the meaning of 35 U.S.C. § 102(b) more than one year prior to the filing date of the application. The first step in determining whether a patent is invalid under the section 102(b) is to determine whether the pre-critical date product met or inherently possessed each of the limitations of the claims. See Abbott Laboratories v. Geneva Pharmaceuticals, Inc., 182 F.3d 1315, 1319 (Fed. Cir. 1999).

Overture has asserted that the source code for the pre-critical date system "provides the best evidence of exactly which features were present in Overture's system prior to June 1998." Opening Brief at 4:24-26. Overture's assertion is wrong on at least two counts. First, it is not clear that all of the relevant features of the pre-critical date system were embodied in computer code, and thus determinable by examination of the source code. Second, Google cannot be limited to one form of evidence, and in any event evidence obtainable from third parties may well be more persuasive to a jury than the source code.

Overture's archived source code at best discloses what aspects of the pre-critical date system were embodied in computer code. Although Claim 14 of the '361 patent includes several limitations that must be implemented in computer code, none of the other claims expressly requires the use of computer code. Thus, the archived source code may not reflect aspects of the pre-critical date system that were manually implemented by Overture employees.

For example, Claim 15 recites a method that, among other things, comprises "receiving . . . a change request for a search listing" and "updating the search listing . . . in response to the change request." Sun Decl., Exh. A. at Col. 25:47-54.

**REDACTED**

However, the archived source code will not indicate

9

1  whether, prior to the critical date, Overture made changes to advertisers' search listings in
2  response to change requests that were submitted by telephone or electronic mail.
3       A jury could find evidence obtained from third parties easier to understand than expert
4  testimony about the details of what thousands of lines of computer code mean.  Source code will
5  rarely if ever be clear on its face to a layperson; its significance usually must be presented
6  through expert testimony.  Google is entitled to seek discovery that would allow it to prove what
7  features were present in the pre-critical date system by way of non-expert testimony.  The
8  subpoenas at issue are designed to seek exactly that sort of evidence.  For example, Claim 1
9  recites a limitation of "recording a retrieval request event," , *i.e.* recording clickthroughs.  See
10 Sun Decl., Exh. A at Col. 23:17-20; Davis Depo. (Exh. G) at 119:11-120:3.

**REDACTED**

14      Google is
15 entitled to find out from the advertisers whether they were invoiced, and whether those invoices
16 were paid.
17      By its motion, Overture seeks to limit the sources of evidence Google can rely upon in
18 proving the features of Overture's pre-critical date system.  However, it is not up to Overture to
19 decide what evidence Google is entitled to rely upon, especially given that Overture has pointed
20 to nothing other than its own attorneys' speculation to support its charges of burden and
21 harassment.

### IV. CONCLUSION

For the reasons stated above, the Court should deny Overture's motion for a protective order.

Dated: August 11, 2003                           KEKER & VAN NEST, LLP


By: _____/s/ Christine P. Sun_____
CHRISTINE P. SUN
Attorneys for Defendant and
Counterclaimant GOOGLE
TECHNOLOGY INC., sued under its
former name GOOGLE INC.