# EXHIBIT D

Jack C. Berenzweig
312-321-4212
Email JCB@brinkshofer.com

**BRINKS**
**HOFER**
**GILSON**
**& LIONE**

A PROFESSIONAL CORPORATION
INTELLECTUAL PROPERTY ATTORNEYS

NBC TOWER - SUITE 3600
455 N. CITYFRONT PLAZA DRIVE
CHICAGO, ILLINOIS 60611-5599
http://www.brinkshofer.com
FAX 312-321-4299
TELEPHONE 312-321-4200

TOLEDO, OH
INDIANAPOLIS, IN
SAN JOSE, CA
DETROIT, MI
ARLINGTON, VA

**VIA Facsimile**
**(415) 397-7188**

September 18, 2002

Michael Kwun, Esq.
Keker & Van Nest, L.L.P.
710 Sansome Street
San Francisco, CA 94111-1704

Re: *Overture Services, Inc. v. Google, Inc.*

Dear Michael,

Thank you for your letter dated September 17, 2002, which listed the six topics that we discussed during our telephone conversation. For the purpose of completeness and to facilitate a final resolution of these matters, I felt that it would be best to summarize the details of our discussion. We are still considering these various topics with our client and will provide you with our comments in the near future.

In the interim, the following is a summary of the substance of the six topics that we discussed during the telephone conference call.

**1. Document Production (excluding email production which will be governed by No. 2)**
Google intends to make an initial production of documents in either paper or electronic form on October 11. Google expects that this production will constitute roughly 95% of its total production in this case, with the remaining 5% being produced as it is found. Google will ship the material to BHGL by courier and proposes that it charge the cost of production to Overture and, similarly, when Overture produces documents for Google, that Google will be charged for the production. Google will also provide BHGL the same extensions of time that BHGL will be providing to Google, should the parties agree to the October 11 date.

Michael Kwun, Esq.
September 18, 2002
Page 2

## 2. E-Mail Production

Google has suggested a method for searching for and producing e-mail that they want both parties to adopt. Jon Streeter's letter dated September 17, 2001 describes the details of the e-mail discussion, with the following clarifications. Jon's proposal combines the searching for e-mail on the individual hard drives with the searching for e-mail on backup tapes. It was my understanding that the individual hard drives of relevant employees will be searched using the pre-specified search terms that are to be provided by the party propounding the discovery, independently of any search of tape backups. As to the extent of the existence of any tape backups of e-mail systems, you advised me that Google has maintained backup tapes for its e-mail servers for every day and can restore any day that Overture designates. I advised you that I did not know the extent of Overture's backup tapes and that I would check with my client.

## 3. Protective Order

Google no longer requires that specified non-attorneys be given access to confidential documents. Google will not agree to having three in-house attorneys from Overture included under the protective order. Google insists on limiting the number of in-house attorneys to two.

## 4. 30(b)(6) Depositions

In response to Overture's Rule 30(b)(6) Deposition notice, Google has presented two alternative options:

> (1) Google will provide one witness on October 25, 2002, to address all of the topics and Google will not identify the person in advance of the deposition. The deposition will be limited to seven hours, no matter how many topics are to be covered.

> (2) Google will provide multiple witnesses to address the topics, where each witness will testify about his/her area of interest (i.e., separate witnesses to address financial issues, product development issues, etc.). Google will identify the witnesses in advance, (on October 11 in conjunction with the document production). Each deposition will count as both the 30(b)(6) for the designated topics and the person's individual deposition. Because the depositions would most likely occur before the e-mail production is completed, it is Google's position that it will not allow a witness to be re-deposed after the e-mail production. There was no discussion regarding the length of these combined 30(b)(6)-individual depositions.

Michael Kwun, Esq.
September 18, 2002
Page 3

**5. Phased Discovery**
Google proposes that Damages discovery and Willfulness discovery should be postponed until after the Markman hearing.

**6. Overture's Infringement Contentions**
Google contends that Overture's initial claim assertions are inadequate and has requested that they be supplemented.

While we did not discuss this during our telephone conference call, Overture has concerns regarding Google's recent responses to Overture's First Set of Interrogatories (Nos. 1-7) and First Set of Requests for the Production of Documents and Things (Nos. 1-72). Overture believes that some of these responses are inadequate and should be supplemented. When Overture propounded these discovery requests, it used, among others, the term "Google's Sponsored Search System" which it defined as follows:

> Any and all hardware and software components that are used to implement any search or advertising program that is designed, made, used, operated, licensed, or sold by Google, in which websites where uniform resource locaters (URLs) are included in an index or pool of sites available for display as a result of participation in a paid placement or paid inclusion program. Such search or advertising programs include, but are not limited to, Google's AdWords Select Program.

In responding to Overture's discovery requests, Google has objected on the ground that "the term 'Google's Sponsored Search System' is vague, ambiguous and compound, and renders the interrogatory overbroad and unduly burdensome." In fact, at least insofar as the interrogatory responses are concerned, Google has expressly limited its responses to its "original AdWords Program."

Overture does not believe that Google's objection to the term "Google's Sponsored Search System" is well-founded. There is nothing vague, ambiguous, overly broad or unduly burdensome about this definition. As far as we can discern from Google's website, it has offered only three advertising programs: Premium Sponsorships, AdWords Select, and the recently discontinued AdWords.

Michael Kwun, Esq.
September 18, 2002
Page 4

We request that Google reconsider the aforementioned objections and supplement its responses.

Very truly yours,

Jack C. Berenzweig

cc:   Anthony Fenwick, Esq.