1  ROBERT T. HASLAM (#71134)
2  ROBERT D. FRAM (#126750)
   M. PATRICIA THAYER (#90818)
3  S. ELIZABETH MITCHELL (#187053)
   HELLER EHRMAN WHITE & McAULIFFE LLP
4  333 Bush Street
5  San Francisco, CA 94104-2878
   Telephone: (415) 772-6000
6  Facsimile: (415) 772-6268

7  BRINKS HOFER GILSON & LIONE
   JACK C. BERENZWEIG
8  JASON C. WHITE
9  NBC Tower--Suite 3600
   455 North Cityfront Plaza Drive
10 Chicago, Illinois 60611
11 Telephone: (312) 321-4200
   Facsimile: (312) 321-4299
12
13 Attorneys for Plaintiff,
   OVERTURE SERVICES, INC.
14

15                    UNITED STATES DISTRICT COURT

16                    NORTHERN DISTRICT OF CALIFORNIA

17                        SAN FRANCISCO DIVISION

18 OVERTURE SERVICES, INC., a Delaware    | **E-Filing Case No.:** 02-01991 JSW (EDL)
19 Corporation,
                                          | **OVERTURE SERVICES INC.'S REPLY**
20                             Plaintiff, | **CLAIM CONSTRUCTION BRIEF**
21
        v.                                | The Honorable Jeffrey S. White
22
23 GOOGLE INC., a California Corporation,

24                            Defendant.

25
26
27
28

REPLY CLAIM CONSTRUCTION BRIEF
02-01991 JSW (EDL)

# TABLE OF CONTENTS

**Page**

I. GOOGLE DISREGARDS THE LAW REGARDING CLAIM CONSTRUCTION ...........................................................................................1

    A. Google Ignores The Ordinary Meanings Of The Disputed Terms And Improperly Imports Limitations From The Specification. .....................1

    B. Google's References To The Accused System Are Irrelevant To Claim Construction. ...........................................................................................3

II. OVERTURE'S PROPOSED CONSTRUCTIONS ARE THE ORDINARY MEANING OF THE TERMS AND SHOULD BE ADOPTED. ............................3

    A. Search Listing and Search Result List ..........................................................3

    B. [Modifiable] Bid Amount ..............................................................................5

        1. The Plain Meaning of "Bid Amount" Is Not Restricted To The Amount A Customer "Will Pay." ..............................................5

            a. Overture's Definition Is Supported By The Claim Language. ...............................................................................5

            b. The Dictionary Definitions of "Bid" Refer To An Offer. ..........................................................................................5

            c. The Specification Supports Overture's Definition. .........................6

            d. The Prosecution History Does Not Support Google's Construction. ........................................................................7

            e. The Extrinsic Evidence Does Not Support Google's Position. ...............................................................................7

        2. The Ordinary Meaning of "Modifiable" Is Not Limited To The Ability To Be Changed By A Particular Person Or Group Of People. ........................................................................8

    C. The Three Ranking Terms: "Determined Using," "Corresponding To," "In Accordance With" ..........................................................................9

        1. Google Improperly Attempts To Impose The Same Meaning On All Three Disputed Ranking Terms. ....................................9

i

      2. Overture's Constructions Accord With the Plain Meaning of the Terms. ......................................................................................9

          a. Determined Using ...............................................................9

          b. Corresponding To ..............................................................10

      3. The Intrinsic Record Does Not Require That the Bid Amount Dictate The Position Of the Listing. ............................................11

      4. Google Abandons Its Adherence to the Preferred Embodiment To Avoid The Doctrine of Claim Differentiation. ..........................................................................................12

      5. Overture's Constructions Do Not Render the Claims Indefinite. ...............................................................................................12

  D. In Response To ........................................................................................13

  E. Database ...................................................................................................14

  F. Deducted From An Account ....................................................................15

III. CONCLUSION.........................................................................................................15

# TABLE OF AUTHORITIES

**Page**

Federal Cases

*All Dental Prodx, LLC v. Advantage Dental Prods., Inc.*,
 309 F.3d 774 (Fed. Cir. 2002) ............................................................................................. 13

*Altiris, Inc. v. Symantec Corp.*,
 318 F.3d 1363 (Fed. Cir. 2003) ........................................................................................ 2, 9

*Andrew Corp. v. Gabriel Elecs., Inc.*,
 847 F.2d 819 (Fed. Cir. 1988) ............................................................................................ 12

*AT&T Corp. v. Microsoft Corp.*,
 2003 WL 21459573 (S.D.N.Y. June 24, 2003) .................................................................. 11

*Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.*,
 334 F.3d 1294 (Fed. Cir. 2003) ................................................................................ 2, 5, 6, 9

*Cordis Corp. v. Medtronic Ave, Inc.*,
 339 F.3d 1352 (Fed. Cir. 2003) ............................................................................................ 7

*E-Pass Techs., Inc. v. 3Com Corp.*,
 343 F.3d 1364 (Fed. Cir. 2003) ............................................................................. 2, 8, 11, 13

*Forest Labs., Inc. v. Abbott Labs.*,
 239 F.3d 1305 (Fed. Cir. 2001) ............................................................................................ 9

