1  KEKER & VAN NEST, LLP
   JOHN W. KEKER - #49092
2  DARALYN J. DURIE - #169825
   CHRISTINE P. SUN - #218701
3  RAVIND S. GREWAL - #220543
   710 Sansome Street
4  San Francisco, CA  94111-1704
   Telephone:  (415) 391-5400
5  Facsimile:  (415) 397-7188

6  Attorneys for Defendant and Counterclaimant
   GOOGLE INC.
7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                        SAN FRANCISCO DIVISION

11

12  OVERTURE SERVICES, INC.,              | Case No. C 02-01991 JSW (EDL)

13         Plaintiff and Counterdefendant,| **GOOGLE INC.'S CLAIM CONSTRUCTION SUR-REPLY (REDACTED VERSION)**

14         v.

15  GOOGLE INC.,                          | Tutorial:   March 10, 2004, 2:00 p.m.
                                          | Hearing:    March 24, 2004, 2:00 p.m.
16         Defendant and Counterclaimant. | Courtroom:  2, 17th Floor
                                          | Judge:      Hon. Jeffrey S. White
17

18

19

20

21

22

23

24

25

26

27

28

1   Pursuant to the Court's Order Re: Google's Miscellaneous Administrative Request Re:
2   Overture's Revised Claim Constructions (filed February 6, 2004), Defendant Google Inc.
3   ("Google") hereby submits the following Sur-Reply in support of its proposed constructions of
4   the terms "search result list" and "search listing."

## SUR-REPLY

6   As an initial matter, Overture misstates Google's position on whether a "search result
7   list" may include paid listings.  Neither Google's proposed definitions of "search listing" nor
8   "search result list" limit "responsive" information to unpaid listings.  The parties' dispute is
9   whether the proposed definition of search result list must include some reference to the concept
10  of "search."  Google's construction makes clear that a search result list does not encompass all
11  types of data or information that is returned to the user in reaction to the user's input, such as
12  banner ads, but that the information must be responsive to what the searcher was searching for.[1]
13  Overture's definition does not, and it is that failure to capture the concept of "search" with which
14  Google takes issue.

15  As in its Opening Brief, Overture insists that its proposed constructions – which are
16  derived solely from dictionary definitions – are the "ordinary meanings" of the terms.  But the
17  Federal Circuit has explained that the ordinary meaning is not limited to what can be gleaned
18  from common purpose dictionaries.  Rather, the "ordinary meaning" is the "meaning [of the
19  term] to *a person of ordinary skill in the art.*"  See *Combined Systems, Inc. v. Defense Tech.*
20  *Corp.,* 350 F.3d 1207, 1216, fn. 6 (Fed. Cir. 2003) (emphasis added).  Accordingly, the Court
21  should not only look to dictionaries as an *aid* to determining the ordinary meaning of claim
22  terms, but must also review the intrinsic evidence such as the specification, the drawings, and the
23  prosecution history.  See *id.* at 1210, 1215-1216; *see also Golight, Inc. v. Walmart Stores, Inc.*,
24  355 F.3d 1327, 1331 (Fed. Cir. 2004) ("claims *must* be construed in light of the specification")

---

[1] Although the idea of a user searching for paid listings as opposed to neutral results may, at first blush, seem counterintuitive, the specification explains that the claimed invention includes search engines wherein the searcher is specifically looking for paid listings. *See, e.g.,* 3:58-62 ("A consumer utilizing a search engine that facilitates this on-line marketplace will find companies or businesses that offer the products, services, or information that the consumer is seeking.").

(emphasis added).  As the Federal Circuit recently warned, "[i]f . . . the district court believe[s] that our cases permit consulting the specification solely for the limited purpose of determining whether it contradicts the dictionary meaning of a claim term, such view is not supported by our case law, read as a whole."  *Combined Systems, Inc.*, 350 F.3d at 1215-1216.

But that is precisely the approach that Overture urges here.  Indeed, a careful review of Overture's briefing on the issue of whether a "search result list" must be responsive to a searcher's search demonstrates that Overture does not, even once, refer to the specification or any other intrinsic evidence in its claim construction analysis.  Rather, Overture blithely concludes that its proposed constructions are correct because they are taken from dictionaries, *see, e.g.,* Reply at 4, fn. 3 (explaining that the ordinary meaning of "search" requires "examination" as defined by Random House and Webster's), and then improperly puts the onus on Google to justify its reliance on the specification.

