KEKER & VAN NEST, LLP
JOHN W. KEKER - #49092
DARALYN J. DURIE - #169825
CHRISTINE P. SUN - #218701
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

Attorneys for Defendant and Counterclaimant
GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| OVERTURE SERVICES, INC., <br><br> Plaintiff and Counterdefendant, <br><br> v. <br><br> GOOGLE INC., <br><br> Defendant and Counterclaimant. | Case No. C 02-01991 JSW (EDL) <br><br> **NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND TESTIMONY RE: PROSECUTION OF THE '361 PATENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> **[REDACTED VERSION]** <br><br> Date:      August 3, 2004 <br> Time:      9 a.m. <br> Courtroom: E, 15th Floor <br> Judge:     Hon. Elizabeth D. Laporte |

NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND TESTIMONY
RE: PROSECUTION OF THE '361 PATENT; MEMO OF P&A'S IN SUPPORT [REDACTED VERSION]
CASE NO. C 02-01991 JSW (EDL)

334366.01

Dockets.Justia.com

1

# TABLE OF CONTENTS

2

3  TABLE OF AUTHORITIES .................................................................... iii

4  NOTICE OF MOTION AND MOTION ................................................ vi

5  MEMORANDUM OF POINTS AND AUTHORITIES ...............................1

6  I.    INTRODUCTION .........................................................................1

7  II.   RELEVANT BACKGROUND .......................................................2

8        A.    Overture Launches a "Pay for Performance" Search Engine ...............2

9        B.    More Than a Year After The Launch of Its Paid Listing Search
10             Engine, Overture Files The '361 Patent Application...........................3

11             1.    Brinks Hofer Quickly Files a Petition To Make Special,
                     Supported by Mr. Davis' Rule 102 Declaration ....................4

12             2.    Relying on Overture's Pre-Critical Date System, The Examiner
13                   Repeatedly Rejects The Patent Claims .............................5

14             3.    Overture Overcomes The Rejections By Mischaracterizing The
                     Pre-Critical Date System............................................6

15       C.    In the Present Litigation, Mr. Davis Reveals That He Lacked Personal
16             Knowledge of the Pre-Critical Date System............................8

17       D.    Mr. Rauch and Ms. Lee Disclose Attorney-Client Communications,
               Mental Impressions, and Legal Analysis During Their Depositions.........9

18             1.    Mr. Rauch and Ms. Lee Testify About The Pre-Critical Date
19                   System, Mr. Davis' Rule 132 Declaration, and Mr. Davis'
                     Knowledge .........................................................9

20                   a.    Brinks Hofer's Assessment of The Pre-Critical Date
21                         System and Its Effect On The Patentability of The '361
                           Application.................................................9

22                   b.    Brinks Hofer's Assessment of and Communications
23                         With Mr. Davis About The Accuracy of Mr. Davis'
                           Declarations ............................................12

24             2.    Overture Belatedly Asserts Privilege On Its Privilege Log and
25                   During Mr. Naughton's Deposition .................................13

26  III.  ARGUMENT.................................................................14

27       A.    Overture Has Waived Attorney-Client Privilege On The Subject of
               The '361 Patent Prosecution ............................................14

28

i

NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND TESTIMONY
RE: PROSECUTION OF THE '361 PATENT; MEMO OF P&A'S IN SUPPORT [REDACTED VERSION]
CASE NO. C 02-01991 JSW (EDL)

334366.01

# TABLE OF CONTENTS
### (continued)

1. The Disclosures Revealed Substantive Attorney-Client Communications ..................................................................14

2. Overture's Disclosure Effects A Waiver Over The Subject Matter of The '361 Patent Prosecution ........................................15

B. Google Is Entitled To "Work Product" Documents Related To The '361 Patent Prosecution .............................................................17

1. Overture Has Not Made a Prima Facie Showing That Brinks Hofer's '361 Patent Prosecution Files Are Protected By The Work Product Immunity ..................................................................17

2. Even If The Prosecution Files Constitute Attorney Work Product, Google Has a Compelling Need For The Documents ................17

3. Overture Should Not Be Permitted To Selectively Apply The Privilege To Prohibit Mr. Naughton's Testimony .....................18

C. Mr. Davis' Statements In Connection With The Petition To Make Special Waived Privilege .............................................................19

D. The Crime-Fraud Exception Vitiates Any Privilege Over The '361 Prosecution Documents ..............................................................19

1. Google Has Made a Prima Facie Showing That Mr. Davis' Statements About The Features of The Pre-Critical Date System Were Made With Deceptive Intent ................................21

2. Google Has Made a Prima Facie Showing That Mr. Rauch's Mischaracterization of Mr. Davis' Declaration Was Made With Deceptive Intent ..................................................................22

3. Google Has Made a Prima Facie Showing That Mr. Davis' Statements Regarding His Knowledge Of The Pre-Critical Date System Were Made With Deceptive Intent ................................23

IV. CONCLUSION.....................................................................................25

NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND TESTIMONY
RE: PROSECUTION OF THE '361 PATENT; MEMO OF P&A'S IN SUPPORT [REDACTED VERSION]
CASE NO. C 02-01991 JSW (EDL)

334366.01

1
2

# TABLE OF AUTHORITIES

## FEDERAL CASES

3
4

*ACLARA Biosciences, Inc. v. Caliper Tech. Corp.*,
2001 WL 777083 (N.D. Cal. June 16, 2000)........................................15, 16, 17, 18

5
6

*Bio-Rad Laboratoriess, Inc. v. Pharmacia, Inc.*,
130 F.R.D. 116 (N.D. Cal. 1990)........................................................17, 18

7
8

*Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*,
1998 WL 175929 (S.D.N.Y.)...............................................................21, 23

9
10

*Bulk-Lift International, Inc. v. Flexcon & System, Inc.*,
122 F.R.D. 493 (W.D. La. 1988) ...............................................................20

11
12

*Chevron Corp. v. Pennzoil Co.*,
974 F.2d 1156 (9th Cir. 1992) ...................................................................15

13
14

*Conner Peripherals, Inc. v. Western Digital Corp.*,
1993 WL 726815 (N.D. Cal. June 8, 1993)................................................17

15
16

*General Electro Music Corp. v. Samick Music Corp.*,
19 F.3d 1405 (Fed. Cir. 1994) ...................................................................21

17
18

*In re Brand Name Prescription Drugs Antitrust Litigation*,
1995 WL 531805 at 1-2 (N.D. Ill. Aug. 18, 1995) ...................................15

19
20

*In re National Mortgage Equity Corp.*,
116 F.R.D. 297 (C.D. Cal. 1987)...............................................................20

21
22

*Intel Corp. v. VIA Techs., Inc.*,
176 F. Supp. 2d 991 (N.D. Cal. 2001) .......................................................23

23
24

*Kingsland v. Dorsey*,
338 U.S. 318 (1949).....................................................................................23

25
26

*LaBounty Manufacturing, Inc. v. United States ITC*,
958 F.2d 1066 (Fed. Cir. 1992) .................................................................22

27
28

*Libbey Glass, Inc. v. Oneida, Ltd.*,
197 F.R.D. 342 (N.D. Ohio 1999) .......................................................14, 15

iii

334366.01

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

## FEDERAL CASES
### (continued)

*Monon Corp. v. Stoughton Trailers, Inc.*,
    169 F.R.D. 99 (N.D. Ill. 1996)..........................................................21, 22

*Paragon Podiatry Laboratories, Inc. v. KLM Laboratories, Inc.*,
    984 F.2d 1182 (Fed. Cir. 1993) ............................................21, 22, 24, 25

*QST Energy, Inc. v. Mervyn's and Target Corp.*,
    2001 WL 777489 (N.D. Cal. May 14, 2001)..............................................15

*Rohm & Haas Co. v. Crystal Chemical Co.*,
    722 F.2d 1556 (Fed. Cir. 1983) ..............................................................20

*Starsight Telecast, Inc. v. Gemstar Development Corp.*,
    158 F.R.D. 650 (N.D. Cal. 1994)........................................15, 16, 19, 20

*United States v. Clevenger*,
    733 F.2d 1356 (9th Cir. 1984) ................................................................21

*United States v. de la Jara*,
    973 F.2d 746 (9th Cir. 1992) ............................................................20, 25

*Weil v. Investment/Indicators*,
    647 F.2d 18 (9th Cir. 1981) ....................................................................15

