# Grewal Decl., Exhibit G

Overture v. Google, N.D.
Cal. C02-01991

**CERTIFICATE OF MAILING**

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail, with sufficient postage, in an envelope addressed to: Assistant Commissioner for Patents, Washington, D.C. 20231, on

_October 22, 1999_
Date of Deposit

_Elaine K. Lee_
Name of Applicant, Assignee or Registered Representative

_[signature]_
Signature

_October 22, 1999_
Date of Signature

Our Case No. 9623/112

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:           )
                                )
Darren J. Davis et al.          )
                                )
Serial No. 09/322,677           )  Examiner
                                )
Filing Date: May 28, 1999       )  Group Art Unit No. 2771
                                )
For  SYSTEM AND METHOD FOR      )
     INFLUENCING A POSITION ON A)
     SEARCH RESULT LIST         )
     GENERATED BY A COMPUTER
     NETWORK SEARCH ENGINE

**DECLARATION IN SUPPORT OF PETITION AND MOTION UNDER 37 CFR §1.102 (d) TO MAKE APPLICATION SPECIAL**

Assistant Commissioner for Patents
Washington, D.C. 20231

Dear Sir:

1. I am a named inventor in the Davis et al. application. I have reviewed and understand the contents of the Davis et al. application, including the specification and all claims.

OUTSIDE COUNSEL ONLY
UNDER PROTECTIVE ORDER

NON-CONFIDENTIAL
per 4/17/03 McMahon letter

OVG_016110

2. (a) There is an Internet search engine service now being marketed on the Internet under the domain name www.searchup.com. This service is being offered by SearchUP, Inc. of Honolulu, Hawaii. A copy of a web page entitled "About SearchUP, Inc.", obtained at the Internet address http://www.searchup.com/about.cfm, and printed on July 15, 1999 is attached hereto at Exhibit 1. In addition, a copy of a web page entitled "Benefits", obtained at the Internet address http://www.searchup.com/benefits.cfm, and printed on July 15, 1999 is attached hereto at Exhibit 2.

(b) SearchUP's web page, "About SearchUP, Inc.", shown at Exhibit 1, asserts that the Internet search engine services offered by SearchUP, Inc. utilize an "automated bid placement service" to recognize the "importance of top URL search engine placements for Internet businesses". In Exhibit 2, SearchUP, Inc. states that its automated bid placement service "allows web sites to control their URL placement" and permits web sites to "quickly add, update or remove URL submissions". To control the approximate placement of their web site "within minutes", web sites may bid money amounts for their web site listing to appear within a particular category or when searcher-selected keywords are entered. Web sites may be listed on SearchUP, Inc.'s service free, but a money amount is collected by SearchUP, Inc. for web sites wishing "increased visibility and IMMEDIATE URL placement". URL positions are ranked in order of bid amount, with the highest bid amount listed on the top of the page for greatest visibility.

(c) A July 1, 1999 letter from Emilia F. Cannella, intellectual property counsel to GoTo.com, Inc. assignees of the Davis et al application, to Bryan Buck, president of

SearchUP, Inc., regarding SearchUP's employment of a "pay for placement" business model for its Internet search engine services, is attached at Exhibit 3.

(d) The Internet search engine services offered by SearchUP, Inc. would infringe at least some claims presented May 28, 1999, in U.S. Patent Application Serial No. 09/322,677 to Davis et al. (hereinafter the "Davis et al. application").

3. On information and belief, the Internet search engine services offered by SearchUP, Inc. and described above was first discovered to exist by employees of GoTo.com, Inc., assignee of the Davis et al. application, on or about May 20, 1999.

4. (a) I have made a rigid comparison between the Internet search engine service offered by SearchUP, Inc. and the following claims presented in the Davis et al. application.

(b) Claim 15 of the Davis et al. application reads (except for differences in formatting) as follows:

A method of enabling a network information provider to update information relating to a search listing on a search result list generated by a computer network search engine, comprising the steps of:

maintaining an account database having at least one account record for each of a plurality of network information providers, said account record including at least one search listing having a search term and a bid amount; and an account identifier;

receiving from a network information provider a change request for a search listing in the network information provider's account;

updating the search listing in the network information provider's account record in response to the change request; and

determining a position substantially in real time for the updated search listing in a search result list generated by the search engine in response to a search request received from a searcher using the computer network, where the search term of the updated search listing generates a match with the search request and the position of the updated search listing in the search result list is determined using the bid amount.

