# Grewal Decl., Exhibit Q

```
 1
                    IN THE UNITED STATES DISTRICT COURT
 2                    NORTHERN DISTRICT OF CALIFORNIA
                         SAN FRANCISCO DIVISION
 3
 4   OVERTURE SERVICES, INC., a      )
     Delaware Corporation,           )
 5                                   )
                   Plaintiff,        )
 6                                   ) Case No. C 02-01991
        -vs-                         )   CERTIFIED COPY
 7                                   )
     GOOGLE, INC., a California      )
 8   Corporation,                    )
                                     )
 9                 Defendant.        )
10
11           Videotaped deposition of JAMES P. NAUGHTON,
12   ESQ., taken before MARGARET A. BACHNER, CSR, RMR, CRR,
13   and Notary Public, pursuant to the Federal Rules of Civil
14   Procedure for the United States District Courts
15   pertaining to the taking of depositions, at Suite 3600B,
16   NBC Tower, 455 North Cityfront Plaza Drive, Chicago,
17   Illinois, on the 15th day of April, A.D. 2004, at 8:38
18   a.m.
19
20           There were present at the taking of this
21   deposition the following counsel:
22
23
24
                                                              1
```


LEGALINK®
A WORDWAVE COMPANY

LegaLink San Francisco
601 Van Ness Ave, Suite 2052
San Francisco, CA 94102

tel (415) 359-2040    www.legalink.com
tel (800) 869-9132
fax (415) 359-2050

GLOBAL COURT REPORTING · LEGAL VIDEOGRAPHY · TRIAL SERVICES

```
 1   been touched upon in connection with inventorship
 2   discussions.  The people I can recall speaking with on
 3   the combined, or at least one of those topics -- well,
 4   Darren Davis, Matthew Derer, Tod Kurt, probably Preston
 5   Pfarner and Steve Skovran, Jay Gallinatti, Anthony
 6   Molinaro.
 7       Q.   Okay.  What do you recall discussing with Mr.
 8   Davis about the investigation into dates and features of
 9   GoTo.com's business?
10       MS. THAYER:  I instruct you not to answer that on
11   the grounds of attorney-client privilege.
12   BY MS. DURIE:
13       Q.   When did your conversation with Mr. Davis
14   about an investigation into the dates and features of
15   GoTo.com's business take place?
16       A.   Which one?
17       Q.   The one that you were just referring to.
18       A.   The one I was just referring to occurred in
19   late 2001 or early 2002.
20       Q.   Okay.  Did you learn information from Mr.
21   Davis in that late 2001, early 2002 discussion about
22   dates and features of GoTo.com's business that was
23   different from information that you had learned in
24   connection with your earlier inquiries in 1999?
```

76

```
 1         THE WITNESS:  Okay.
 2         MS. THAYER:  You can say generally as to the time
 3    frame, but not specifically what you said.
 4    BY THE WITNESS:
 5         A.    It was probably around the time that John
 6    Rauch began work in connection with this prosecution.
 7    BY MS. DURIE:
 8         Q.    What did you and Mr. Rauch discuss about
 9    Exhibit 10?
10         MS. THAYER:  I'd instruct you not to respond based
11    on privilege.
12    BY MS. DURIE:
13         Q.    You also said that you had a conversation with
14    someone at GoTo about Exhibit 10.  Can you recall the
15    name of that person?
16         A.    I can't recall specifically.
17         Q.    Was it Darren Davis?
18         A.    At some point in time I probably did talk to
19    Darren about it.
20         Q.    And what did you and Mr. Davis discuss about
21    Exhibit 10?
22         MS. THAYER:  I instruct you not to answer.  Client
23    privilege.
24    BY MS. DURIE:
```

166

```
 1        Q.    Do you have any understanding as to why he was
 2   not selected?
 3        A.    If we considered him, I don't currently have a
 4   recollection of specifically why we didn't use him.
 5        Q.    Okay.  When Mr. Rauch began working on the
 6   prosecution of the '361 patent, did you have any
 7   conversations with him?
 8        A.    Did I have any conversations with him?
 9        Q.    Yes.
10        A.    Yes.
11        Q.    What did you tell him when he first started
12   working on the file?
13        MS. THAYER:  Instruct you not to answer on the
14   ground of privilege.
15   BY MS. DURIE:
16        Q.    Did you discuss with Mr. Rauch Overture's
17   system as it existed prior to May 28th, 1998?
18        A.    At any time?
19        Q.    At the time that he started working on the
20   case.
21        MS. THAYER:  You can answer that yes, no, I don't
22   know.
23   BY THE WITNESS:
24        A.    I believe so.
```

