**EXHIBIT B**

Dockets.Justia.com

CERTIFIED COPY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| OVERTURE SERVICES, INC., A DELAWARE CORPORATION, ) ) ) | |
| PLAINTIFF, ) ) | |
| VS. ) ) | NO. C 02-01991 JSW ADR |
| GOOGLE INC., A CALIFORNIA CORPORATION, ) ) ) | |
| DEFENDANT. ) ) | |

VOLUME I

VIDEOTAPED DEPOSITION OF DARREN J. DAVIS

(CONFIDENTIAL TRANSCRIPT)

LOS ANGELES, CALIFORNIA

TUESDAY, MAY 20, 2003

REPORTED BY:

KAREN E. KAY
CSR NO. 3862, RMR, CRR

JOB NO.
29884KEK



LUDWIG KLEIN
REPORTERS & VIDEO, INC.
10868 KLING STREET
TOLUCA LAKE, CALIFORNIA 91602
800.540.0681        FAX 818.508.6326
e-mail: lois@ludwigklein.com

WG REPORTERS & VIDEO, INC    800-540-9681

| | | | |
|---|---|---|---|
| 1 | A | YES. | 09:37:18 |
| 2 | Q | IN THIS DEPOSITION I'M SOMETIMES GOING TO | 09:37:19 |
| 3 | REFER TO THE COMPANY AS OVERTURE AND SOMETIMES AS | | 09:37:21 |
| 4 | GOTO TYPICALLY DEPENDING ON APPROXIMATELY THE TIME | | 09:37:25 |
| 5 | PERIOD I'M TALKING ABOUT.  BUT SINCE IT'S THE SAME | | 09:37:27 |
| 6 | COMPANY WITH JUST A DIFFERENT NAME, I'D LIKE YOU TO | | 09:37:30 |
| 7 | UNDERSTAND THAT I'M REFERRING TO THE COMPANY UNDER | | 09:37:33 |
| 8 | BOTH NAMES WHEN I SAY THAT.  SO WHEN I SAY "GOTO," | | 09:37:37 |
| 9 | IF YOU HAVE AN ANSWER THAT APPLIES TO OVERTURE, THE | | 09:37:40 |
| 10 | TIME PERIOD WHERE THE COMPANY WAS CALLED OVERTURE, | | 09:37:41 |
| 11 | I'D LIKE YOU TO ANSWER AS TO THAT AS WELL AND VICE | | 09:37:43 |
| 12 | VERSA; IS THAT OKAY? | | 09:37:46 |
| 13 | A | OKAY.  IF I NEED CLARIFICATION, I'LL BE | 09:37:49 |
| 14 | SPECIFIC ABOUT IT. | | 09:37:51 |
| 15 | Q | THAT WOULD BE GREAT.  THANKS. | 09:37:52 |
| 16 | A | GREAT. | 09:37:54 |
| 17 | Q | WHEN DID YOU START AT OVERTURE? | 09:37:54 |
| 18 | A | IN OCTOBER OF 1998. | 09:37:59 |
| 19 | Q | WHAT WAS YOUR JOB TITLE AT GOTO ACTUALLY IN | 09:38:04 |
| 20 | OCTOBER 1998? | | 09:38:07 |
| 21 | A | PRODUCT MANAGER. | 09:38:11 |
| 22 | Q | DID YOU HAVE ANY CONTACT WITH THE COMPANY | 09:38:13 |
| 23 | BEFORE OCTOBER OF 1998? | | 09:38:15 |
| 24 | A | YES, I DID. | 09:38:17 |
| 25 | Q | CAN YOU DESCRIBE THAT FOR ME? | 09:38:19 |