*Genzyme Corp. v. Transkaryotic Therapies, Inc.*,
 346 F.3d 1094 (Fed. Cir. 2003) .......................................................................................... 12

*Golight, Inc. v. Wal-Mart Stores, Inc.*,
 --F.3d --, 2004 WL 77933, *3, *4 (Fed. Cir. Jan. 20, 2004) ............. 1, 2, 5, 6, 7, 14

*Grumman Corp. v. Intel Corp.*,
 325 F.3d 1346 (Fed. Cir. 2003) ............................................................................................ 2

*Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323 (Fed. Cir.
 2001) ..................................................................................................................................... 5

*Jack Guttman, Inc. v. Kopykake Enters., Inc.*,
 302 F.3d 1352 (Fed. Cir. 2002) ............................................................................................ 2

*Kemode Mfg. Co. v. United States*,
 347 F.2d 315 (Ct. Cl. 1965) ................................................................................................ 13

REPLY CLAIM CONSTRUCTION BRIEF
02-01991 JSW (EDL)

*NeoMagic Corp. v. Trident Microsystems, Inc.*,
    287 F.3d 1062 (Fed. Cir. 2002) .................................................................................. 3

*Northern Telecom Ltd. v. Samsung Elecs. Co.*,
    215 F.3d 1281 (Fed. Cir. 2000) .................................................................................. 7

*RF Delaware, Inc. v. Pacific Keystone Techs., Inc.*,
    326 F.3d 1255 (Fed. Cir. 2003) .................................................................................. 2

*Seattle Box Co., Inc. v. Industrial Crating & Packing, Inc.*,
    731 F.2d 818 (Fed. Cir. 1984) ................................................................................. 13

*Southwall Techs., Inc. v. Cardinal IG Co.*,
    54 F.3d 1570 (Fed. Cir. 1995) .................................................................................... 3

*Sunrace Roots Enter. Co., v. SRAM Corp.*,
    336 F.3d 1298 (Fed. Cir. 2003) .............................................................................. 2, 3

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
    299 F.3d 1313, 1325 (Fed. Cir. 2002) ......................................................................... 1

*Texas Digital Sys. v. Telegenix, Inc.*,
    308 F.3d 1193 (Fed. Cir. 2002) .................................................................................. 9

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996) .................................................................................... 3

*Vivid Techs., Inc. v. American Science & Eng'g*,
    200 F.3d 795 (Fed. Cir. 1999) ................................................................................ 1, 3

## I. GOOGLE DISREGARDS THE LAW REGARDING CLAIM CONSTRUCTION.

Google's proposed approach to claim construction invites legal error in two basic ways.

First, Google asks this Court to disregard the clear guidance of the Federal Circuit that a claim term is presumed to have its ordinary meaning except in specific, limited circumstances. Instead of making an effort to meet this stringent standard, Google improperly advocates definitions based on the disclosed embodiments.

Second, Google asks this Court to prejudge issues relating to infringement in the context of a *Markman* hearing based on an incomplete record. The Federal Circuit has plainly stated that the claims are to be "construed objectively and without reference to the accused device." *Vivid Techs., Inc. v. American Science & Eng'g*, 200 F.3d 795, 803 (Fed. Cir. 1999). Whether the claims as construed read on the AdWords service, therefore, should have no bearing on the claim construction analysis.

### A. Google Ignores The Ordinary Meanings Of The Disputed Terms And Improperly Imports Limitations From The Specification.

Because there exists a "heavy presumption" that a claim term carries its ordinary and customary meaning, the specification may restrict claim scope only where the patentee has clearly demonstrated an intent to deviate from ordinary meaning:

> (1) by acting as his own lexicographer to redefine the claim term with "reasonable clarity, deliberateness, and precision;" or
>
> (2) by "characterizing the invention in the intrinsic record using words or expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope."

*Golight, Inc. v. Wal-Mart Stores, Inc.,* --F.3d --, 2004 WL 77933, *3, *4 (Fed. Cir. Jan. 20, 2004) (quoting *Teleflex, Inc. v. Ficosa N. Am. Corp.,* 299 F.3d 1313, 1325, 1327 (Fed. Cir. 2002)). Although Google attempts to import limitations from the specification for virtually every disputed claim term, it *never* contends — let alone demonstrates —that either of these limited exceptions apply.

Rather, while purporting to read the claim terms "in light" of the written description, Google fumbles indiscriminately in the specification looking for what it perceives to be purposes of the

1

invention, criticisms of prior art, benefits of the invention, or simply any other isolated statement that may offer some favorable "context." *See, e.g.,* Google's Claim Construction Brief (hereafter "Google Br.") at 9-11, 15-16, 18, 20.[1]  Even where the written description discloses significant advantages, features, or purposes of an invention, however, "there is no requirement that every claim directed to that invention be limited to encompass all of them." *Golight,* 2004 WL 77933 at *3 (quoting *E-Pass Techs., Inc. v. 3Com Corp.,* 343 F.3d 1364, 1370 (Fed. Cir. 2003)). Accordingly, in recent years, the Federal Circuit has **reversed** narrow constructions of claim terms based on:

- The disclosure of only a single embodiment. *Golight,* 2004 WL 77933 at *3; *Altiris, Inc. v. Symantec Corp.,* 318 F.3d 1363, 1372-1373 (Fed. Cir. 2003).