Overture's criticism is unwarranted.  The Federal Circuit teaches that "where there are several common meanings for a claim term, the patent disclosure serves to point away from the improper meanings and toward the proper meaning."  *Renishaw PLC v. Marposs SpA*, 158 F.3d 1243, 1250 (Fed. Cir. 1998); *see also Texas Digital Sys. v Telegenix, Inc.*, 308 F.3d 1193, 1203 (Fed. Cir. 2002) (court should look for the definition that is "is most consistent with the use of the words by the inventor.").

***First***, Google's proposed constructions are consistent with dictionary definitions.  For example, the Random House Dictionary of the English Language (2d ed., 1997) defines "search" as "to examine . . . to locate *specific items*."  *See* Ex. 6 to Overture's Opening Claim Construction Brief, Vol. 1. (emphasis added).  Similarly, Webster's New World College Dictionary (3d ed. 1997) provides the definition, "to examine data in a computer in order to locate items *having a given property*."  *Id.* (emphasis added).  Accordingly, Google's definition of "search result list," which includes the concept of returning results that are in fulfillment of a user's examination for *specific items* or *having a given property,* is consistent with the very dictionaries upon which Overture relies.

***Second***, the specification clarifies a "search result" does not include responses that are

1  not responsive to the searcher's search for specific information.  As explained in the
2  specification, search engines "enable consumers to search the Internet for a listing of web sites
3  based on a *specific* topic, product, or service of interest."  2:33-35 (emphasis added); *see also*
4  3:63-65 3:58-62 ("A consumer utilizing a search engine that facilitates this on-line marketplace
5  will find companies or businesses that offer the products, services, or information *that the*
6  *consumer is seeking*.") (same); 10:6-21 ("A second class of users at client computers may
7  comprise searchers seeking *specific* information on the web. . . .) (same).
8        Overture's proposed construction of "search result" is flatly inconsistent with the use of
9  the term by the inventors of the '361 because it encompasses banner ads, which the written
10 description distinguishes as the prior art on the basis that banner ads "fail[] to effectively deliver
11 *relevant* information via the World Wide Web to interested parties in a cost-effective manner."
12 3:42-45 (emphasis added); *see also* 3:33-37 (in banner advertising, "[w]eb site promoters are
13 therefore paying for exposure to many consumers who are not interested in the product or service
14 being promoted, as most visitors to a web site seek specific information and may not be
15 interested in the information announced in the banner.").  Where the specification expressly
16 distinguishes prior art on the ground that the prior art does not incorporate an element, it is
17 improper to then re-incorporate that element at the claim construction stage.  *See Sunrace Roots*
18 *Enterprise Co., Ltd. v. SRAM Corp.,* 336 F.3d 1298, 1305 (Fed. Cir. 2003) (citing *SciMed Life*
19 *Systems, Inc. v. Advanced Cardiovascular Systems, Inc.*, 242 F.3d 1337, 1343-44 (Fed. Cir.
20 2001)).
21       To the extent that Overture contends that banner ads cannot constitute a search result list
22 because they are not in a "series," it is wrong.  Nothing in the specification suggests that banner
23 ads are limited to a "single" advertisement.
24                                 [REDACTED]
25
26
27         Accordingly, since Overture seems to have conceded that
28 banner ads are obtained as a consequence of the examination of data, and as shown above,

1 banner ads may be arranged in a "series," Overture's proposed construction of "search result list"
2 improperly encompasses the prior art that the specification explicitly excluded from the scope of
3 the term.
4     Google's proposed construction of "search result list" is consistent with the ordinary
5 meaning of the terms, as defined from the relevant dictionary definitions. Although Google's
6 construction may arguably be somewhat narrower than some of the dictionary definitions that
7 Overture cites, it is the "most consistent" with the use of the term "search result" by the '361
8 inventors. *See Texas Digital*, 308 F.3d at 1203; *Cf. Sunrace Roots Enterprise Co.,* 336 F.3d at
9 1302 (refusing to import limitations from the specification where the parties agreed on the
10 ordinary meaning of the term).

12 Dated: February 20, 2004                                         KEKER & VAN NEST, LLP

By:     /s/ Christine P. Sun
CHRISTINE P. SUN
Attorneys for Defendant and
Counterclaimant GOOGLE INC.