## DOCKETED CASES

*TV Interactive Data Corp. v. Microsoft Corp.*,
    U.S. District Court, Northern District of California,
    Case No. C-02-2385 ................................................................................19

## FEDERAL STATUTES

18 U.S.C. § 1001................................................................................................5

35 U.S.C. § 102(b)............................................................................................7

35 U.S.C. § 103................................................................................................8

iv

334366.01

# TABLE OF AUTHORITIES

## FEDERAL STATUTES
### (continued)

37 C.F.R. §1.102(d) ..........................................................................................................4

37 C.F.R. § 1.132 ..............................................................................................................7

## MISCELLANEOUS

Manual of Patent Examining Procedure § 708.02 ........................................................20

*Mark A. Lemley, Rational Ignorance At The Patent Office,*
    95 Nw. U. L. Rev. 1495, 1500 (2001) ........................................................................23

NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND TESTIMONY
RE: PROSECUTION OF THE '361 PATENT; MEMO OF P&A'S IN SUPPORT [REDACTED VERSION]
CASE NO. C 02-01991 JSW (EDL)

334366.01

**NOTICE OF MOTION AND MOTION**

TO PLAINTIFF OVERTURE SERVICES, INC. AND TO ITS ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on August 3, 2004, at 9 a.m., or as soon thereafter as counsel may be heard in the above-captioned Court, located at Courtroom E, 15th Floor, 450 Golden Gate, San Francisco, California, Defendant and Counterclaimant GOOGLE INC. (hereinafter, "Google") moves this Court for an order compelling Plaintiff and Counterdefendant OVERTURE SERVICES, INC (hereinafter "Overture") to produce all documents and communications related to the prosecution of United States Patent 6,269,361 ("the '361 patent") by the law firm, Brinks Hofer Gilson & Lione (hereinafter, "Brinks Hofer"). Google also moves to compel testimony from Overture witnesses concerning the prosecution of the '361 patent.

Google's motion is brought under Federal Rule of Civil Procedure 37, on the ground that Overture has waived attorney-client privilege by permitting the patent attorneys who prosecuted the '361 patent application to testify about the substance of their communications with Overture employees. Brinks Hofer has similarly waived attorney work product immunity, to the extent that it applies, by permitting the patent attorneys to testify about their mental impressions and legal analysis in prosecuting the '361 patent. In light of Overture's and Brinks Hofer's waiver of the attorney-client and work product privileges, Google is entitled to all documents and communications on the subject matter of the '361 prosecution and to testimony from Overture witnesses concerning those documents and communications.

In the alternative, Google is entitled to the requested documents and communications because the crime-fraud exception to privilege applies. The evidence gathered to date indicates that Overture and the prosecuting attorneys submitted declarations from one of the named inventors that not only misrepresented the features of the Overture system that had been in public use more than one year prior to the filing date, but also misrepresented the competence of the declarant to testify about that system. Because evidence indicates that fraud was committed in obtaining the '361 patent, Google is entitled to otherwise privileged documents and testimony under the crime-fraud exception.

The motion is based upon this Notice of Motion and Motion, and Memorandum of Points

NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND TESTIMONY
RE: PROSECUTION OF THE '361 PATENT; MEMO OF P&A'S IN SUPPORT [REDACTED VERSION]
CASE NO. C 02-01991 JSW (EDL)

334366.01

1   and Authorities attached hereto, the pleadings, records, and papers on file in this action, the

2   Declaration of Christine P. Sun ("Sun Decl.") and Ravind S. Grewal ("Grewal Decl.") filed

3   concurrently herewith, and such argument and evidence as may be presented at the hearing on

4   the Motion.

5   Dated:  June 29, 2004                                        KEKER & VAN NEST, LLP

6                                                          By:   ___/s/ John W. Keker_____

7                                                                JOHN W. KEKER
                                                                 Attorneys for Defendant and
8                                                                Counterclaimant GOOGLE INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND TESTIMONY
RE: PROSECUTION OF THE '361 PATENT; MEMO OF P&A'S IN SUPPORT [REDACTED VERSION]
CASE NO. C 02-01991 JSW (EDL)

334366.01

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Overture has sued Google for allegedly infringing the '361 patent.  Google contends that the '361 patent is unenforceable because Overture[1] and the attorneys at Brinks Hofer who prosecuted it committed inequitable conduct and fraud on the PTO.[2]  The evidence available to date leads Google to believe that Overture and Brinks Hofer, among other things, misrepresented the features of Overture's pre-critical date "pay for performance" search engine and submitted misleading inventor testimony to the PTO.

In trying to defend against Google's inequitable conduct claim, Overture has permitted testimony about the substance of Brinks Hofer's communications with Overture employees.  Overture has also permitted two of the three prosecuting attorneys to testify about their mental impressions and legal analysis covering a broad range of topics related to the '361 patent prosecution.  Despite these disclosures, Overture refuses to produce hundreds of documents[3] related to the '361 patent prosecution on the grounds of attorney-client and work product privilege.  Overture has also instructed one of the prosecuting attorneys not to provide testimony concerning the very conversations which Overture allowed his colleagues to disclose.

Overture cannot have it both ways.  Overture cannot both use privileged information to defend against Google's inequitable conduct claims, but also prevent Google from obtaining the evidence that it needs in order effectively to cross-examine Overture witnesses at trial.

In the alternative, Google seeks the requested documents under the crime-fraud exception.  While Google acknowledges the seriousness of this allegation, evidence gathered

---

[1] The patent was originally assigned to GoTo.com.  GoTo.com changed its name to Overture in 2001.  For simplicity, we refer to the company as "Overture" throughout.
[2] We do not suggest that Overture's new counsel, Heller Ehrman, were in any way involved in this misconduct.
[3] The withheld documents include documents explicitly specified in Overture's February 13, 2004 privilege log as being related to the '361 patent application, also identified as "U.S. patent application S/N 09/322,677," and documents specified in the log as being related to "enforcement of patent rights" dated prior to the issuance of the '361 patent.  *See* Grewal Decl., Ex. A (Overture's privilege log).  To the extent that Overture contends that some or all of the documents related to "patent enforcement" are not related to the '361 patent prosecution, Google requests that the Court order Overture to revise its log to make that distinction clear.

334366.01

thus far indicates that it is warranted here.  Google believes that the Court need not decide this issue because Overture has waived privilege, but should the Court reject that argument, the Court should nonetheless compel Overture to produce otherwise privileged documents related to the '361 patent prosecution for *in camera* review.

## II.    RELEVANT BACKGROUND

In order to understand Overture's waiver of privilege, it is necessary to understand the facts underlying Google's inequitable conduct claim.  Thus, we begin by summarizing facts relevant to Google's inequitable conduct claim.

**A.    Overture Launches a "Pay for Performance" Search Engine**

Overture was founded in late 1997 to provide a search engine that, unlike traditional search engines, would rank search listings based on the money paid by the sites listed.  *See* Grewal Decl., Ex. B.  On Overture's system, a web site promoter could "bid for higher placement within a list of search results for any given topic," by offering to pay a certain price if a user "clicked-through" to its web site.  *Id.* at 74.

On February 21, 1998, Overture introduced the "proof of concept" version of its search engine at the eighth annual TED ("Technology, Entertainment, and Design") conference in Monterey, California.  Grewal Decl., Ex. C at 2.  That same day, Overture issued a press release announcing the launch of its search engine that listed 19 different "charter advertisers" of its new marketplace driven search system, including iVillage.com, City Search, Shopping.com, eToys, and the Wedding Channel.  Grewal Decl., Ex. B.  Three days later, a *Wired* article reported that "[s]ince the launch of the site, only days ago, GoTo has signed-on companies at a rate of one every 10 minutes," according to then Overture CEO Jeffrey Brewer.  Grewal Decl., Ex. D at 79. The article quantified the number of subscribers as topping 500.  *Id.*

Overture immediately began making money from the paid listings in its new search engine.  A draft February 1998 business plan [------------------------------------------------------------- ------------------------------------------------------------------------------------------------------------ -------------------------------------------REDACTED------------------------------------------- -----------------------------------------------------------------------------------------------------------]

[---------------------------------------------------------------------------------
-----------------------------------------------------------------------------------
----------------------------------------------[4]----------------------------------
-------------------------------------- REDACTED -----------------------------------
-----------------------------------------------------------------------------------
------------------------------------------[5]--------------------------------------
-----------------------------------------------------------------------------------
---------------------------------------------------------------------

A May 19, 1998 press release about Overture's first round of financing again touted the financial success of Overture's search engine. *See* Grewal Decl., Ex. C. Overture attributed the investor interest in the company to the "Enormous User Growth" in its search engine. *Id.* at 1. As in its earlier press releases and the February 1998 business plan, Overture emphasized its "open-market bidding system" and the fact that advertisers "pay only for actual visits to their sites instead of for simple 'exposures'" as major advantages of its new search engine. *Id.* at 1.