(c)   Claim 30 of the Davis et al. application, as amended in the accompanying Preliminary Amendment, reads (except for differences in formatting) as follows:

A method of enabling a web site promoter using a computer network to update information relating to a search listing within a search result list generated by a search engine substantially in real time in response to a search request received from a remote computer over the computer network, comprising the steps of:

maintaining an account database having at least one account record for each of a plurality of web site promoters of the computer network, said account record including an account identifier, and at least one search listing having a search term and a bid amount;

providing the web site promoter with authenticated login access, wherein the web site promoter's login access permits the web site promoter to modify the web site promoter's account record;

modifying a search listing of the account record upon receiving a request from said web site promoter; and

generating a search result list comprised of search listings wherein the search term for each search listing generates a match with the search request, the search listings in the search result list arranged in an order corresponding to the bid amounts of the search listings.

(d)  A screen shot of a search result list generated by SearchUP, Inc.'s Internet search engine service described above is attached hereto at Exhibit 4. The search result list contains entries obtained from a database containing a plurality of search listings, where each search listing is associated with a bid amount and a search term. In Exhibit 4, each entry in the search result list is associated with one search listing. The bid amount, e.g. $20/year, is shown for each entry, and the text "Web Sites with 'cars'..." shown in Exhibit 4 indicates that each entry in the search result list is associated with the search term "cars". The search result list of Exhibit 4 was generated after a search request was received from a searcher who wished to find listings associated with the term "cars", and contains an entry for each search listing in the database whose search term generates a match with the term "cars". The position of the entries of the search result list of Exhibit 4 is determined, at least in part, in order

of decreasing bid amount, with the highest bid amount appearing at the top of the search result list page.

Exhibit 5 comprises a screen shot from SearchUP, Inc.'s online account manager, showing that authenticated login access is provided to web site owners having user accounts. Exhibit 6 is a screen shot taken from within SearchUP, Inc.'s online account manager displaying a form requesting web site owner information prior to creating a user account. The user's email address is used as the account identifier and a password is generated by SearchUP, Inc. for the newly created user account. As shown in the screen shots of Exhibit 7, the creation of a user account permits users to manage their accounts online. For example, screens can be displayed permitting users to perform functions such as adding a Uniform Resource Locator (URL) to the database, specifying search terms and a bid amount, changing the bid amounts, or deleting a URL. Payment information is requested when the specified bid amount is nonzero.

5.   In my opinion, at least claims 15 and 30 presented in the Davis et al. application would unquestionably be infringed if contained in an issued U.S. patent which was not assigned to the provider of the Internet search engine service described above.

6.   (a)   Furthermore, I am aware of several other Internet search engine services that utilize a "pay for placement" business model that may now or in the future infringe claims presented in the Davis et al. application if such claims are contained in an issued U.S. patent which was not assigned to the providers of these several Internet

search engine services. One such service is now being marketed on the Internet under the domain name www.hitsgalore.com, and is being offered by Hitsgalore.com, Inc. of Rancho Cucamonga, California. The Internet search engine service offered by Hitsgalore.com, Inc. was first known to exist by employees of GoTo.com, Inc., assignees of the Davis et al. application, on or about May 10, 1999.

A June 30, 1999 letter from Emilia F. Cannella, intellectual property counsel for GoTo.com, Inc., to the administrative contact for the domain name www.hitsgalore.com is attached at Exhibit 8. A copy of a press release dated July 13, 1999 and entitled "Hitsgalore.com Announces New 'Portal Services' and New Site Layout", obtained at the Internet address http://www.hitsgalore.com/press_071399.shtml is attached hereto at Exhibit 9. In addition, a web page entitled "Keyword Bid & Rank", obtained at the Internet address http://www.hitsgalore.com/bidrank.shtml and printed on September 8, 1999 is attached hereto at Exhibit 10. Finally, a screen shot of a search result list generated by Hitsgalore.com's Internet search engine service is attached at Exhibit 11.

(b)   Another Internet search engine service utilizing a "pay for placement" business model is now being marketed on the Internet under the domain name www.iseekit.com, and is being offered by I Seek It of Columbus, Ohio. The Internet search engine service offered by I Seek It was first known to exist by employees of GoTo.com, Inc., assignees of the Davis et al. application, on or about May 20, 1999.