210

```
 1   BY MS. DURIE:
 2        Q.   What did you tell him?
 3        MS. THAYER:  I instruct you not to answer that based
 4   on the privilege.
 5   BY MS. DURIE:
 6        Q.   Did you tell Mr. Rauch that that precritical
 7   date system was a test system?
 8        MS. THAYER:  I instruct you not to answer that.
 9   Privilege.
10   BY MS. DURIE:
11        Q.   And in each of these cases again you're
12   following your counsel's instruction, correct?
13        A.   Yes.
14        Q.   Did you tell Mr. Rauch that he did not need to
15   conduct any investigation into whether the claimed
16   invention had been in prior public use?
17        MS. THAYER:  Can I hear that back?
18   BY MS. DURIE:
19        Q.   I can read it again.
20             Did you tell Mr. Rauch that he did not need to
21   conduct any investigation into whether the claimed
22   invention had been in prior public use?
23        MS. THAYER:  You should not answer that based on
24   privilege.
```

```
 1    BY MS. DURIE:
 2        Q.    Okay.  Did you tell Mr. Rauch that the claims
 3    of the patent were directed to inventions that had not
 4    been in public use?
 5        MS. THAYER:  You should not answer that question.
 6    Privilege.
 7    BY MS. DURIE:
 8        Q.    Mr. Naughton, what is the definition of a
 9    limitation in the context of a claim of a patent?
10        A.    Definition of a limitation?
11        Q.    What is a limitation?
12        A.    There's all kinds of case law involving an
13    analysis of what is or is not a limitation.  But
14    generally speaking, and people use it different ways, the
15    term can be used to describe something which defines or
16    limits the scope of a claimed invention.
17        Q.    Okay.  Now, in the what we're been referring
18    to as the beta system, the system that existed prior to
19    May 28th, 1998, did that system maintain any logs of
20    clicks?
21        MS. THAYER:  Asked and answered.
22    BY THE WITNESS:
23        A.    Yeah, I think we went through that.
24    BY MS. DURIE:
```

212

JAMES P. NAUGHTON

```
 1      Q.    And the answer is?
 2      A.    I don't recall specifically.
 3      Q.    Okay.  Did you ever ask Mr. Kurt whether the
 4  precritical date system maintained logs of clicks?
 5      MS. THAYER:  You can answer that yes, no, I don't --
 6  well, --
 7  BY THE WITNESS:
 8      A.    How about I may have?
 9      MS. THAYER:  I will instruct you not to -- to answer
10  that specific one based on privilege.
11  BY MS. DURIE:
12      Q.    Okay.  I have the same question with respect
13  to Mr. Soulanille, which I know will get the same
14  objection.
15      MS. THAYER:  That's correct.
16  BY MS. DURIE:
17      Q.    Did you ask Mr. Soulanille whether the
18  precritical date system maintained logs of clicks?
19      MS. THAYER:  Same instruction.
20  BY MS. DURIE:
21      Q.    Okay.  As you sit here today, do you know
22  whether the precritical date system maintained logs of
23  clicks?
24      MS. THAYER:  Asked and answered.
```

213

```
 1   STATE OF ILLINOIS  )
                        )
 2   COUNTY OF DU PAGE  )
 3
 4            The within and foregoing deposition of the
 5   aforementioned witness was taken before MARGARET A.
 6   BACHNER, CSR and Notary Public, at the place, date and
 7   time aforementioned.
 8            There were present during the taking of the
 9   deposition the previously named counsel.
10            The said witness was first duly sworn and
11   was then examined upon oral interrogatories; the
12   questions and answers were taken down in shorthand by
13   the undersigned, acting as stenographer and Notary
14   Public; and the within and foregoing is a true, accurate
15   and complete record of all of the questions asked of and
16   answers made by the aforementioned witness, at the time
17   and place hereinabove referred to.
18            The signature of the witness was not waived,
19   and the deposition was submitted, pursuant to Rules 30(e)
20   and 32(d) of the Rules of Civil Procedure for the United
21   States District Court, to the deponent per copy of the
22   attached letter.
23
24
```

276

```
 1          The undersigned is not interested in the
 2   within case, nor of kin or counsel to any of the parties.
 3          Witness my official signature and seal as
 4   Notary Public in and for DuPage County, Illinois, on this
 5   19th day of April, A.D. 2004.
 6
 7
 8                          _____
                            Margaret A. Bachner, CSR, RMR, CRR
 9                          Illinois CSR No. 84-1481
                            230 West Monroe Street
10                          Suite 1500
                            Chicago, Illinois  60606
11                          Phone:  (312) 263-3524
12
13                          "OFFICIAL SEAL"
                            MARGARET A. BACHNER
14                          COMMISSION EXPIRES 07/27/06
15
16
17
18
19
20
21
22
23
24
```