19

CONFIDENTIAL TRANSCRIPT - VOLUME I

| | | | |
|---|---|---|---|
| 1 | Q | WHAT WERE THOSE VARIOUS TECHNICAL REASONS? | 11:25:16 |
| 2 | A | THE ONE THAT I CAN RECALL IS THAT THERE WAS | 11:25:20 |
| 3 | | NOT A MEANS TO RECONCILE THE CLICKS THAT WERE | 11:25:25 |
| 4 | | RECEIVED TO SPECIFIC ADVERTISER ACCOUNTS. | 11:25:29 |
| 5 | Q | WHO TOLD YOU THAT? | 11:25:34 |
| 6 | A | I CAN'T RECALL.  I JUST -- I HEARD IT. | 11:25:35 |
| 7 | | AGAIN, THAT WASN'T THE PART OF THE BUSINESS THAT I | 11:25:40 |
| 8 | | WAS DIRECTLY INVOLVED WITH. | 11:25:42 |
| 9 | Q | DO YOU KNOW WHEN -- DO YOU KNOW WHEN | 11:25:45 |
| 10 | | OVERTURE WAS TRYING TO BILL ITS USER BUT WAS UNABLE | 11:25:52 |
| 11 | | TO WHEN THAT HAPPENED? | 11:25:56 |
| 12 | A | I BECAME AWARE THAT THERE WAS SOME | 11:25:57 |
| 13 | | SITUATION LIKE THAT WHEN I JOINED THE COMPANY. | 11:25:59 |
| 14 | Q | DO YOU KNOW WHETHER GOTO HAD BEEN PAID | 11:26:03 |
| 15 | | FOR -- BY ANY OF ITS WEBSITE PROMOTERS FOR ANY OF | 11:26:07 |
| 16 | | THE TRAFFIC THAT OVERTURE DELIVERED AS OF ABOUT | 11:26:10 |
| 17 | | OCTOBER 1998? | 11:26:14 |
| 18 | A | I BELIEVE SO, BUT I CAN'T BE ENTIRELY SURE. | 11:26:22 |
| 19 | | AGAIN, I WASN'T PART OF THE COMPANY AT THAT POINT. | 11:26:25 |
| 20 | Q | WHY DO YOU BELIEVE THAT? | 11:26:36 |
| 21 | A | I'M SORRY.  WHY DO I BELIEVE WHAT? | 11:26:38 |
| 22 | Q | WHY DO YOU BELIEVE THAT SOME WEBSITE | 11:26:40 |
| 23 | | PROMOTERS HAD PAID FOR THE TRAFFIC THAT WAS | 11:26:43 |
| 24 | | DELIVERED TO THEM AS OF OR PRIOR TO OCTOBER 1998? | 11:26:45 |
| 25 | A | I SEEM TO REMEMBER HEARING THAT WE HAD | 11:26:53 |

CONFIDENTIAL TRANSCRIPT - VOLUME I

| | | |
|---|---|---|
| 1 | STARTED TO RECEIVE MONEY, BUT I CAN'T REMEMBER | 11:26:56 |
| 2 | SPECIFICALLY WHAT THE INSTANCE WAS. IT WAS JUST | 11:26:59 |
| 3 | SOMETHING THAT WAS KIND OF OUT THERE. I WAS NEW TO | 11:27:06 |
| 4 | THE COMPANY, AND I WAS REALLY JUST TRYING TO LEARN | 11:27:10 |
| 5 | MY JOB AT THAT POINT. | 11:27:12 |
| 6 | Q    IS THAT SOMETHING YOU WOULD HAVE HEARD IN A | 11:27:13 |
| 7 | CONVERSATION WITH SOMEONE? | 11:27:15 |
| 8 | A    POSSIBLY. I CAN'T RECALL SPECIFICALLY. | 11:27:19 |
| 9 | Q    IN PERHAPS AN E-MAIL STATUS REPORT? | 11:27:22 |
| 10 | A    DOUBTFUL. WE WEREN'T BIG ON STATUS REPORTS | 11:27:26 |
| 11 | BACK THEN. | 11:27:29 |
| 12 | Q    WAS THERE AN INTERNAL WEB PAGE YOU COULD GO | 11:27:30 |
| 13 | TO FOR NEWS ABOUT WHAT WAS GOING ON IN THE COMPANY? | 11:27:33 |
| 14 | A    NOT THAT I WAS AWARE OF, NO. | 11:27:36 |
| 15 | Q    IS THERE ANY WAY YOU CAN THINK OF YOU WOULD | 11:27:40 |
| 16 | HAVE LEARNED ABOUT THIS OTHER THAN A CONVERSATION | 11:27:42 |
| 17 | WITH SOMEONE? | 11:27:43 |
| 18 | A    COULD HAVE JUST HEARD IT AROUND THE WATER | 11:27:46 |
| 19 | COOLER. AT THE TIME GOTO WAS IN THE IDEA LAB | 11:27:49 |
| 20 | BUILDING. THERE WAS A LOT OF PEOPLE AROUND. | 11:27:55 |
| 21 | OCCASIONALLY YOU JUST KIND OF HEARD THINGS IN | 11:27:58 |
| 22 | PASSING. YOU COULDN'T NECESSARILY BE SURE WHAT WAS | 11:28:00 |
| 23 | RIGHT AND WHAT WAS WRONG. | 11:28:04 |
| 24 | MR. KWUN: WE HAVE TO CHANGE THE TAPE, SO | 11:28:06 |
| 25 | WHY DON'T WE TAKE A BREAK HERE. | 11:28:08 |