- A "principal" use of the invention anticipated by the inventor. *Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1301 (Fed. Cir. 2003); *Northrop Grumman Corp. v. Intel Corp.,* 325 F.3d 1346, 1355 (Fed. Cir. 2003) (holding same even if use is intended to be exclusive).

- A "'perceived' purpose" of the invention, as interpreted by a district court (*E-Pass,* 343 F.3d at 1370), or other advantages, objectives, or goals described in the specification. *Golight,* 2004 WL 77933 at *3; *Sunrace Roots Enter. Co., v. SRAM Corp.,* 336 F.3d 1298, 1304 (Fed. Cir. 2003).

- Features of a preferred embodiment in the written description. *Sunrace,* 336 F.3d at 1304-1305; *Brookhill-Wilk 1,* 334 F.3d at 1301; *RF Delaware, Inc. v. Pacific Keystone Techs., Inc.,* 326 F.3d 1255, 1264 (Fed. Cir. 2003).

Google's improper reliance on the specification is typified by its misleading citation of the *Guttman* case for the proposition that cases subsequent to the Federal Circuit's 1995 en banc decision in *Markman* "make clear that the specification 'is the single best guide to the meaning of a disputed term.'" Google Br. at 4.  In fact, the complete citation from *Guttman* is: "***Where, as here, the patentee has clearly defined a claim term***, that definition "[u]sually ... is dispositive;  it is the single best guide to the meaning of a disputed term.'" *Jack Guttman, Inc. v. Kopykake Enters., Inc.*, 302 F.3d 1352, 1360 (Fed. Cir. 2002) (emphasis added).  Because the '361 specification does ***not*** redefine any term, it cannot be used as a source to import limitations.

In addition, Google improperly relies on extrinsic evidence throughout its brief. *See, e.g.,*

---

[1] Contrary to Google's assertion, Overture has not ignored the specification in construing the disputed terms but rather has considered it for the proper purposes recognized by the Federal Circuit.

2

Google Br. at 9, 10, 13, 14, 15. Because extrinsic evidence, such as Overture presentations, the testimony of patent prosecutors, and documents related to present-day technology, cannot be used to construe the claims unless analysis of the intrinsic evidence leaves the meaning of the disputed claim term ambiguous, Google's extrinsic evidence is not entitled to any weight. *See Sunrace,* 336 F.3d at 1307; *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583-1584 (Fed. Cir. 1996).

### B.  Google's References To The Accused System Are Irrelevant To Claim Construction.

Google's repeated references to the accused system, purporting to inform the Court how the constructions affect infringement, are inappropriate. *See NeoMagic Corp. v. Trident Microsystems, Inc.*, 287 F.3d 1062, 1074 (Fed. Cir. 2002). By bringing in the accused technology at this stage, Google conflates the two-step infringement analysis which requires that claims be first construed by the Court and ***then*** applied to the accused technology by the trier of fact. *Vivid Techs.,* 200 F.3d at 803; *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995).

## II.  OVERTURE'S PROPOSED CONSTRUCTIONS ARE THE ORDINARY MEANING OF THE TERMS AND SHOULD BE ADOPTED.

### A.  Search Listing and Search Result List

Since the parties filed their original Joint Claim Construction Statement on June 24, 2003, their dispute over the terms "search listing" and "search result list" has narrowed significantly.[2]

To clarify, the parties do *not* dispute that:

- A "search listing" may be paid or unpaid. *See* Google Br. at 6; Declaration of Ravind S. Grewal In Support Of Google's Responsive Claim Construction Brief ("Grewal Decl.") Ex. 4.

- The term "search listing" need not be defined to include at least one search term. *See* Google Br. at 6; Grewal Decl. Ex. 4.

- A "search listing" need not be included in a search list displayed to a user. *See* Google Br. at 7 n.8.

- A "search listing" may include one or more pieces of information. Although Google addresses this issue, *see* Google Br. at 7-8, Overture does not dispute this point.

- A "search result list" is an ordered series of search listings, rather than

---

[2] Pursuant to the Court's Standing Order for Patent Cases, the parties are filing an Amended Joint Claim Construction Statement ("Amended JCCS") herewith.

3

REPLY CLAIM CONSTRUCTION BRIEF
02-01991 JSW (EDL)

       merely a set. *See* Google Br. at 7; Grewal Decl. Ex. 4.

- A "search result list" contains "search listings." Although Google takes issue with the fact that Overture defines these two terms by reference to each other, *see* Google Br. at 7, Google cannot reasonably dispute that the two terms are related or that the "entries" in its proposed definition of "search result list" are not "search listings." *See e.g.*, '361 patent, claim 1 ("ordering the identified search listings into a search result list").

      The parties, however, remain in dispute over one significant issue: whether a "search result list" must "contain[] the information responsive to the searcher's search," as Google contends. *See* Amended JCCS at 10; Google Br. at 8-10.[3] Google appears to contend that only unpaid listings — and not paid listings or advertisements — are "responsive."