**B.    More Than a Year After The Launch of Its Paid Listing Search Engine, Overture Files The '361 Patent Application**

The '361 patent application was filed more than one year later, on May 28, 1999, by Elaine K. Lee, who was then an associate at Brinks Hofer. *See* Grewal Decl., Ex. E at GOG 31579. The application described "a system and method for influencing a position on a search result list generated by a computer network search engine." *Id.* at GOG 31491. The inventors disclosed a search engine wherein listings are ranked pursuant to an amount that a web site promoter agrees to pay. Echoing the February 1998 press releases and Overture business plan, the '361 inventors claimed that their invention had the advantage that web site promoters would

---

[4] A March 1998 Overture draft business plan [------------------------------------------------
-----------------------------------------------------------------------------------
-----------------------------------------------------------------------------------
------------------------------------ REDACTED -------------------------------------
-----------------------------------------------------------------------------------
--------------------------------]

[5] "URL" stands for Uniform Resource Locator and is the address of a web site on the World Wide Web.

only pay for click-throughs to their sites, and not for mere exposures. *Id.* at GOG 31495.

### 1. Brinks Hofer Quickly Files a Petition To Make Special, Supported by Mr. Davis' Rule 102 Declaration

Shortly after filing the patent application, on October 22, 1999, Ms. Lee filed a request that the PTO "make special," or expedite, the prosecution of the '361 application on the basis of actual infringement by several of Overture's competitors in the search engine market. *See* Grewal Decl., ¶7, Ex. F; *see also* 37 C.F.R. §1.102(d). In support of Overture's request, Ms. Lee submitted a declaration by inventor Darren Davis (the "Rule 102 Declaration"). Grewal Decl., Ex. G. In the Rule 102 Declaration, Mr. Davis provided several examples of publicly available search engines that allegedly infringed the claims of the '361 patent application. *Id.* at ¶¶ 2-7.

Notably, Mr. Davis specifically testified about how he was able to determine that these other search engines practiced the limitations of the patent claims, including the requirement of receiving and recording click-throughs. One of the infringing search engines identified by Mr. Davis was the system offered by SearchUp.Inc., which Mr. Davis declared, "upon information and belief," was discovered by Overture employees on or about May 20, 1999. *Id.* at ¶ 3. Mr. Davis also asserted that Hitsgalore.com infringed the patent claims. *Id*. at ¶ 7. Mr. Davis asserted that claim 1 of the '361 application "would unquestionably be infringed" by Hitsgalore's system. *Id.* at ¶ 8. With respect to the limitation "recording a retrieval request event in the database corresponding to the searcher's retrieval request," Mr. Davis explained that Hitsgalore's website stated that each time a searcher "clicks through" a search listing, the bid amount corresponding to that search listing is deducted from the appropriate web site owner's account. *Id.* at ¶ 7(c). "A 'click through' is therefore a retrieval request from the searcher to retrieve information associated with a search listing in the search result list." *Id.* Mr. Davis further explained that "in order for the bid amount to be properly deducted from the web site owner's account, this retrieval request is received and *recorded* by the hitsgalore.com service in conjunction with the searcher's browser's retrieval of information from the selected web site." *Id.* (emphasis added). Mr. Davis thus asserted to the PTO (and later confirmed in his deposition testimony) that Hitsgalore *must* have received and recorded retrieval requests from the user

1  because the service charged web site promoters by "click throughs" to their web sites.  *See* Sun

2  Decl., Ex. C at 159:21-160:1 [-------------------------------------------------------------------------------

3  ----------------------------------------- REDACTED --------------------------------------------------------

4  -------------------------].[6]

5        Mr. Davis also testified about the state of the prior art.  He represented that a "careful and

6  thorough search of the prior art" relating to the '361 application had been made and that the

7  relevant results of that search had been disclosed to the patent examiner in an Information

8  Disclosure Statement filed in August 1999.  Grewal Decl., Ex. G at ¶ 9.  Mr. Davis further

9  testified that "the invention described in the Davis et al. application was [not] in public use or on

10  sale in the United States of America more than one year prior to the filing date of this

11  application."  *Id.* at ¶ 10.

12        Mr. Davis concluded his Rule 102 Declaration by affirming: "I declare that the foregoing

13  statements made of my own knowledge are true, and that the foregoing statements made on

14  information and belief are believed to be true; and further, that these statements were made with

15  the knowledge that willful false statements and the like so made are punishable by fine, or

16  imprisonment, or both, under 18 U.S.C. § 1001; and may jeopardize the validity of the Davis, et

17  al. application, or any patent issuing therefrom."  *See* Grewal Decl., Ex. G at ¶ 12.

18        In reliance on Mr. Davis' statements concerning actual infringement by SearchUp,

19  Hitsgalore, and other search engines and affirming the validity of the claimed invention, the PTO

20  granted Overture's petition to make special in December 1999.  *See* Grewal Decl., Ex. H.

21        **2.       Relying on Overture's Pre-Critical Date System, The Examiner Repeatedly
                     Rejects The Patent Claims**

22

23        About one month after granting the Petition to Make Special, the examiner rejected all 68

24  pending claims.  *See* Grewal Decl., Ex. I.  The examiner cited Overture's own May 19, 1998

25  press release describing Overture's publicly available search engine system, which

26  ───────────────────────

27  [6] Notably, in a declaration submitted to the PTO eleven months later, Mr. Davis would take the
    exact opposite position by asserting that Overture's pre-critical date system did *not* record
    retrieval requests, even though Overture had represented to the press and to its investors that the

28  system charged promoters only for actual click-throughs to their websites.  *See* Section II.B.3.,
    *infra.*

334366.01

1    notwithstanding the supposed "careful and thorough search of prior art," had not been submitted

2    to the PTO.  *Id.* at 1-3; *see also* Grewal Decl., Ex. C.  The examiner relied on the press release's

3    explanation that: "Bidding for higher placement offers big benefit to advertisers . . . Any

4    advertiser can increase a bid for a listing in order to obtain a higher ranking."  *See* Grewal Decl.,

5    Ex. I at 2-3.  The examiner rejected the claims as being anticipated by the pre-critical date press

6    release, pursuant to 35 U.S.C. § 102(b).[7]  *Id.*

7        Around the same time as the January Office Action, [----------------------------------------

8    -------------------------------------- REDACTED ----------------------------------------------------

9    -----------------------------------------------------------------------------].  *See* Sun Decl., Ex. E

10   at 14:7-19; 14:24-15:4.  In April 2000, Mr. Rauch filed a response to the January Office Action,

11   arguing that none of the prior art, including the May 19, 1998 press release, contained the

12   limitation "a modifiable bid amount that is independent of other components of the search

13   listing."  *See* Grewal Decl., Ex. J at 2.  Then, for each independent claim, Mr. Rauch identified

14   other limitations that purportedly were not disclosed by the May 19 press release.  *Id.*  For claim

15   1, Mr. Rauch asserted that the press release did not disclose the limitation, "recording a retrieval

16   request event in a database corresponding to the searcher's retrieval request."  *Id.*

17       The examiner remained unconvinced that the May 19 press release did not anticipate the

18   claimed inventions, and once again rejected all 68 claims.  *See* Grewal Decl., Ex. K at 2-3.  At

19   this point, having previously rejected the application on the same grounds, the examiner made

20   his second rejection of all the claims "final."  *Id.* at 4.