A July 1, 1999 letter from Emilia F. Cannella, intellectual property counsel for GoTo.com, Inc., to Robert G. Schuler, counsel for I Seek It, is attached hereto at Exhibit 12. A copy of a web page entitled "About Us", obtained at the Internet address

OUTSIDE COUNSEL ONLY UNDER PROTECTIVE ORDER   NON-CONFIDENTIAL per 4/17/03 McMahon letter

http://www.iseekit.com/faq.htm and printed on September 8, 1999 is attached hereto at Exhibit 14. A copy of a web page entitled "Terms and Conditions", obtained at the Internet address http://www.iseekit.com/terms.htm and printed on September 8, 1999 is attached hereto at Exhibit 14. A screen shot of an online form to add or change URL listings, keywords, and bid amounts is attached at Exhibit 15. An online form for web site owners to make additional deposits to an existing account for bidding for search result list positions is shown in Exhibit 16. Finally, a screen shot of a search result list generated by I Seek It's Internet search engine service is attached at Exhibit 17.

(c) Another Internet search service offering a "pay for placement" business model is now being marketed on the Internet under the domain name www.findwhat.com, and is being offered by BeFirst.com of New York, New York. The Internet search engine service offered by BeFirst.com was first known to exist by employees of GoTo.com, Inc., assignees of the Davis et al. application, on or about July 11, 1999. A July 20, 1999 letter from Emilia F. Cannella, intellectual property counsel for GoTo.com, Inc., to Robert Brahms of BeFirst.com is attached at Exhibit 18. Exhibits 19 and 20, entitled "Promote Your Web Site on FindWhat" and "Frequently Asked Questions" respectively, are printouts of web pages, obtained on September 8, 1999, containing descriptions of the "pay for placement" type search result ranking methodology used in BeFirst.com's Findwhat.com search engine. Exhibit 21 is a screen shot of an online form for web site owners to apply for bidding accounts. Exhibit 22 is a press release dated August 18, 1999 entitled "BeFirst.com Selects Inktomi's Search Platform for FindWhat.com" further describing the Findwhat.com "pay-for-placement"

Overture v. Google, N.D.
Cal. C02-01991

search engine. Finally, a screen shot of a search result list generated by the Findwhat.com Internet search engine is attached at Exhibit 23.

(d) The Internet search engine services offered or proposed by Hitsgalore.com, I Seek It, and BeFirst.com would infringe at least one claim presented May 28, 1999, in the Davis et al. application.

7. (a) I have made a rigid comparison between the Internet search engine services offered by Hitsgalore.com, I Seek It, and BeFirst.com, and the following claim presented in the Davis et al. application.

(b) Claim 1 of the Davis et al. application, as amended in the accompanying Preliminary Amendment, reads (except for differences in formatting) as follows:

A method of generating a search result list substantially in real time in response to a search request from a searcher using a computer network, comprising:

maintaining a database including a plurality of search listings, wherein each search listing is associated with a bid amount and a search term;

receiving a search request from the searcher;

identifying the search listings having search terms generating a match with the search request;

ordering the identified search listings into a search result list in accordance with the values of the respective bid amounts for the identified search listings;

OUTSIDE COUNSEL ONLY
UNDER PROTECTIVE ORDER
NON-CONFIDENTIAL
per 4/17/03 McMahon letter
OVG_016118

Overture v. Google, N.D.
Cal. C02-01991

receiving a retrieval request from the searcher to retrieve information associated with a search listing in the search result list; and

recording a retrieval request event in the database corresponding to the searcher's retrieval request.

(c)     The sample search result list shown for Hitsgalore.com's service in Exhibit 11 shows that the service maintains a database containing a plurality of search listings, where each search listing is associated with a bid amount and a search term. The bid amount, e.g. $0.05 is shown for each entry. Furthermore, Exhibit 10 shows that a keyword as well as a bid amount must be associated with each search listing. The Hitsgalore.com service is capable of receiving a search request from a searcher, as shown by the search box at the top of Exhibits 9, 10, and 11, where the searcher can type in a search request, which may comprise one or more keywords. The Hitsgalore.com service then identifies the search listings having search terms generating a match with the search request. These identified search listings are ordered in accordance with the values of the respective bid amounts for the identified search listings, as shown in Exhibit 11, which shows a search result list generated by Hitsgalore.com's service for a search request of "cars". Exhibits 9 and 10 state that each time a searcher "clicks through" a search listing, that is, each time a web site corresponding to a search listing on a search result list is accessed, the bid amount corresponding to that search listing is deducted from the appropriate web site owner's account. A "click through" is therefore a retrieval request from the searcher to retrieve information associated with a search listing in the search result list. Furthermore, in order for the bid amount to be properly deducted from the web site owner's account, this

OUTSIDE COUNSEL ONLY
UNDER PROTECTIVE ORDER

NON-CONFIDENTIAL
per 4/17/03 McMahon letter

OVG_016119

retrieval request is received and recorded by the hitsgalore.com service in conjunction with the searcher's browser's retrieval of information from the selected web site.