CONFIDENTIAL TRANSCRIPT - VOLUME I

```
 1   THAT WAS MADE AT T.E.D. 8.  I DON'T SPECIFICALLY          11:54:28
 2   KNOW THERE WAS A PRESENTATION MADE.                       11:54:31
 3       Q    AND YOU DON'T RECALL TELLING ANYONE TO LOOK      11:54:35
 4   FOR DOCUMENTS THAT RELATED TO T.E.D. 8?                   11:54:37
 5       A    NO.                                              11:54:43
 6       Q    WHY DIDN'T YOU DO THAT?                          11:54:44
 7       A    I BELIEVE THAT I FULFILLED MY DUTY TO            11:54:48
 8   DISCLOSE BY DISCLOSING THE INFORMATION THAT I WAS         11:54:51
 9   AWARE OF.                                                 11:54:53
10       Q    AND TURNING BACK TO EXHIBIT 4, IF YOU COULD      11:55:05
11   JUST READ THE PARAGRAPH -- YOU CAN GO AHEAD AND READ      11:55:09
12   IT TO YOURSELF -- ABOVE YOUR SIGNATURE STARTING WITH      11:55:13
13   "I HEREBY DECLARE."  AND WHEN YOU'RE DONE WITH THAT,      11:55:15
14   JUST LET ME KNOW.                                         11:55:19
15       A    OKAY.                                            11:55:31
16       Q    SO YOU READ THAT AND UNDERSTOOD THAT BEFORE      11:55:31
17   YOU SIGNED THIS DOCUMENT; IS THAT CORRECT?                11:55:33
18       A    YES.                                             11:55:35
19       Q    AND SO YOU UNDERSTOOD THAT YOU WERE              11:55:35
20   UNDERTAKING A SERIOUS DUTY HERE IN SUBMITTING THIS        11:55:37
21   PATENT APPLICATION?                                       11:55:40
22       A    YES.                                             11:55:41
23       Q    AND YOU UNDERSTOOD THAT IT WAS INCUMBENT         11:55:42
24   UPON YOU TO ACT WITH CANDOR IN ALL OF YOUR                11:55:44
25   INTERACTIONS WITH THE PATENT OFFICE?                      11:55:49
```

                                                              101

CONFIDENTIAL TRANSCRIPT - VOLUME I

| | | | |
|---|---|---|---|
| 1 | A | YES. | 11:55:51 |
| 2 | Q | OKAY. | 11:55:57 |
| 3 | A | I'M SORRY. CAN YOU CLARIFY JUST "CANDOR"? | 11:55:59 |