      This argument is plainly at odds with the '361 patent. As Google acknowledges, search listings may be paid or unpaid. *See* Google Br. at 6. Indeed, the ordinary meaning of "listing" includes real estate and telephone book listings, which may be paid or unpaid. *See, e.g.*, Overture's Opening Claim Construction Brief, Volume I ("Overture Vol. I") Ex. 4. Moreover, the specification notes that not all "listings" are paid. *See* '361 patent, Fig. 7 (depicting paid listings 710a-f identified with "(Cost to advertiser)" and unpaid listings 710g-h).

      Nor is Google's definition supported by the ordinary meaning of the terms "search" and "result." Google suggests that the extra language in its definition is necessary in order to prevent the definition of "search result list" from including everything displayed on a search result page. *See* Google Br. at 8-9. The items cited by Google, however —the search box, the "Find It!" button, banner or tile ads — are not arranged in a *series* and hence cannot be components of a "list."

      In addition, there is no basis in the ordinary meaning of the term "search result list" to impose a requirement that it be "responsive to" or subjectively fulfill the searcher's request. Google has improperly attempted to inject such a requirement into the claims through other terms

---

[3] The parties also dispute whether a "search result list" is simply a series of search listings "obtained as the consequence of the examination of data," as Overture contends, or whether it is "selected from the database being searched by a searcher," as Google contends. *See* Amended JCCS at 10; Google Br. at 8-9. The ordinary meaning of "search" requires "examination." *See*, *e.g.*, Overture Vol. I Ex. 6 ("to examine (one or more files, or databases or texts) electronically to locate specific items"); ("to examine data in a computer in order to locate items having a given property").

4

REPLY CLAIM CONSTRUCTION BRIEF
02-01991 JSW (EDL)

as well. *See* discussion of "in response to" in Section D *infra*.

### B.     [Modifiable] Bid Amount

Google disputes two components of Overture's proposed construction: (1) that the "bid amount" is how much a customer is "willing" to pay, as opposed to the ultimate amount it "will" actually pay, and (2) that "modifiable" simply means "changeable."

#### 1.     The Plain Meaning of "Bid Amount" Is Not Restricted To The Amount A Customer "Will Pay."

##### a.     Overture's Definition Is Supported By The Claim Language.

To construe any term, the analysis must begin with the claim language itself. *Golight,* 2004 WL 77933 at *2 (citing *Interactive Gift Express, Inc. v. Compuserve Inc.,* 256 F.3d 1323, 1331 (Fed. Cir. 2001)). The context of the words surrounding the claim term must be considered in determining its ordinary meaning. *Brookhill-Wilk 1,* 334 F.3d at 1299. Claim 1 refers to:

> . . . a modifiable bid amount that is independent of other components of the search listing, the bid amount being associated with at least one of the search term and the network location, the bid amount corresponding to a money amount that is deducted from an account of a network information provider associated with the network location upon receipt of a retrieval request for the network location.

22:65-23:6.[4] In the context of claim 1, the "bid amount" must be something that can be modified prior to receiving a retrieval request. Until then, the "bid amount" is merely the amount a customer is "willing to pay" at a given point in time — a meaning consistent with Overture's proposed definition. Once a retrieval request is received, the "bid amount" is fixed, deducted, and can no longer be modified. Claim 1 thus contemplates a "bid amount" that can exist from the time it is entered, through possible subsequent modifications, and up to the moment a retrieval request is received. Because Google's proposed definition encompasses ***only*** the actual cost fixed at the end of this process (the only point at which the "bid amount" equals the amount the customer will actually pay), it flies in the face of the plain language of claim 1.

##### b.     The Dictionary Definitions of "Bid" Refer To An Offer.

All of the parties' proffered definitions encompass the concept of an ***offer***. This is true for even Google's three definitions containing the words "will pay" or "will give." *See* Grewal Decl. Ex. 8 ("to offer (a certain sum) as the price one will pay or charge"); Grewal Decl. Ex. 9 ("to offer

---

[4] All citations in the form of __:__ are to the '361 patent, unless otherwise indicated.

5

(a certain amount) as the price or fee that one will pay or accept"); Grewal Decl. Ex. 10 ("a statement of what one will give or take for something; esp: as offer of a price").[5]

An offered price, however, is not synonymous with the price one *will actually pay* because the offered price will not be paid if the offer is not accepted. By its very nature, an offer only reflects that price which one is *willing to pay* at the time of the offer. Only Overture's construction is consistent with an offer of a price, the plain ordinary meaning of "bid amount."

Google's Sotheby auction example, where a collector authorizes a buyer to bid no more than $10M, but the buyer submits a winning bid of $5M, is similarly misplaced. Although $10M would not be the "bid amount," the reason is simply that $10M was never actually *offered*, as required by the ordinary meaning of the term.

### c. The Specification Supports Overture's Definition.

Overture's proposed construction is also consistent with the intrinsic record. The software appendix to the patent expressly states, "the bid price is the amount you're *willing to pay* for a user to click-through to your site from the GoTo search results listings after they have performed a search on one of your search terms." *See, e.g.,* Overture Vol. I Ex. 9, OVG 022033 (microfiche frames 81-82) (emphasis added). Google's definition would exclude this disclosed embodiment.