21       **3.    Overture Overcomes The Rejections By Mischaracterizing The Pre-Critical
             Date System**

22

23       About three months after the "final" rejection, Mr. Rauch and a Brinks Hofer partner,

24   James Naughton, participated in a telephone interview with the examiner.  *See* Grewal Decl., Ex.

25   L.  According to the examiner's summary, Overture agreed to: i) submit an affidavit "to *clarify*

26   *features that were not present* in the prior system as described in the press release 5/19/98" and

27   ─────────────────────
     [7] Section 102(b) states in relevant part that a person shall be entitled to a patent unless "the
28   invention was patented or described in a printed publication in this or a foreign country or in
     public use or on sale in this country, more than one year prior to the date of application for patent

334366.01

1  ii) "amend claim 1, for further clarification of features discussed." *Id.* (emphasis added). The

2  examiner agreed to withdraw the finality of the last office action. *Id.*

3  Shortly thereafter, in September 2000, the applicants submitted their second amendment

4  to independent claims 1, 11, and 13-15. *See* Grewal Decl., Ex. M. As part of the remarks to the

5  amendments, Mr. Rauch again denied that the pre-critical date system embodied the claimed

6  inventions. *Id.*, Ex. M at 5. He cited, as sole evidence of this "fact," a declaration by Mr. Davis

7  submitted pursuant to 37 C.F.R. § 1.132 (the "Rule 132 Declaration"). *Id.*

8  With respect to claim 1, Mr. Davis alleged in the Rule 132 Declaration that the pre-

9  critical date system did not implement the limitation "recording a retrieval request event in an

10  account database corresponding to the searcher's retrieval request." *See* Grewal Decl., Ex. N.

11  [--------------------------------------- REDACTED ------------------------------------------------------------

12  -----------------------------------------------]. *See* Sun Decl., Ex. C at 162:9-19. Indeed, in his earlier

13  Rule 102 Declaration, Mr. Davis had explained that Hitsgalore *must* have received and recorded

14  retrieval requests from the user because the service charged web site promoters by "click

15  throughs" to their web sites. *See* Grewal Decl., Ex. G at ¶ 7(c). And, just like Hitsgalore,

16  Overture's pre-critical date system charged web site promoters per "click through." *See* Grewal

17  Decl., Ex. B ("Web sites will pay only for actual visits to their sites . . . .).[8]

18  As with his Rule 102 Declaration, Mr. Davis concluded his Rule 132 Declaration by

19  attesting, under the penalty of perjury, that "all statements made herein of my knowledge are true

20  and that all statements made upon information and belief are believed to be true . . . ." Grewal

21  Decl., Ex. N at ¶ 12.

22  With respect to all the independent claims, Mr. Rauch further asserted that Mr. Davis'

23  declaration "*specifie[d] limitations* of each independent claim, claim 1 as amended herein and

24  claims 11, 14, 15, 30, 52 and 68 that were not disclosed in the May 19, 1998 press release."

25  Grewal Decl., Ex. M at 5. (emphasis added). Mr. Rauch's remarks were false. In the Rule 132

26  ―――――――――――――――――――――――――――――――――――――――
   in the United States." 35 U.S.C. §102(b).

27  [8] *See also* Grewal Decl., Ex. D (" . . . GoTo charges listing companies for delivering actual visits
   to their site. . . . Currently click-through prices range from 1 cent to 10 cents, with the number of

28  click-throughs extending possibly into the thousands per day, according to Brewer."); Sun Decl.,

1    Declaration, Mr. Davis did generically attest that "[i]n May, 1998, at least some of the features

2    claimed in the independent claims of the subject application were not yet implemented or in the

3    public domain." *See* Grewal Decl., Ex. N at ¶3.  But for four of the eight independent claims –

4    claims 15, 30, 52, and 68 – Mr. Davis did *not* specify limitations that were neither disclosed by

5    the May 19, 1998 press release nor part of the pre-critical date system. *See id.* at ¶¶ 8-11.

6    Instead of identifying specific limitations that were not disclosed, Mr. Davis instead stated only

7    that the "subject matter of the claim as a whole" was not disclosed. *Id.*

8           Nevertheless, in reliance on Mr. Rauch's remarks and Mr. Davis' declaration, the

9    examiner withdrew the finality of the previous § 102(b) rejection based on the May 19 press

10   release.  Although the examiner continued to question the patentability of the inventions on

11   obviousness grounds, 35 U.S.C. § 103, after Mr. Rauch's September 28, 2000 remarks, the

12   examiner dropped any consideration of what features were actually present in Overture's pre-

13   critical date system.  In the end, the Patent Office allowed all the independent claims, except for

14   pending claim 14.  The patent issued on July 31, 2001.

15   **C.     In the Present Litigation, Mr. Davis Reveals That He Lacked Personal Knowledge**
             **of the Pre-Critical Date System**

16

17          As noted above, in his Rule 102 Declaration, Mr. Davis carefully stated that his

18   testimony about the Searchup.com system was made "upon information and belief."  But in both

19   his Rule 102 and Rule 132 Declarations, Mr. Davis included no such caveats when testifying

20   about the features of the pre-critical date system.  Instead, Mr. Davis purported to provide to the

21   examiner in those Declarations first-hand information about the features of the pre-critical date

22   system.  During Mr. Davis' deposition on May 21 and 22, 2003, Google questioned Mr. Davis

23   about the basis for his testimony to the PTO about the pre-critical date system.  [--------------------

24   ---------------------------------------------------------------------------------------------------------------------

25   ---------------------------------------------- REDACTED -----------------------------------------------

26   ---------------------------------------------------------------------------------------------------------------------

27   ---------------------------------------------------------------------------------------------------------------------

28

Ex. A at 51 [-------------------------- REDACTED --------------------------------------------------].

1    ------- REDACTED ------.[9]

2    **D.    Mr. Rauch and Ms. Lee Disclose Attorney-Client Communications, Mental
        Impressions, and Legal Analysis During Their Depositions**

3

4            **1.    Mr. Rauch and Ms. Lee Testify About The Pre-Critical Date System, Mr.
                Davis' Rule 132 Declaration, and Mr. Davis' Knowledge**

5            On July 18, 2003 and July 23, 2003, Google took the depositions of Ms. Lee and Mr.

6    Rauch, respectively.  During their depositions, both attorneys testified extensively about the

7    prosecution of the '361 patent, including Brinks Hofer's and Overture's investigation of the pre-

8    critical date system and its effect on the patentability of the claimed inventions and the

9    preparation and accuracy of the Rule 102 and Rule 132 Declarations.  In an attempt to rebut

10   Google's inequitable conduct claims, the Brinks Hofer attorneys revealed both their mental

11   impressions and their communications with Mr. Davis about these key issues.  Indeed, during

12   their depositions, Mr. Rauch and Ms. Lee disclosed privileged information on a wide range of

13   topics related to the '361 patent.  [------------------------------------------------------------------

14   ------------------------------------------------------------------------------------------------------

15   ------------------------------------------------------------------------------------------------------

16   -------------------------------------- REDACTED --------------------------------------------

17   ------------------------------------------------------------------------------------------------------

18   ------------------------------------------------------------------------------------------------------

19   ------------------------------------------------------------------------------------------------------

20   -----------------------------------------------------------------------------------]

21            **a.    Brinks Hofer's Assessment of The Pre-Critical Date System and Its
                Effect On The Patentability of The '361 Application**

22

23        [------------------------------------------------------------------------------------------

24   ------------------------------------------------------------------------------------------------------

25   ----------------------------------------- REDACTED ------------------------------------------

26   ------------------------------------------------------------------------------------------------------

27   [9] [----------------------------------------------------------------------------------------------
        ------------------------------------- REDACTED -------------------------------------------
28   -----------------------------------------------------------------------------]

                                                    9

1  ----------------------------------------------------------]

2        [------------------------- REDACTED -----------------------------------------------------

3  ---------------------------------------------------------------------------------------------------

4  ---------------------------------------------------------------------------------------------------

5  ---------------------------------------------------------------------------------------------]

6        [----------------------------------- REDACTED -------------------------------------------
   ---------------------------------------------------------------------------------------------------

7        -------------------------------------]

8        [-------------------]

9        [------------------------------- REDACTED -------------------------------------------------]

10       [------------------------------ REDACTED -----------------------------------------------
   ---------------------------------------------------------------------------------------------------

11       ---------------------------------------------------------------]

12  [---------------------------------------- REDACTED --------------------------------------------

13  ---------------------------------------------------------------------------------------------------

14  ---------------------------------------------------------------------------------------------------

15  ---------------------------------------------------------------------------------------------------

16  -----------------------------------------------]

17       [----------------------------------- REDACTED -------------------------------------------

18  ---------------------------------------------------------------------------------------------------

19  ---------------------------------------------------------------------------------------------------

20  ---------------------------------------------------------------------------------------------------

21  ---------------------------------------------------------------------------------------------------

22  ---------------------------------------------------------------------------------------------------

23  ------------------------------------------------------------]

24       [----------------------------- REDACTED -------------------------------------------------
   ---------------------------------------------------------------------------------------------------

25       -----------------------------------------------]

26       [-----------------------------------------------]

27       [-------------------]