(d) The sample search result list shown for I Seek It's service in Exhibit 17 shows that I Seek It's service also maintains a database containing a plurality of search listings, where each search listing is associated with a bid amount and a search term. The bid amount, e.g. $0.05 is shown for each entry. Furthermore, the online bidding form of Exhibit 15 shows that a keyword as well as a bid amount must be associated with each search listing. The I Seek It service is capable of receiving a search request from a searcher, as shown by the search box at the top of Exhibit 17, where the searcher can type in a search request which may comprise one or more keywords. The I Seek It service then identifies the search listings having search terms generating a match with the search request. These identified search listings are ordered in accordance with the values of the respective bid amounts for the identified search listings, as shown in Exhibit 17, which shows a search result list generated by I Seek It's service for a search request of "books". Exhibit 13 states that the bid amount associated with a search listing is a "bid per click". That is, each time a searcher accesses a web site corresponding to a search listing on a search result list, the bid amount corresponding to that search listing is deducted from the appropriate web site owner's account. A "click" is therefore a retrieval request from the searcher to retrieve information associated with a search listing in the search result list. Furthermore, in order for the bid amount to be properly deducted from the web site owner's account, this retrieval request is received and recorded by the I Seek It service in conjunction with the searcher's browser's retrieval of information from the selected web site.

(e)   The sample search result list shown in Exhibit 23 for BeFirst.com's service, Findwhat.com, also shows that the service maintains a database containing a plurality of search listings. Findwhat.com does not display the bid amount in the search result list entries shown in Exhibit 23. However, Findwhat.com states in the descriptive materials of Exhibits 20 and 21 that each search listing includes a search term and a bid amount. Findwhat.com is capable of receiving a search request from a searcher, as shown by the search boxes at the top of the screen shots of Exhibits 20, 22, and 23, where the searcher can type in a search request, which may comprise one or more keywords. The Findwhat.com service then identifies the search listings having search terms generating a match with the search request. These identified search listings are ordered in accordance with the values of the respective bid amounts for the identified search listings, as discussed in Exhibit 20. Exhibits 19 and 20 state that the bid amount associated with a search listing is only deducted from a web site owner's account when a searcher "clicks through" to the web site associated with that search listing. That is, each time a searcher accesses a web site corresponding to a search listing on a search result list, the bid amount corresponding to that search listing is deducted from the appropriate web site owner's account. A "click through" is therefore a retrieval request from the searcher to retrieve information associated with a search listing in the search result list. Furthermore, in order for the bid amount to be properly deducted from the web site owner's account, this retrieval request is received and recorded by the Findwhat.com service in conjunction with the searcher's browser's retrieval of information from the selected web site.

8. In my opinion, at least claim 1 presented in the Davis et al. application would unquestionably be infringed if contained in an issued U.S. patent which was not assigned to each of the providers of the Internet search engine services described above in paragraphs 5 and 6.

9. I have knowledge that a careful and thorough search of the prior art relating to the claims of the Davis et al. application was made. The results of this search, as well as other prior art known to the attorneys of the assignee of the Davis et al. application that may be relevant to patentability of the claims of the Davis et al. application, was cited to the Examiner in an Information Disclosure Statement filed on August 27, 1999.

10. Based on my review of the prior art cited in the Information Disclosure Statement in this case, I do not know and do not believe that the invention described in the Davis et al. application was ever known or used in the United States of America before my or our invention thereof, or patented or described in any printed publication in any country before my or our invention thereof or more than year prior to the filing date of this application. I also do not know and do not believe that the invention described in the Davis et al. application was in public use or on sale in the United States of America more than one year prior to the filing date of this application. I believe that the invention described in the Davis et al. application has not been patented or made the subject of an inventor's certificate issued before the filing date of the Davis et al. application in any country foreign to the United States of America on an application filed by me, any other named inventors, our legal representatives, or our assignees. Furthermore, I believe that no application for patent or inventor's certificate on this invention has been filed in

any country foreign to the United States of America prior to this application by me, any other named inventors, our legal representatives, or our assignees.

11. It is very important to the assignee of the Davis et al. application that a patent for the present invention issue promptly, in order that the infringement of the rights of the assignee of the Davis et al. application in the invention be abated.

12. I declare that the foregoing statements made of my own knowledge are true, and that the foregoing statements made on information and belief are believed to be true; and further, that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine, or imprisonment, or both, under 18 U.S.C. § 1001; and may jeopardize the validity of the Davis, et al. application, or any patent issuing therefrom.

Respectfully submitted,

_____
Darren J. Davis, Inventor