4  I'M NOT SURE I'VE SEEN THAT TERM SPECIFICALLY  11:56:01

5  MENTIONED.  11:56:04

6    Q    WHAT DID YOU -- WHAT WERE YOU THINKING OF  11:56:04

7  WHEN YOU ANSWERED THAT QUESTION?  11:56:07

8    A    I KNOW THAT I WAS -- PER MY DUTY AND PER  11:56:08

9  JUST WHO I AM, I WAS AS FORTHCOMING AS I COULD BE  11:56:12

10  AND WANTED TO MAKE SURE THAT EVERYTHING THAT I KNEW  11:56:16

11  ABOUT WAS DISCLOSED AND THAT I COOPERATED WITH THE  11:56:19

12  PATENT AND TRADEMARK OFFICE AS MUCH AS POSSIBLE  11:56:22

13  DURING THE PROSECUTION OF OUR PATENT APPLICATION.  11:56:24

14    Q    SO YOU NEVER TRIED TO HIDE ANY INFORMATION  11:56:27

15  THAT YOU HAD?  11:56:28

16    A    ABSOLUTELY NOT.  11:56:29

17    Q    AND YOU DIDN'T RELY ON -- YOU DIDN'T TRY TO  11:56:33

18  REPLY ON TECHNICALITIES IN TERMS OF -- WELL, I  11:56:36

19  SUPPOSE THIS IS TECHNICALLY TRUE BUT -- SO I CAN SAY  11:56:39

20  IT?  11:56:42

21    A    NO.  11:56:43

22    Q    SO YOU TRIED TO BE AS FORTHRIGHT AS  11:56:43

23  POSSIBLE?  11:56:45

24    A    ABSOLUTELY.  11:56:45

25    Q    IF YOU COULD TURN TO EXHIBIT 3, WHICH IS  11:56:47

CONFIDENTIAL TRANSCRIPT - VOLUME I

```
 1  RECEIVED RETRIEVAL REQUESTS.  HOW ARE YOU ABLE TO --       14:52:50
 2  HOW DID YOU KNOW THAT?                                     14:52:55
 3       A    I KNOW OF NO OTHER WAY THAT A SITE LIKE          14:53:10
 4  HITS GALORE COULD OFFER THE SERVICES THAT THEY CLAIM       14:53:16
 5  TO OFFER IN EXHIBITS 9 AND 10 WITHOUT RECORDING A          14:53:19
 6  RETRIEVAL REQUEST EVENT.                                   14:53:23
 7       Q    BUT HOW DID YOU KNOW THAT THEY RECEIVED          14:53:28
 8  RETRIEVAL REQUESTS?                                        14:53:30
 9       A    BASED ON THE BELIEF THAT THEY WERE ABLE TO       14:53:34
10  FULFILL THE SERVICE OFFERING THAT THEY MADE, I CAN         14:53:37
11  THINK OF NO OTHER WAY THAT THEY COULD HAVE PROVIDED        14:53:41
12  THAT SERVICE WITHOUT RECORDING THOSE RETRIEVAL             14:53:43
13  REQUESTS.                                                  14:53:46
14       Q    WHAT ASPECT OF THE HITSGALORE.COM SERVICE        14:53:48
15  REQUIRES RECEIVING RETRIEVAL REQUESTS?                     14:53:55
16       A    I'M NOT SURE I UNDERSTAND YOUR QUESTION.         14:54:00
17  WHAT ASPECT?                                               14:54:02
18       Q    WHAT IS IT ABOUT THE HITSGALORE.COM SERVICE      14:54:03
19  THAT THEY OFFER THAT REQUIRES RECEIVING RETRIEVAL          14:54:07
20  REQUESTS?                                                  14:54:11
21       A    I CAN SEE NO OTHER WAY THAT THEY CAN             14:55:13
22  FULFILL THE CLAIM THAT THEY MADE IN WHAT WE HAVE           14:55:16
23  LISTED AS EXHIBIT 9 OF EXHIBIT 8 INDICATING THAT           14:55:19
24  THEY WILL LET ADVERTISERS, QUOTE, "PAY FOR WHAT THEY       14:55:28
25  GET," UNQUOTE, "WITHOUT RECORDING A RETRIEVAL              14:55:32
```