Moreover, to the extent that the specification provides examples of situations where the "bid amount" is the amount actually paid, these examples do not support importing a limitation where the patentee has not expressly redefined "bid amount" nor clearly disavowed scope.[6] *Golight,* 2004 WL 77933, *3. Similarly, the Court may not limit the ordinary meaning based solely on the preferred embodiment's example of a bid amount that constitutes an amount an advertiser will ultimately pay. *See Brookhill-Wilk 1,* 334 F.3d at 1301 ("Those statements [of the preferred embodiment] do not indicate that the invention can only be used in such a manner."); *supra* at

---

[5] The other four definitions are consistent in defining a bid as an offer of what one is presently willing to pay. Overture Vol. I Ex. 8 ("an offer of a price, especially at an auction"); ("an offer or proposal of a price; the amount offered or *proposed*") (emphasis added); ("to offer (a price) whether for payment *or acceptance*") (emphasis added); ("offer (a certain price) for something, especially at an auction").

[6] Tellingly, each of Google's citations to the specification regards a preferred embodiment. *See* Google Br. at 11-12, fn.16; 5:23-26; 9:46-49; 21:4-13.

Section I(A).

#### d. The Prosecution History Does Not Support Google's Construction.

The Federal Circuit has articulated a straightforward legal standard for determining whether statements made during the prosecution of a patent limit a claim term: The statement must constitute an unequivocal disclaimer of coverage. *See Golight,* 2004 WL 77933, at *4; *Cordis Corp. v. Medtronic Ave, Inc.,* 339 F.3d 1352, 1359 (Fed. Cir. 2003); *Northern Telecom Ltd. v. Samsung Elecs. Co.,* 215 F.3d 1281, 1293 (Fed. Cir. 2000).

In the case of the term "bid amount," there is no such unequivocal disclaimer that would require the term to be limited to the amount a party will in fact pay (as opposed to what it is willing to pay). Instead, the passage that Google cites from the Notice of Allowability is merely a paraphrase of the language of claim 1. In particular, by stating "...the bid amount corresponding to a money amount that is deducted from an account...," Overture Vol. II Ex. 28, OVG 000291-292 the Examiner was reciting the language of claim 1 which reads: "...the bid amount corresponding to a money amount that is deducted from an account..." 23:2-3.

As a mere recitation of the claim language, this statement is not an affirmative conclusion by the Examiner that the "bid amount" as used in the claim language must be the same as the actual "amount deducted from an account." On the contrary, as the claim language itself indicates, the claim was specifically written to encompass modifiable amounts that would only become the fixed sum that an advertiser "will pay" upon a click through – but that are not limited to that fixed sum prior to that click through.

#### e. The Extrinsic Evidence Does Not Support Google's Position.

To support its baseless departure from ordinary meaning, Google leans heavily on various pieces of irrelevant extrinsic evidence.[7] Such evidence, however, should not be considered unless the intrinsic evidence leaves a claim term unclear. *See supra*, Section I(A). Google attempts to

---

[7] For example, Google attempts to disguise as intrinsic evidence the irrelevant testimony of John Rauch, one of the prosecuting attorneys, taken more than three years after the patent issued.

7

REPLY CLAIM CONSTRUCTION BRIEF
02-01991 JSW (EDL)

import limitations from a separate patent application to narrow the claim scope of the '361 patent.[8] Even if the '926 application were part of the '361 patent family, Google has provided no basis for permitting the *specification* of later filed *application* (thus containing no fully prosecuted claims) to reach back from the future to limit earlier patent claims.

In addition, references to AWS and Overture's subsequent Auto Bidding feature are wholly irrelevant to the scope of the terms at issue. To shoe-horn in this evidence, Google points to an industry report several steps removed — an excerpt describing primarily eBay's bidding system, the relevance of which apparently stems from eBay's contemporaneous popularity.[9] Google Br. at 14. Such unrelated extrinsic evidence cannot serve to restrict plain meaning.

### 2. The Ordinary Meaning of "Modifiable" Is Not Limited To The Ability To Be Changed By A Particular Person Or Group Of People.

Overture's construction reflects the plain ordinary meaning of "modifiable" which imposes no restrictions as to who (or what) is making the changes. In contrast, Google seeks to limit the term "modifiable" to mean in effect "modifiable only by the advertiser."

Google relies on "context" provided by the specification to contend that the invention's purpose requires that only the advertiser can make the changes. *See* Google Br. at 15. A court, however, may not limit the scope of the claims in light of the invention's perceived purpose. *E-Pass,* 343 F.3d at 1370. Most tellingly, Google's construction has the effect of excluding an example disclosed in the specification in which an advertiser selects a desired "rank position," and the system automatically recalculates the necessary bid amount. *See, e.g.,* 19:38-58. In this example, the advertiser does nothing to modify the "bid amount," as modification is done by the system itself.

---

[8] Although Google alleges that U.S. Patent Application Ser. No. 09/993,926 is "related," as neither a continuation nor continuation-in-part of the '361 patent, it lacks a parent-child relationship with the invention at issue. *See* Grewal Decl. Ex. 14.