28       [----------------------------- REDACTED -------------------------------------------------

10

1   ------------------------------------------------ REDACTED ----------------------------------
    ----------]

2   [---------------------------------- REDACTED ----------------------------------]

3   [---------------------------------- REDACTED --------------------------------------------
    ------------------------------------------------------------------------------------]

4

5   [---------------------------------- REDACTED --------------------------------------------------]

6   [---------------------------------- REDACTED --------------------------------------
    ----------------------------------------------------------------------------------------------

7   ----------------------------------------------------------------------------------------------
    -----------------------------]

8

9   [---------------------------------- REDACTED --------------------------------------------

10  ----------------------------------------------------------------------------------------------

11  ----------------------------------------------------------------------------------------------

12  ----------------------------------------------------------------------------------------------

13  ----------------------------------------------------------------------------------------------

14  ----------------------------------------------------------------------------------------------

15  ----------------------------------------------------------------]

16  [---------------------------------- REDACTED --------------------------------------------

17  ----------------------------------------------------------------------------------------------

18  ----------------------------------------------------------------------------------------------

19  ----------]

20  [---------------------------------- REDACTED --------------------------------------------

21  ----------------------------------------------------------]

22  [---------------------------------- REDACTED --------------------------------------
    ----------------------------------------------------------------------------------------------

23  ----------------------------------------------------------------------------------]

24

25  [---------------------------------- REDACTED --------------------------------------------

26  ----------------------------------------------------------------------------------------------

27  ----------------------------------------------------------------------------------------------

28  ----------------------------------------------------------]

                                          11

1

2

**b.     Brinks Hofer's Assessment of and Communications With Mr. Davis About The Accuracy of Mr. Davis' Declarations**

3

Similar to their testimony about their knowledge of the features of the pre-critical date

4

system, both Mr. Rauch and Ms. Lee attempted to defend the accuracy of Mr. Davis'

5

declarations by relying on their communications with Mr. Davis and their legal conclusions

6

based on those communications.

7

[---------------------------------- REDACTED ------------------------------------------------

8

---------------------------------------------------------------------------------------------------------

9

------------------------------------------------------------------------]

10

[----------- REDACTED --------------------------------------]

11

[---------------------------------- REDACTED -------------------------------------

12

---------------------------------------------------------------------------------------------------

---------------------------------------------------------------------------------------------------

13

---------------------------------------------------------------------------------------------------

---------------------------------------------------------------------------------------------------

14

---------------------------------------------------------------------------------------------------

------------------------------------------------------------]

15

[----- REDACTED ------------------------]

16

[---------------------------------- REDACTED ------------------------------------------------

17

---------------------------------------------------------------------------------------------------------

18

-------------]

19

[---------------------------------- REDACTED ------------------------------------------------

------------------------------------------------------]

20

[---------------------------------- REDACTED ------------------------------------------------

21

---------------------------------------------------------------------------------------------------

---------------------------------------------------------------------------------------------------

22

---------------------------------------------------------------------------------------------------

---------------------------------------------------------------------------------------------------

23

------------------------------------------------------------------------------------------]

24

[---------------------------------- REDACTED ------------------------------------------------

25

---------------------------------------------------------------------------------------------------------

26

---------------------------------------------------------------------------------------------------------

27

---------------------------------------------------------------------------------------------------------

28

---------------------------------------------------------------------------------------------------------

12

1  ------------------------------------------------------------------]

2       [----------------------------------- REDACTED -----------------------------------------

3  -------------------------------------------------------------------------------------]

4       [------------------------------------ REDACTED ---------------------------------------
        ------------------------------------------------------------------------------------]

5
        [---------------- REDACTED ------------------------]

6       [---------------- REDACTED    ------------------------]

7       [------------------------------------- REDACTED -------------------------------------

8       ----------------------------------------------------------------------------------------
        ----------------------------------------------------------------------------------------

9       ----------------------------------------------------------------------]

10  [----------------------------------------- REDACTED -------------------------------------

11  ----------------------------------------------------------------------------------------------

12  ----------------------------------------------------------------------------------------------

13  ----------------------]

14       [-------------------------------------- REDACTED ----------------------------------------

15  ----------------------------------------------------------------------------------------------

16  ----------------------------------------------------------------------------------------------

17  ----------------------------------------------------------------------------------------------

18  ----------------------------------------------------------------------------------------------

19  ----------------------------------------------------------------------------------------------

20  ----------------------------------------------------------------------------------------------

21  ----------------------------------------------------------------------------------------------

22  -------------------------------------------------------]

23       **2.     Overture Belatedly Asserts Privilege On Its Privilege Log and During Mr.
                 Naughton's Deposition**

24       Despite this testimony revealing attorney client communications and Brinks Hofer's work

25  product, Overture has made a blanket assertion of privilege over more than 300 documents

26  encompassing Mr. Rauch's, Ms. Lee's, and Mr. Naughton's "notes" and their communications

27  with Mr. Davis and other employees at Overture related to the prosecution of the '361

28

13

1    application.  *See* Grewal Decl., Ex. A (Overture's privilege log).

2         In addition, at Mr. Naughton's recent deposition, Overture instructed Mr. Naughton not

3    to answer any questions about conversations with Mr. Rauch, Mr. Davis, or others at Overture –

4    including the very conversation about which Mr. Rauch *was* allowed to testify.  *See* Grewal

5    Decl., Ex. Q at 210:11-212:6.  Thus, even though Overture permitted Mr. Rauch to testify that he

6    did not investigate the features of the pre-critical date system in reliance on Mr. Naughton's

7    purported assurances that it was a "beta system," Overture then prohibited Mr. Naughton from

8    giving his account of those conversations or even confirming whether they had taken place.

9    Similarly, Overture refused to permit Mr. Naughton – but not Mr. Rauch or Ms. Lee – to testify

10   about the conversations he had with Mr. Davis and the other inventors about the early Overture

11   search engine.  *See e.g.*, *id.* at 76:7-11; 166:20-23; 213:3-10.

## III.    ARGUMENT

### A.    Overture Has Waived Attorney-Client Privilege On The Subject of The '361 Patent Prosecution

#### 1.    The Disclosures Revealed Substantive Attorney-Client Communications

16        Overture argues that there has been no waiver of the attorney client privilege.  *See*

17   Grewal Decl., Ex. O (citing *Libbey Glass, Inc. v. Oneida, Ltd.*, 197 F.R.D. 342, 346-47 (N.D.

18   Ohio 1999) (no waiver where party discloses "opaque references" and "passing allusions" to

19   privileged communications and work product).  Contrary to Overture's assertions, these

20   disclosures are hardly opaque.  A closer look at *Libbey Glass*, the lone case cited by Overture

21   during meet and confer, highlights the differences between disclosures that do not waive

22   privilege and those that do.

23        In *Libbey Glass*, plaintiff alleged that defendant infringed the trade dress covering

24   plaintiff's best-selling glassware patterns.  *Libbey Glass*, 197 F.R.D. at 344.  During discovery,

25   defendant allowed its company officials to testify that its lawyers had given the "green light" on

26   the manufacture of the alleged infringing product and that the company had "come as close as

27   possible to the appearance of Libbey's [glasses] without copying" because of the "legal

28   ramifications" of copying.  *Id.* at 346.

14

NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND TESTIMONY
RE: PROSECUTION OF THE '361 PATENT; MEMO OF P&A's IN SUPPORT [UNREDACTED VERSION]
CASE NO. C 02-01991 JSW (EDL)

334366.01

The court found that there was no waiver of attorney-client privilege because the officials had only made "passing allusions" to their communications with counsel. *Id.* In other words, the defendant's disclosures did not "illuminate[] the facts and analysis" underlying its counsel's advice. *Id.*; *see also In re Brand Name Prescription Drugs Antitrust Litigation*, 1995 WL 531805 at *1-*2 (N.D. Ill. Aug. 18, 1995) (waiver did not occur by statements revealing "counsel's direction to comply with the law generally"); *Starsight Telecast, Inc. v. Gemstar Dev. Corp.*, 158 F.R.D. 650, 653 (N.D. Cal. 1994) ("'A mere denial of intent, without more, is insufficient to constitute a waiver.'").

In stark contrast to the disclosures which the *Libbey Glass* court and others have found insufficient to effect a waiver, here Mr. Rauch and Ms. Lee revealed the substance of their communications with Mr. Davis and others at Overture about the prosecution of the '361 patent. Had Mr. Rauch and Ms. Lee merely disclosed that they informed their clients to "follow the law generally" or generally denied an intent to deceive the PTO, the Court could conclude that Overture had not waived privilege. But Overture permitted Mr. Rauch and Ms. Lee to rely upon the *content* of their communications with Mr. Davis and to *explain* how those communications informed their legal analysis in prosecuting the patent.