CONFIDENTIAL TRANSCRIPT - VOLUME I

```
 1   REQUEST EVENT."                                          14:55:36
 2       Q    SO IS IT YOUR TESTIMONY THAT BECAUSE            14:55:47
 3   HITSGALORE.COM STATES THAT THEY LET ADVERTISERS,         14:55:52
 4   QUOTE, "PAY FOR WHAT THEY GET," UNQUOTE, THAT            14:55:59
 5   NECESSARILY MEANS THAT HITSGALORE.COM RECEIVES           14:56:04
 6   RETRIEVAL REQUESTS?                                      14:56:09
 7       A    I CAN THINK OF NO OTHER WAY THAT THEY COULD     14:56:22
 8   FULFILL THAT CLAIM UNLESS THEY RECEIVED AND RECORDED     14:56:25
 9   THOSE RETRIEVAL REQUESTS.                                14:56:27
10       Q    IS THAT A "YES"?                                14:56:36
11       A    IT'S MY ANSWER.  IT'S NOT A SPECIFIC "YES"      14:56:51
12   OR "NO."                                                 14:56:54
13       Q    SO IN YOUR RULE 102 DECLARATION, WHEN YOU       14:57:01
14   STATED THAT HITSGALORE.COM RECEIVES RETRIEVAL            14:57:06
15   REQUESTS, DID YOU KNOW THAT TO BE TRUE?                  14:57:11
16       A    I COULD SEE NO OTHER WAY THAT THEY COULD        14:57:20
17   FULFILL ON THEIR SERVICE OFFERING UNLESS THEY DID        14:57:21
18   THAT, SO I VERY DEFINITELY BELIEVED IT TO BE TRUE.       14:57:24
19       Q    DID YOU EXPLAIN THE ASSUMPTION THAT YOU HAD     14:57:28
20   MADE THAT IT WAS MERELY THAT YOU COULDN'T THINK OF       14:57:32
21   ANY OTHER WAY TO DO WHAT THEY WERE SAYING THEY DID?      14:57:34
22   DID YOU MAKE THAT ASSUMPTION CLEAR TO THE EXAMINER?      14:57:37
23       A    I BELIEVED THAT SOMEONE REASONABLY SKILLED      14:57:44
24   IN THE ART COULD OBSERVE WHAT HITS GALORE WAS DOING      14:57:47
25   AND NOTE HOW IT WAS BEING DONE IN THE SAME WAY THAT      14:57:56
```