[9] Google neglects to mention that this report also states, "When you bid on eBay. . . you put in the most you're *willing* to pay." Grewal Decl. Ex. 15, GOG 032256 (emphasis added).

**C.     The Three Ranking Terms: "Determined Using," "Corresponding To," "In Accordance With"**

   **1.     Google Improperly Attempts To Impose The Same Meaning On All Three Disputed Ranking Terms.**

Although Google proposes dictionary definitions for the disputed ranking terms, Google admits that its proposed interpretations of all three terms require the search listings to be arranged in strict bid amount order.  *See* Google Br. at 17-18.  The three different ranking terms have three different ordinary meanings, however, and are presumed to have three different meanings in the context of the '361 patent.  *See Forest Labs., Inc. v. Abbott Labs.*, 239 F.3d 1305, 1310 (Fed. Cir. 2001) ("Where claims use different terms, those differences are presumed to reflect a difference in the scope of the claims.").

"Determined using" means that bid amount is one parameter utilized in an analysis to ascertain or determine the ranking of the search listings.  "Corresponding to" means that the search listings are ranked in an order that is similar but not necessarily identical to the bid amounts.  And, as the parties agree, "in accordance with" means that the ranking matches or is in agreement with the bid amount order.  The Court should reject Google's attempt to collapse these three terms into a single meaning.

   **2.     Overture's Constructions Accord With the Plain Meaning of the Terms.**

Google does not dispute that Overture's proffered definitions find support in the dictionaries cited by the parties.  *See* Google Br. at 18.  The law is clear that if more than one dictionary definition of a term is consistent with the specification, the Court should adopt an interpretation that is broad enough to cover ***all*** of the consistent definitions.  *Brookhill-Wilk 1*, 334 F.3d at 1300; *Texas Digital Sys. v. Telegenix, Inc.,* 308 F.3d 1193, 1203 (Fed. Cir. 2002).

   **a.     Determined Using**

The phrase "determined using" is made up of two ordinary English words[10]:

---

[10] Google chastises Overture for considering the single words of the terms "in isolation."  Google Br. at 17-18.  The Federal Circuit has confirmed, however, that looking to the ordinary meaning of individual words in a phrase is appropriate.  *See Altiris,* 318 F.3d at 1372.  Moreover, nothing in the claim language, suggests that the words "accordance," "determined," "using," and "corresponding" are used metaphorically (as in "Andy is the black sheep of the family") or have a meaning other than their full ordinary meanings.

9

REPLY CLAIM CONSTRUCTION BRIEF
02-01991 JSW (EDL)

- "Determined" meaning "ascertained." *See, e.g.*, Overture Vol. I Ex. 15 ("to conclude or ascertain, as after reasoning, observation, etc."); ("ascertain or establish exactly, typically as a result of research or calculation").

- "Using" meaning "utilizing." *See, e.g., id.* ("to put into action or service; synonyms USE, EMPLOY, UTILIZE"); ("to employ for some purpose; put into service; make use of").

Although Google's proposed construction of "determined" as "established" appears to be a dictionary-based definition, Google's brief makes clear that its ***actual*** proposed construction is either "established using the bid amounts as the ***exclusive*** factor" or at least "established using the bid amounts as the ***primary*** factor." Because the plain meaning of the phrase "determined using" is not limited to the "exclusive" or "primary" use of one factor, Google's limitation is unjustified.

Google first contends that the term "determined" requires strict ordering by bid amount alone, just as an appellate court's directive to determine an issue using a three-part test precludes a trial court from reaching a different result by considering a fourth factor. *See* Google Br. at 18 n.22. This analogy is inapposite. The context of the claims reveals that the bid amounts that are "used" to "determine" an order are parameters or inputs to a computer algorithm. *See, e.g.*, '361 patent, claim 14 ("programming code for generating in substantially real time a search result list..., the search listings in the search result list arranged in an order determined using the bid amounts of the search listings"). Nothing in the plain claim language suggests that bid amounts must be the exclusive data used to determine rank order or that the algorithm must result in a list in bid amount order.

Google is ultimately forced to concede that the term "determined" does not preclude reliance on multiple factors. *See* Google Br. at 21. As a fallback, Google contends that the bid amount must be determinative and that other factors are only to be considered as tie breakers between search listings that have the same bid amounts. *Id.* Google's effort to recast its position is a strained effort to accommodate the fact that the specification clearly teaches multiple factors. There is nothing in the plain claim language or anywhere in the intrinsic record supporting Google's hybrid notion that multiple factors exist but insists that the bid order trumps.

### b. **Corresponding To**

Both dictionaries and a recent Court case agree that "corresponding" means "similar" and

10

REPLY CLAIM CONSTRUCTION BRIEF
02-01991 JSW (EDL)

does not require identity. *See, e.g.*, Overture Vol. I Ex. 17 ("similar in position, purpose, form, etc."); *AT&T Corp. v. Microsoft Corp.*, 2003 WL 21459573 (S.D.N.Y. June 24, 2003). Google has provided no valid reason to limit the scope of this term.