### 2. Overture's Disclosure Effects A Waiver Over The Subject Matter Of The '361 Patent Prosecution

Voluntary disclosure of the content of attorney-client communications constitutes waiver of the privilege as to all other communications on the same subject. *Weil v. Inv./Indicators*, 647 F.2d 18, 24 (9th Cir. 1981). A party may not use the privilege as both a sword, by disclosing testimony that it deems helpful to its case, and a shield, by withholding evidence that could impeach that testimony. *See Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992); *see also QST Energy, Inc. v. Mervyn's and Target Corp.*, 2001 WL 777489, *4-*5 (N.D. Cal. May 14, 2001) (compelling production of communications between testifying expert and counsel on subject matter of testimony). The doctrine prohibiting selective waiver applies in full force to the testimony of patent prosecution counsel. *See ACLARA Biosciences, Inc. v. Caliper Tech. Corp.*, 2001 WL 777083 (N.D. Cal. June 16, 2000) (finding waiver of attorney-client

15

1   privilege where party accused of inequitable conduct permitted substantive testimony by

2   prosecution counsel); *see also Starsight Telecast*, 158 F.R.D. at 654 (waiver where prosecution

3   attorney testified that prior art was "totally different and less relevant than art that was previously

4   before the patent office.").

5        The *ACLARA* decision illustrates how testimony in response to inequitable conduct

6   charges can result in waiver.  In that case, defendant Caliper asserted inequitable conduct as a

7   defense to infringement.  *See ACLARA*, 2001 WL 777083 at *1.  Specifically, Caliper alleged

8   that ACLARA's attorney and his law firm, which was also counsel to Caliper, engaged in

9   inequitable conduct by using confidential Caliper information in prosecuting a patent owned by

10  ACLARA.  *Id.*  In defense to the inequitable conduct allegation, ACLARA voluntarily disclosed

11  all communications between ACLARA and the attorney, which evidently confirmed ACLARA's

12  contention that the attorney had not disclosed Caliper's trade secrets.  *Id.* at *2.  ACLARA then

13  refused to produce the remaining documents related to the patent prosecution, arguing that any

14  waiver had been limited to communications between the attorney and ACLARA.  *Id.*

15       The Court rejected ACLARA's attempt to waive privilege selectively.  *Id.* at *6.  Because

16  ACLARA voluntarily revealed its communications with the attorney, the Court ordered

17  ACLARA to produce all communications between attorneys at the law firm and ACLARA,

18  finding that "it would be unfair to allow disclosure of only the communications that ACLARA

19  cho[o]ses."  *Id.*

20       Overture cannot choose the subset of attorney-client communications it wants to disclose

21  to Google.  Overture has permitted Mr. Rauch and Ms. Lee to reveal the substance of some

22  communications with Mr. Davis and other '361 inventors.  Overture will argue that because Mr.

23  Davis assured them that the early Overture system was a "beta system" and thus did not practice

24  the inventions claimed in the '361 application, Mr. Rauch and Ms. Lee did not have the intent to

25  deceive the PTO about the features of the pre-critical date system.  Overture will also argue that

26  Mr. Rauch and Ms. Lee did not intentionally mislead the PTO about Mr. Davis' knowledge of

27  the pre-critical date system because they had good reason to believe that Mr. Davis could testify

28  about the differences between that search engine and the claimed inventions.  *See* Section II.D.,

1    *supra.* Google is entitled to the withheld documents and testimony so that it can effectively

2    challenge Overture's version of these events.

3    **B.    Google Is Entitled To "Work Product" Documents Related To The '361 Patent
         Prosecution**

4
5         **1.    Overture Has Not Made a Prima Facie Showing That Brinks Hofer's '361
               Patent Prosecution Files Are Protected By The Work Product Immunity**

6         Overture's privilege log includes tens of entries for attorney "notes" related to the '361

7    patent prosecution which are purportedly covered by the attorney work product privilege.

8    Overture has not made a prima facie case that these withheld documents constitute attorney work

9    product. The work product doctrine protects only those materials prepared "in anticipation of

10   litigation." *Conner Peripherals, Inc. v. Western Digital Corp.*, 1993 WL 726815 at *4 (N.D.

11   Cal. June 8, 1993). In the context of patent prosecution files, "the work product immunity does

12   not apply if the primary concern is with the claims raised in the *ex parte* patent application

13   prosecution." *Id.*

14        **2.    Even If The Prosecution Files Constitute Attorney Work Product, Google
               Has a Compelling Need For The Documents**

15        Under Federal Rule of Civil Procedure 26(b)(3), some work product is discoverable

16   "upon a showing that the party seeking discovery has substantial need of the materials in

17   preparation of the party's case and that the party is unable without undue hardship to obtain the

18   substantial equivalent of the materials by other means." Fed. R. Civ.P. 26(b)(3). Work product

19   that contains an attorney's mental impressions is discoverable if the party seeking discovery

20   makes a showing that the "information is directly at issue and the need for production is

21   compelling." *See Bio-Rad Labs., Inc. v. Pharmacia, Inc.*, 130 F.R.D. 116, 122 (N.D. Cal. 1990)

22   (citation and quotation marks omitted).

23        Here, even if the work product privilege were to apply to the '361 prosecution files,

24   Overture has made those documents discoverable by permitting Mr. Rauch and Ms. Lee to reveal

25   the prosecuting attorneys' mental impressions about the events that are at the core of Google's

26   inequitable conduct allegations. *See ACLARA Biosciences, Inc.*, 2001 WL 777083 at *9

27   (compelling need for discovery where patentee disclosed thoughts and impressions of

28

17

334366.01

1    prosecuting attorneys in defense to inequitable conduct allegations); *see also Bio-Rad Labs., Inc.*,

2    130 F.R.D. at 123 (exceptional need for discovery where patentee voluntarily engaged

3    prosecuting attorney as an expert).  In particular, [--------------------------------------------------

4    ----------------------------------------------------------------------------------------------------------

5    ----------------------------------------------------------------------------------------------------------

6    --------------------------------------------- REDACTED ---------------------------------------------

7    ----------------------------------------------------------------------------------------------------------

8    ----------------------------------------------------------------------------------------------------------

9    ----------------------------------------------------------------------------------------------------------

10   -----------------------------------------------------------------------------------------------]

11       Because Overture has permitted such testimony from Mr. Rauch and Ms. Lee favorable

12   to its defense to inequitable conduct, Overture has placed the content of Brinks Hofer's work

13   product squarely at issue.  Google has a compelling need for the withheld documents as they

14   may contradict or cast doubt on Mr. Rauch's and Ms. Lee's testimony.  *See ACLARA*

15   *Biosciences, Inc.*, 2001 WL 777083 at *9 ("Without discovery of work product, Caliper may

16   well find it impossible to challenge ACLARA's [version of events].").  Accordingly, the Court

17   should order Overture to produce the withheld '361 prosecution documents, even if they would

18   otherwise be protected by the attorney work product privilege.

19       **3.    Overture Should Not Be Permitted To Selectively Apply The Privilege To**
         **Prohibit Mr. Naughton's Testimony**

20
21       The Court should also order Overture to permit Mr. Naughton to testify about the

22   substance of his communications with Mr. Rauch.  As discussed above, [----------------------------

     ----------------------------------------------------------------------------------------------------------

23   ----------------------------------------- REDACTED -----------------------------------------------

24   ----------------------------------------------------------------------------------------------------------

25   ----------------------------------------------------------------------------------------------------------

26   -------------------------------------------------------] *See* Section II.D.1.a., *supra*.  Overture cannot

27   seriously contend that Mr. Naughton's version of this conversation is privileged, but Mr. Rauch's

28

                                              18

334366.01

1    is not.