160

CONFIDENTIAL TRANSCRIPT - VOLUME I

| | | |
|---|---|---|
| 1 | Q WHAT WAS IT ABOUT THE WAY THAT | 14:59:44 |
| 2 | HITSGALORE.COM WAS PROVIDING ITS SERVICE THAT LED | 14:59:45 |
| 3 | YOU TO BELIEVE THAT IT MUST BE THE CASE THAT | 14:59:49 |
| 4 | HITSGALORE.COM WAS RECEIVING RETRIEVAL REQUESTS? | 14:59:52 |
| 5 | A I BELIEVE IT WAS THE FACT THAT THEY CLAIMED | 15:00:34 |
| 6 | TO ONLY ALLOW ADVERTISERS TO GET WHAT THEY PAY FOR | 15:00:41 |
| 7 | OR -- SORRY -- PAY FOR WHAT THEY GET, TO CITE | 15:00:46 |
| 8 | EXHIBIT 9. | 15:00:50 |
| 9 | Q WHAT IS IT ABOUT HITS GALORE OFFERING A | 15:00:52 |
| 10 | SERVICE THAT ALLOWED ADVERTISERS TO ONLY PAY FOR | 15:00:57 |
| 11 | WHAT THEY GET THAT LED YOU TO THE CONCLUSION THAT | 15:01:01 |
| 12 | HITSGALORE.COM WAS RECEIVING RETRIEVAL REQUESTS? | 15:01:06 |
| 13 | A IN ORDER FOR THEM TO ONLY PROVIDE TO | 15:01:32 |
| 14 | ADVERTISERS -- LET ME REPHRASE. IN ORDER FOR THEM | 15:01:36 |
| 15 | TO SEND TRAFFIC TO ADVERTISERS BASED ON A | 15:01:48 |
| 16 | SEARCHER'S -- IN THIS CASE, CLICKTHROUGH ON THEIR | 15:01:56 |
| 17 | SITE, THEY WOULD HAVE TO RECORD THAT RETRIEVAL IN | 15:02:06 |
| 18 | ORDER TO BE ABLE TO FULFILL THE SERVICE THAT THEY | 15:02:12 |
| 19 | OFFERED. | 15:02:19 |
| 20 | Q IF YOU CREATE A WEB PAGE AND YOUR WEB PAGE | 15:02:25 |
| 21 | HAS LINKS TO ANOTHER WEBSITE ON ANOTHER SERVER | 15:02:30 |
| 22 | SOMEWHERE ELSE AND A USER GOES AND RETRIEVES YOUR | 15:02:34 |
| 23 | WEB PAGE THAT INCLUDES THESE LINKS TO OTHER SITES | 15:02:40 |
| 24 | AND THE USER THEN CLICKS ON ONE OF THOSE LINKS TO | 15:02:43 |
| 25 | ONE OF THE OTHER SITES, DOES YOUR WEB PAGE OR YOUR | 15:02:46 |

162

CONFIDENTIAL TRANSCRIPT - VOLUME I

| | | |
|---|---|---|
| 1 | EXISTED BEFORE MAY 28 OF 1998 AT THE GOTO.COM | 15:25:20 |
| 2 | WEBSITE? | 15:25:26 |
| 3 | A    THE SYSTEM THAT WAS DESCRIBED BY THE PRIOR | 15:25:31 |
| 4 | ART THAT WE HAD PROVIDED TO THE PATENT AND TRADEMARK | 15:25:38 |
| 5 | OFFICE. | 15:25:41 |
| 6 | Q    HOW DID YOU KNOW THAT THE PRIOR ART | 15:25:45 |
| 7 | DESCRIBED ALL THE FEATURES OF THE SYSTEM THAT | 15:25:50 |
| 8 | EXISTED AS OF MAY 28TH, 1998? | 15:25:53 |
| 9 | A    I KNEW OF NO FEATURE THAT EXISTED BEFORE | 15:25:59 |
| 10 | MAY 28TH, 1998 THAT WAS NOT DESCRIBED IN THE PRIOR | 15:26:02 |
| 11 | ART. | 15:26:09 |
| 12 | Q    OKAY.  BUT HOW DID YOU KNOW THAT THAT PRIOR | 15:26:10 |
| 13 | ART DESCRIBED ALL OF THE FEATURES OF THE SYSTEM THAT | 15:26:14 |
| 14 | EXISTED AS OF MAY 28TH, 1998? | 15:26:17 |
| 15 | A    COULD YOU SAY YOUR QUESTION ONE MORE TIME. | 15:26:37 |
| 16 | Q    WELL, LET ME ASK A DIFFERENT QUESTION.  HOW | 15:26:45 |
| 17 | DID YOU KNOW WHAT FEATURES THE GOTO.COM LINE AD | 15:26:48 |
| 18 | SYSTEM HAD PRIOR TO MAY 28TH, 1998? | 15:26:53 |
| 19 | A    I LEARNED ABOUT WHAT THE SYSTEM CONTAINED | 15:27:07 |
| 20 | SUBSEQUENT TO MY JOINING THE COMPANY IN OCTOBER | 15:27:13 |
| 21 | THROUGH A NUMBER OF VARIOUS MEANS, EXPERIENTIAL | 15:27:17 |
| 22 | DISCUSSION. | 15:27:27 |
| 23 | Q    WAS YOUR KNOWLEDGE OF WHAT FEATURES THE | 15:27:29 |
| 24 | GOTO.COM LINE AD SYSTEM HAD PRIOR TO MAY 28, 1998 | 15:27:34 |
| 25 | BASED AT ALL ON DISCUSSIONS WITH ANY OF YOUR | 15:27:41 |