### 3. The Intrinsic Record Does Not Require That the Bid Amount Dictate The Position Of the Listing.

Google contends that the Court must construe all three ordering terms to require that the order of listings match the order of the bid amounts because, it argues, the specification states that the "purpose" of the invention is for the advertiser to control, easily predict and pinpoint the placement of its search listing. *See* Google Br. at 19-21. Google's assertion is both legally irrelevant and factually inaccurate.

First, even assuming *arguendo* that the specification sets forth such a purpose, this Court may only narrow the meaning of claim term from its ordinary meaning where the specification provides an express definition or clear disavowal of ordinary meaning. *See*, *e.g.*, *E-Pass*, 343 F.3d at 1367-71. Neither appears in the '361 specification. Nor may the Court limit the scope of the claims in light of the patent's alleged purpose. *See supra* at Section I(A).

Second, contrary to Google's assertions, allowing advertisers to ***dictate*** the positions of their listings is not a stated object of the invention; none of the eight different objects identified in the specification includes this purpose. 4:10-48. Indeed, the only "object of the invention" regarding position in the search listing is "enabling promoters to ***influence*** a position on a search result listing generated by an Internet search engine for a specified set of search terms." 4:10-13 (emphasis added). ***All but one*** of the passages upon which Google relies for its "stated purpose" argument describe the ***preferred embodiment***.[11] In fact, the single passage purporting to discuss "the present invention," the last sentence of the Abstract, does not state that a higher bid ***ensures*** a higher placement but rather suggests only that the incremental effect of a higher bid is a better ranking; if other factors have a bigger impact, a listing may be ranked lower relative to other listings. *See also* 6:5-8 ("A higher bid will result in a higher rank value and a more advantageous placement, which is

---

[11] The only portions of the specification that do not address a preferred embodiment are the Abstract, the Background of the Invention, and the first paragraph of the Brief Summary of the Invention. '361 patent, Abstract, 1:15-4:64. Each of the figures, and their descriptions, address a preferred embodiment. 4:65-22:54.

11

REPLY CLAIM CONSTRUCTION BRIEF
02-01991 JSW (EDL)

preferably near the beginning of the search results list page.").

### 4. Google Abandons Its Adherence to the Preferred Embodiment To Avoid The Doctrine of Claim Differentiation.

In response to Overture's claim differentiation arguments, Google abandons its rigid adherence to the preferred embodiment, turning the specification and the claim language on their head. *See* Google Br. at 21. Google concocts a new example of the invention, wherein the search listings are ranked directly in order of bid amount, ***from lowest to highest***. Even though this approach is neither described nor suggested in the specification, Google nonetheless agrees that the embodiment falls within the scope of the claims. A more logical construction of independent claims 30 and 52 is that they encompass ***any*** embodiment in which the bid amount is used as one parameter, regardless of whether the resulting order directly matches the order of the bid amounts.

### 5. Overture's Constructions Do Not Render the Claims Indefinite.

Google argues that Overture's proposed interpretations are indefinite under § 112 ¶ 2 because they do not specify exactly what impact the bid amount has in ranking. *See* Google Br. at 18-19. As a threshold matter, such validity concerns are not to influence claim construction. *Genzyme Corp. v. Transkaryotic Therapies, Inc.*, 346 F.3d 1094, 1110 (Fed. Cir. 2003).

In any case, Google is incorrect that only a strict ordering based on bid amount is intelligible. With respect to the phrase "determined using," it is clear that ***any*** utilization of the bid amount in determining the ranking satisfies the limitation. The claims do not specify or require how extensively the bid amount must be used. In other words, bid amount must be one of the "one or more parameters" that influences ranking. 4:60-64. Regarding "corresponding to," it is likewise clear that a ranking that bears no relation to bid amount would not satisfy the limitation, but a ranking that is "similar" to but not identical to bid amount order would.[12] Therefore, Google's

---

[12] Overture's construction based on similarity is not indefinite. For example, words such as "close to" and "substantially equal" are terms "ubiquitous in patent claims" and "when serving reasonably to describe the claimed subject matter to those of skill in the field of the invention, and to distinguish the claimed subject matter from the prior art, have been accepted in patent examination and upheld by the courts." *Andrew Corp. v. Gabriel Elecs., Inc.,* 847 F.2d 819, 821 (Fed. Cir. 1988) (reversing district court's finding of indefiniteness with respect to "close to" and "substantially equal").

12

REPLY CLAIM CONSTRUCTION BRIEF
02-01991 JSW (EDL)

1  indefiniteness argument does not justify adopting an erroneous construction.[13]

2  **D.    In Response To**

3  The ordinary meaning of "in response to" is "in reaction to." Every single one of the dictionary definitions proffered by either party supports Overture's construction. *See, e.g.*, Overture Vol. I Ex. 19 ("a reaction to something"); ("something said or done in answer; reply or reaction"); ("something constituting a reply or reaction"); ("an answer or reply, as in words or in some action").

Nonetheless, Google purports to vary the ordinary meaning of this phrase to mean "in fulfillment of" based on the claim language and the "context" supplied by two specification passages. In other words, Google argues that this phrase should be construed to require fulfilling the searcher's *subjective* intent. *See* Google Br. at 22. Nothing in the claim language requires such a narrow construction. Overture's proposed construction is entirely consistent with the claims. *See, e.g.*, claim 1 ("a method of generating a search result list substantially in real time in response to [*in reaction to*] a search request from a searcher"). Nor do the passages Google cites from the Background of the Invention section of the specification expressly define "in response to" or disclaim any system that does not result in the searcher's subjectively desired results. *E-Pass*, 343 F.3d at 1367-71.