2    **C.    Mr. Davis' Statements In Connection With The Petition To Make Special Waived Privilege**

3

4    Mr. Davis' statements in his Rule 102 Declaration provide an independent reason for

5    finding waiver.  In his declaration, Mr. Davis affirmatively represented that all relevant prior art

6    known to Overture and its attorneys had been disclosed to the PTO: "I have knowledge of that a

7    careful and thorough search of the prior art relating to the Davis et al. application was made.  The

8    results of this search, as well as other prior art known to the *attorneys of the assignee* of the

9    Davis et al. application that may be relevant to patentability of the claims of the Davis et al.

10    application, was cited to the Examiner in an Information Disclosure Statement filed on August

11    27, 1999."  Grewal Decl., Ex. G, ¶ 9.  Mr. Davis' statement waived any privilege over

12    documents and information relied on or considered and rejected by Mr. Davis in the time leading

13    up to his representation regarding the prior art search and disclosure thereof in the Rule 102

14    Declaration.  *See TV Interactive Data Corp. v. Microsoft Corp.*, Order Granting In Part And

15    Denying In Part Plaintiff's Motion To Compel and Granting In Part And Denying In Part

16    Defendant's Motion To Compel, No. C-02-2385 JSW (EDL) (filed November 21, 2003),

17    attached as Ex. P to Grewal Decl., at 5.  Accordingly, at a minimum, the Court should compel

18    Overture to produce any documents and information within the scope of that waiver.[10]  The

19    Court should also compel Mr. Naughton's testimony concerning his communications with Mr.

20    Davis about the prior art search reflected in the August 1999 disclosure statement, testimony that

21    Overture has thus far precluded on the grounds of privilege.  *See, e.g.,* Grewal Decl., Ex. Q at

22    76:7-11; 166:20-23; 210:11-212:6; 213:3-10.

23    **D.    The Crime-Fraud Exception Vitiates Any Privilege Over The '361 Prosecution Documents**

24    Documents which otherwise are protected by the attorney-client or work product

25    privilege may be discoverable if produced in furtherance of a crime or fraud.  *See Starsight*

26

_____

27    [10] Based on discovery thus far, Google believes that in addition to Brinks Hofer, attorneys at O'Donnell & Shaeffer and a patent searcher named Richard Turer may have been involved in the prior art search for the '361 patent application.

28

19

334366.01

1  *Telecast*, 158 F.R.D. at 655 (attorney-client); *In re National Mortgage Equity Corp.*, 116 F.R.D.

2  297, 301 (C.D. Cal. 1987) (work product).  In the context of patent prosecution documents,

3  privilege is pierced if the party seeking discovery establishes a *prima facie* cases of fraud on the

4  patent office.  *Starsight Telecast, Inc.*, 158 F.R.D. at 655.  Specifically, the party must make a

5  *prima facie* showing of "(1) a knowing, willful, and intentional act of misrepresentation or

6  omission before the PTO, (2) that the misrepresentation or omission was material, and (3)

7  reliance."  *Id.; see also Bulk-Lift Int'l, Inc. v. Flexcon & Sys., Inc*., 122 F.R.D. 493, 496 (W.D.

8  La. 1988) (affirming abrogation of privilege where patentee fraudulently failed to disclose

9  manufacture and sale of bags which had a very similar design to the design sought to be

10  patented).  A *prima facie* showing requires "nonprivileged evidence that is sufficient to support a

11  reasonable belief that *in camera* review may yield evidence that establishes the exception's

12  applicability."  *United States v. de la Jara*, 973 F.2d 746, 748 (9th Cir. 1992).

13      Google has made a *prima facie* showing that Overture committed fraud on the PTO by: i)

14  misrepresenting the features of the pre-critical date system; ii) misrepresenting Mr. Davis'

15  statements concerning the Overture pre-critical date system; and iii) misrepresenting Mr. Davis'

16  knowledge of the pre-critical date system.  It cannot be seriously disputed that the

17  misrepresentations were material and that they were relied upon by the PTO.  The examiner

18  repeatedly rejected the '361 application on the grounds that the claimed invention was in public

19  use more than one year prior to the filing date.  And, as shown above, the PTO relied upon the

20  statements by Mr. Rauch and Mr. Davis about the features of the pre-critical date system in

21  allowing the patent to issue.  *See Rohm & Haas Co. v. Crystal Chem. Co.*, 722 F.2d 1556, 1571

22  (Fed. Cir. 1983) ("In contrast to cases where allegations of fraud are based on the withholding of

23  prior art, there is no room to argue that submission of false affidavits is not material.").

24  Moreover, it cannot be disputed that the PTO relied on Mr. Davis' material representations in his

25  Rule 102 Declaration[11] about the prior art and the pre-critical date system when it granted

26

27  ───────────────────────

[11] At the time that Overture filed its petition, the Manual of Patent Examining Procedure §

28  708.02 required that an applicant support a petition to make special with an oath or declaration
alleging facts showing, *inter alia*, that "he or she has made or caused to be made a careful and
thorough search of the prior art or has good knowledge of the pertinent prior art."

1   Overture's petition to make special.  *See General Electro Music Corp. v. Samick Music Corp.*, 19

2   F.3d 1405, 1410-11 (Fed. Cir. 1994) ("We conclude as a matter of law that a false statement in a

3   petition to make special is material if, as in the case here, it succeeds in prompting the expedited

4   consideration of the application."); *see also Monon Corp. v. Stoughton Trailers, Inc.*, 169 F.R.D.

5   99, 103 (N.D. Ill. 1996) (noting the heightened duty of candor when application is made special).

6        The only issue that reasonably may be disputed, therefore, is whether Google has met its

7   burden of making a *prima facie* showing of deceptive intent.  For the purposes of establishing

8   fraud, intent need not be shown by direct evidence.  *United States v. Clevenger,* 733 F.2d 1356,

9   1358 (9th Cir. 1984).  "'Smoking gun' evidence is not required in order to establish an intent to

10  deceive."  *Paragon Podiatry Lab., Inc. v. KLM Lab., Inc.*, 984 F.2d 1182, 1189-90 (Fed. Cir.

11  1993).  Rather, intent to deceive is "most often proven by a showing of acts, the natural

12  consequence of which is presumed to be intended by the applicant."  *Monon Corp.*, 169 F.R.D. at

13  102 (inferring intent to deceive where patentee failed to disclose known offer for sale to PTO);

14  *see also Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.,* 1998 WL 175929, at *7

15  (S.D.N.Y.), *vacated on other grounds*, 155 F.3d 569 (Fed Cir. 1998) (intent to deceive patent

16  office inferred by evidence of lawyer's motive not to disclose inconsistent test results and

17  knowledge of the inconsistent test results during prosecution of patent application).

18       **1.    Google Has Made a Prima Facie Showing That Mr. Davis' Statements About**
          **The Features of The Pre-Critical Date System Were Made With Deceptive**
19        **Intent**

20       During the prosecution of the patent, Mr. Davis repeatedly insisted that the pre-critical

21  date system was a "beta system" and did not contain all of the features of the claimed invention.

22  Specifically, with respect to claim 1, Mr. Davis asserted that the early Overture search engine did

23  not implement the limitation "recording a retrieval request event in an account database

24  corresponding to the searcher's retrieval request."  *See* Section II.B.3., *supra*.  That assertion

25  was, at best, seriously misleading.  In his earlier Rule 102 Declaration concerning

26  Hitsgalore.com, Mr. Davis had conceded that limitation is met whenever a web site promoter is

27  charged on a "cost per click" basis.  *See* Section II.B.1., *supra* ; *see also* Sun Decl., Ex. C at

28  160:2-9; Grewal Decl., Ex. G at ¶ 7(c).  Overture had represented to its investors and the public

1    that it had signed up dozens, if not hundreds, of web site promoters in the three months prior to

2    the critical date and told those web site promoters they were being charged on a cost per click

3    basis.  *See* Grewal Decl., Exs. B & C.  And Overture kept track of how many "clicks" each

4    advertiser was receiving well prior to the critical date.  Sun Decl., Exs. G & H (exhibits to the

5    deposition of Tod Kurt, Overture's 30(b)(6) witness).  Overture never disclosed these pre-critical

6    date web site promoter account records to the PTO, despite their materiality to the patent

7    application.

8        The failure to disclose these account records and to point out their significance to the

9    PTO gives rise to the reasonable inference of intent to deceive the PTO.  *See Paragon Podiatry*,

10   984 F.2d at 1193 ("Absent explanation, the evidence of a knowing failure to disclose sales that

11   bear all the earmarks of commercialization reasonably supports an inference of the inventor's

12   attorney intended to mislead the PTO.").  The duty of candor demands that an applicant disclose

13   material information to the PTO, even if the applicant has a good faith belief that the information

14   does not defeat patentability of the claim invention.  *See LaBounty Mfg., Inc. v. United States

15   ITC*, 958 F.2d 1066, 1076 (Fed. Cir. 1992) ("Close cases should be resolved by disclosure, not

16   unilaterally by the applicant.").  The concealment of these records suggesting that Overture's

17   pre-critical date system recorded "clicks" is "particularly egregious because, unlike an

18   applicant's failure to disclose, for example, a material patent reference, the examiner ha[d] no

19   way of securing the information on his own."  *Paragon Podiatry*, 984 F.2d at 1193*; see also

20   Monon Corp.*, 169 F.R.D. at 103-04 (abrogating attorney client privilege under crime-fraud

21   exception where applicant failed to disclose a known offer for sale prior to the critical date).