172

CONFIDENTIAL TRANSCRIPT - VOLUME I

```
 1   COPY OF THE MAY 19TH, 1998 PRESS RELEASE TO PATENT      16:13:10
 2   COUNSEL OR ANYONE ELSE PRIOR TO THE FILING OF THE       16:13:15
 3   361 PATENT APPLICATION?                                 16:13:17
 4        A    I BELIEVE SO BUT I CAN'T BE CERTAIN.          16:13:35
 5        Q    ON WHAT DO YOU BASE THAT BELIEF?              16:13:37
 6        A    COULD YOU REPEAT THE PREVIOUS QUESTION ONE    16:14:58
 7   MORE TIME.  I WANT TO MAKE SURE I ANSWERED              16:15:00
 8   CORRECTLY.                                              16:15:02
 9        Q    ON WHAT DO YOU BASE YOUR BELIEF THAT          16:15:03
10   SOMEONE PROVIDED A COPY OF THE MAY 19TH, '98 PRESS      16:15:06
11   RELEASE TO PATENT COUNSEL OR SOMEONE ELSE PRIOR TO      16:15:11
12   THE FILING OF THE 361 PATENT APPLICATION?               16:15:13
13        A    I KNOW THAT THERE WAS AN EXHAUSTIVE PRIOR     16:15:22
14   ART SEARCH DONE THAT WAS DONE CERTAINLY.  AND IN        16:15:24
15   CONJUNCTION WITH COUNSEL AS WELL AS THE OTHER           16:15:28
16   INVENTORS, I WAS CONFIDENT THAT ALL INFORMATION THAT    16:15:34
17   WAS RELEVANT TO THE APPLICATION HAD BEEN PROVIDED AS    16:15:36
18   PART OF THE DISCLOSURE PROCESS.                         16:15:39
19        Q    AND THE MAY 19TH, 1998 PRESS RELEASE IS       16:15:41
20   RELEVANT TO THE 361 PATENT APPLICATION, ISN'T IT?       16:15:45
21        A    INASMUCH AS IT DISCUSSES THINGS THAT WERE     16:15:52
22   AVAILABLE PREVIOUS TO THE INVENTION ITSELF, I'M NOT     16:17:08
23   SURE WHETHER OR NOT THAT CONSTITUTES RELEVANCE OR       16:17:13
24   NOT.                                                    16:17:18
25        Q    BUT YOU AND YOUR COINVENTERS AND THOSE        16:17:18
```