Indeed, the intrinsic record shows that many entries in exemplary search result lists are not "responsive" as Google interprets the term. For example, in the prosecution history, the search term "cars" elicited a wide variety of listings; it is highly unlikely that someone searching for "car" wanted to find a site about Cambridge, Ontario or odor-elimination products. *See*, *e.g.*, Overture Vol. II Ex. 28, OVG 000108-110 (SearchUP.com search for "cars"); *id.*, OVG 000129-130 (hitsgalore.com search for "cars"). In addition, a variety of possible search terms may have more than one meaning, *e.g.*, "Colgate" (a toothpaste and a university) and "Saturn" (a car and a planet).

---

[13] Notably, the cases Google cites ruled that the claims at issue were ***not*** indefinite. *See All Dental Prodx, LLC v. Advantage Dental Prods., Inc.*, 309 F.3d 774, 779-80 (Fed. Cir. 2002) (reversing summary judgment of indefiniteness); *Kemode Mfg. Co. v. United States*, 347 F.2d 315, 319 (Ct. Cl. 1965) (rejecting argument that claims were indefinite); *Seattle Box Co., Inc. v. Industrial Crating & Packing, Inc.*, 731 F.2d 818, 826 (Fed. Cir. 1984) (affirming district court's ruling that phrase "substantially equal to" did not render claims indefinite).

13

REPLY CLAIM CONSTRUCTION BRIEF
02-01991 JSW (EDL)

When a searcher enters such a term, some of the results provided will almost certainly be subjectively irrelevant, although they will all be objectively "in response to" the searcher's request.

Google incorrectly asserts that "anything" that happens after a searcher enters a search request falls within the claim language under Overture's construction – including the provision of a "This page cannot be found" error message. To the contrary, such an error message is provided to a searcher "in reaction to" a search engine server failure and has no causal relation to the searcher's search. The claims properly cover anything that is provided "in reaction" to a search request, whether or not it corresponds to what the searcher subjectively intended to receive.

### E. Database

To characterize "database" as "nothing more than a computer-based recordkeeping system," Google relies principally on a 1981 textbook published twenty years before the '361 patent issued. *See* Grewal Decl. Ex. 25. Even the earliest textbook definition proffered by Overture, based on Elmasri and Navathe's *Fundamentals of Database Systems* published in 1989, states:

> [T]he common use of the term database is usually more restricted. A database has the following implicit properties: A database is a logically coherent collection of data with some inherent meaning. *A random assortment of data cannot be referred to as a database*.

*See* Grewal Decl. Ex. 27 at 3 (emphasis added). All of Overture's proffered dictionary definitions underscore that a fundamental characteristic of a "database" in the field of computer science is that it allows data to be accessed by a computer. *See, e.g.,* Overture Vol. 1 Ex. 21 ("a comprehensive collection of related data organized for convenient access. . ."); ("a usually large collection of data organized especially for rapid search and retrieval. . ."); ("a structured set of data held in a computer, especially one that is accessible in various ways"). Google's proposed construction, "a computer based system for recording and maintaining information," does not capture the plain meaning to one of ordinary skill in the art reflected by dictionary definitions contemporaneous with the issuance of the '361 patent.

Statements in the Background section regarding the World Wide Web do not clearly redefine "database" and thus cannot alter this ordinary meaning. *See* 1:48-50; *Golight,* 2004 WL 77933 at *3. Moreover, because the "distributed database" is a different term of art, the reference

14

to the Web as a "unique *distributed database* designed to give wide access to a large universe of documents" should not be relevant to the construction of "database." 1:44-45.

### F. Deducted From An Account

Only Overture's construction — "taken away from a record of transactions" — comports with the ordinary meaning of the term. Although Google goes to great length to emphasize definitions which state that to "deduct" means to subtract from a "total," it fails to justify the inclusion of the term "prepaid," which appears nowhere in the claims. Google Br. at 24. Nothing in any proffered dictionary definition suggests that the ordinary meaning of account refers to a *prepaid* account as Google's construction requires.

Nowhere in the specification has the patentee acted as his own lexicographer to define "account" as limited to a prepaid account. On the contrary, while the specification includes an isolated statement about preferably deducting money from a prepaid account, the specification also makes clear that advertisers without prepaid accounts can still incur charges. 14:27-33. The term "deducted from an account" therefore cannot be limited to "subtracted from a prepaid account."

## III. CONCLUSION

For all of the reasons stated in Overture's Opening and Reply Claim Construction Briefs, Overture respectfully requests that the Court adopt Overture's proposed interpretations of the disputed claim terms.

DATED: February 13, 2004                    HELLER EHRMAN WHITE & McAULIFFE LLP

By  /s/ Robert D. Fram
    ROBERT D. Fram
    Attorneys for Plaintiff
    OVERTURE SERVICES, INC.

15

REPLY CLAIM CONSTRUCTION BRIEF
02-01991 JSW (EDL)