2.    **Google Has Made a Prima Facie Showing That Mr. Rauch's
      Mischaracterization of Mr. Davis' Declaration Was Made With Deceptive
      Intent**

24       In response to the examiner's request for the identification of specific features present in

25   the pre-critical system, Mr. Rauch represented that Mr. Davis' Rule 132 Declaration "*specifie[d]*

26   *limitations* of each independent claim, claim 1 as amended herein and claims 11, 14, 15, 30, 52

27   and 68 that were not disclosed in the May 19, 1998 press release."  Grewal Decl., Ex. M at 5

28   (emphasis added).  Mr. Rauch's characterization of Mr. Davis' Declaration was false:  for four of

22

the eight independent claims – claims 15, 30, 52, and 68 – Mr. Davis did not disclose any such specific limitation, but merely attested that the "subject matter of the claim as a whole" was not disclosed.  *See* Grewal Decl., Ex. N at ¶¶ 8-11.; *see also* Section II.B.3., *supra*.  Thus, as to claims 15, 30, 52, and 68, Mr. Davis' Declaration provided no new information:  indeed, Mr. Davis' Declaration provided *less* information than Mr. Rauch's previous arguments, because Mr. Rauch *had* identified specific limitations that purportedly were neither disclosed by the press release nor present in the pre-critical date system.

The Court may infer the requisite intent to deceive from Mr. Rauch's false statement.  Prosecution counsel owe the highest degree of candor to the PTO.  *See Kingsland v. Dorsey*, 338 U.S. 318, 319 (1949) ("[T]he relationship of attorneys to the Patent Office requires the highest degree of candor and good faith.  In its relation to applicants, the Office . . . must rely upon their integrity and deal with them in a spirit of trust and confidence . . . ."); *see also* Mark A. Lemley, *Rational Ignorance At The Patent Office*, 95 Nw. U. L. Rev. 1495, 1500 (2001) (noting that the total average time an examiner spends in prosecution of a patent application is 18 hours).  An attorney's duty of candor is particularly important because patent prosecution proceedings are conducted *ex parte*.  *See Intel Corp. v. VIA Techs., Inc.*, 176 F. Supp. 2d 991, 1001 (N.D. Cal. 2001); *see also Bristol-Myers Squibb Co.*, 1998 WL 175929 at *7 (finding circumstantial evidence of fraudulent intent sufficient to abrogate privilege where patentee failed to point out significance of article before the examiner).

### 3.   Google Has Made a Prima Facie Showing That Mr. Davis' Statements Regarding His Knowledge Of The Pre-Critical Date System Were Made With Deceptive Intent

Mr. Davis submitted two declarations to the PTO attesting that all "statements made herein of my knowledge are true and that all statements made on information and belief are believed to be true."  *See* Grewal Decl., Ex. G at ¶ 12; Ex. N at ¶ 12.  Mr. Davis' statements were false, or at the very least materially misleading, because he did not in fact have personal knowledge of the pre-critical date system which was the subject of his declarations.  The Court may infer from the submissions of these false declarations that Mr. Davis had the requisite intent to deceive the PTO sufficient to find that the crime-fraud exception applies.

1    The Federal Circuit's decision in *Paragon Podiatry* is instructive.  Defendant KLM

2    alleged that the patent holder, Paragon Podiatry, committed inequitable conduct by submitting

3    deceptive affidavits to the PTO.  *See Paragon Podiatry*, 984 F.2d at 1190-91.  After a personal

4    interview with Paragon's counsel, the examiner ordered Paragon to provide a Rule 132 affidavit

5    "from a disinterested third party" on the issue of whether the claimed invention was obvious in

6    light of the prior art.  *Id.* at 1191.  Paragon submitted affidavits from three professionals in the

7    field who attested to the advantages of the claimed invention over prior art devices.  *Id.*  As part

8    of the affidavits, each of the affiants averred that, "I have not been in the past employed by nor

9    do I intend in the future to become employed by Paragon Podiatry Laboratories, a corporation

10   which I understand is the assignee of interest in the above captioned patent application."  *Id.*

11   During litigation, it was discovered that the affiants had each held stock in Paragon and that at

12   least one of them had consulted for, though were not technically employed by, Paragon.  *Id.*

13   KLM brought a summary judgment motion for inequitable conduct, alleging *inter alia* that the

14   false affidavits were sufficient to infer deceptive intent.  *Id.* at 1190-91.

15   The district court granted summary judgment in favor of the defendant and the Federal

16   Circuit affirmed.  The court concluded that the false affidavits were sufficient to establish

17   deceptive intent, despite the lack of direct evidence.  *Id.* at 1192.  The court rejected the

18   inventor's explanation that he did not consider the three affiants "interested parties in the sense

19   that their opinions should not be given full weight" because they were not "employed by

20   Paragon."  *Id.* at 1192.  Instead, the court found that the representation that the affiants were not

21   "employed" by Paragon as "the classic example of a half truth."  *Id.*  "We need not quibble about

22   whether a 'consultant' is or is not 'employed' by a company. . . . None was a 'disinterested'

23   party in any recognized sense of the word."  *Id.*  Even viewing the evidence in the light most

24   favorable to Paragon, the district court properly inferred the requisite deceptive intent from the

25   submission of the false affidavits.  *Id.*

26   Mr. Davis' false statements to the PTO about his knowledge of the pre-critical date

27   system certainly establish the requisite intent to deceive under the more relaxed standard that

28   applies here.  Mr. Davis knew how to distinguish between facts which he knew "upon

24

334366.01

1   information and belief" and those within his personal knowledge: he did so in his Rule 102

2   Declaration.  Nonetheless, Mr. Davis continued falsely to represent to the patent office that he

3   had personal knowledge of the early Overture system.  Mr. Davis' protestations that he was

4   merely confused about his obligations to the PTO are entitled to no more weight that the similar

5   protestations of the inventor in *Paragon Podiatry*.  *Id.* at 1193.  The Court "need not quibble"

6   about the extent and the basis for Mr. Davis' knowledge; [----------------------------------------------

7   ------------------------------------- REDACTED ----------------------------------------------------------

8   -----------------------------------]  *See, e.g.,* Sun Decl., Ex. C at 86:14-87:23.  Under no reasonable

9   definition of the phrase was Mr. Davis' statements about those features within his personal

10  knowledge.  Accordingly, the Court may infer from the submission of the false statements that

11  Mr. Davis had the requisite intent to deceive.  *Paragon Podiatry,* 984 F.2d at 1192.

12  In sum, because the evidence thus far "support[s] a reasonable belief that an in camera

13  review may yield evidence that establishes the [crime-fraud] exception's applicability," *de la*

14  *Jara*, 973 F.2d at 748, the Court should inspect the communications between Mr. Davis and Mr.

15  Rauch and Mr. Rauch's notes about the '361 prosecution in order to determine whether they

16  should be produced to Google under the crime-fraud exception.

17  ## IV.    CONCLUSION

18  For the reasons stated above, Google requests that the Court find that Overture has

19  waived the attorney-client and work product privileges on the subject matter of the '361 patent

20  prosecution.  In the alternative, the Court should find that Google has made a *prima facie*

21  showing that the crime-fraud exception applies, and compel Overture to produce the

22  communications between Mr. Davis and Mr. Rauch and Mr. Rauch's notes about the '361

23  prosecution for *in camera* inspection by the Court.

24  Dated:  June 29, 2004                                 RESPECTFULLY SUBMITTED,

25                                                                   KEKER & VAN NEST, LLP

26                                                         By:    /s/ John W. Keker

27                                                                   JOHN W. KEKER
                                                                     Attorneys for Defendant and
28                                                                   Counterclaimant GOOGLE INC.

25

NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND TESTIMONY
RE: PROSECUTION OF THE '361 PATENT; MEMO OF P&A's IN SUPPORT [UNREDACTED VERSION]
CASE NO. C 02-01991 JSW (EDL)

334366.01