1        REPORTER'S CERTIFICATE

2

3

4        I, KAREN E. KAY, CSR NO. 3862, A

5   CERTIFIED SHORTHAND REPORTER IN AND FOR THE STATE OF

6   CALIFORNIA, DO HEREBY CERTIFY:

7        THAT PRIOR TO BEING EXAMINED, THE WITNESS

8   NAMED IN THE FOREGOING PROCEEDINGS WAS BY ME DULY

9   SWORN TO TESTIFY TO THE TRUTH, THE WHOLE TRUTH, AND

10  NOTHING BUT THE TRUTH;

11       THAT SAID PROCEEDINGS WERE TAKEN BY ME IN

12  SHORTHAND AT THE TIME AND PLACE HEREIN NAMED AND WAS

13  THEREAFTER TRANSCRIBED INTO TYPEWRITING UNDER MY

14  DIRECTION, SAID TRANSCRIPT BEING A TRUE AND CORRECT

15  TRANSCRIPTION OF MY SHORTHAND NOTES.

16       I FURTHER CERTIFY THAT I HAVE NO INTEREST

17  IN THE OUTCOME OF THIS ACTION.

18

19            JUNE 9TH, 2003

20

21

22

23       _____
         KAREN E. KAY
24       CSR NO. 3862

25

# ERRATA SHEET

## CHANGES TO TESTIMONY OF DARREN J. DAVIS

| PAGE | LINE | FROM | TO |
|---|---|---|---|
| 12* | 7 | VIA A PRODUCT CALLED TIMES LINK AT | VIA A PRODUCT CALLED TIMESLINK AT |
| 28 | 21 | RESULTS, SEARCH LISTINGS | RESULTS, COMPONENTS OF SEARCH LISTINGS |
| 30 | 11 | CONTAINED AN OVERTURE.COM PAGE | CONTAINED A GOTO.COM PAGE |
| 30* | 21 | THE DIRECT TRAFFIC CENTER | THE DIRECTRAFFIC CENTER |
| 36* | 9-10 | J. GALLINATTI | JAY GALLINATTI |
| 41* | 15-16 | ERIK HOVANIC | ERIK HOVANEC |
| 47 | 7 | I COULDN'T REMEMBER | I CAN'T REMEMBER |
| 87* | 19-20 | IN THE IDEA LAB BUILDING. | IN THE IDEALAB! BUILDING. |
| 88* | 13 | ERIK, | ERIC, |
| 100 | 6 | YES. | NO. |
| 113 | 25 | I BELIEVE SO, YES. | NO. IT WAS IN 2002. |
| 114 | 6-7 | BUT I BELIEVE SO, YES | BUT I DON'T BELIEVE SO. |
| 150 | 3-6 | I'M NOT AWARE OF A MEANS THAT COULD SPECIFICALLY CONTAIN A SEARCH LISTING INTO SPECIFIC DIMENSIONS LIKE THAT. I CAN'T THINK OF A SPECIFIC WAY. | I BELIEVE SO. |
| 152 | 7 | DISCERNIBLE FROM THIS PAGE. | DISCERNIBLE FROM THIS PAGE. IT COULD BE DISCERNED BY MOUSING OVER OR CLICKING AND HOLDING ONE OF THE URLS. |
| 159 | 3 | I KNOW OF NO OTHER WAY THAT A SITE LIKE | I KNOW THAT ONE WAY THAT A SITE LIKE |
| 168 | 10 | ANYTHING THAT WASN'T DISCLOSED IN THE PRIOR ART. | ANYTHING ELSE. |
| 172 | 22 | DISCUSSION. | DISCUSSION, AND I KNOW WHAT CAME INTO BEING AFTER I JOINED THE COMPANY. |
| 176 | 25 | NECESSARILY BEING RECORDED PRIOR TO MAY 28. | NECESSARILY BEING CORRECTLY RECORDED PRIOR TO MAY 28. |
| 189 | 21 | MAY HAVE BEEN IN ERROR | MAY HAVE BEEN WISHFUL THINKING |
| 200 | 23 | IF IT FUNCTIONED THAT WAY, | HYPOTHETICALLY, IF IT FUNCTIONED THAT WAY |

1

| 214 | 5-6 | THAT THE SYSTEM DESCRIBED IN THE MAY 19, 1998 PRESS RELEASE HAD NOT BEEN IMPLEMENTED | THAT THE SYSTEM DESCRIBED BY CLAIM 1 HAD NOT BEEN IMPLEMENTED |
|---|---|---|---|
| 244 | 13 | NO. | NO, BUT I KNOW WHAT FEATURES WERE ADDED TO THE SYSTEM AFTER I STARTED WORK AT GOTO.COM IN OCTOBER 1998. |
| 286 | 14 | MR. KWUN: YES. I DON'T BELIEVE THAT | MR. KWUN: YES. THE WITNESS: I DON'T BELIEVE THAT |

*These changes should be made globally throughout the transcript.

_____     7/9/03
SIGNATURE OF WITNESS                 DATE

2