Overture Services, Inc. v. Google Inc.

Doc. 186 Att. 3

**EXHIBIT C**

Dockets.Justia.com

CONFIDENTIAL

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

OVERTURE SERVICES, INC., a )
Delaware corporation,      )
                           )
         Plaintiff,        )
                           )
     vs.                   ) No. C02-01991 CRB
                           )
GOOGLE INC., a California  )
corporation,               )
                           )
         Defendant.        )
_____)

**CERTIFIED COPY**

CONFIDENTIAL

CONFIDENTIAL

DEPOSITION OF ELAINE K. LEE

San Francisco, California

Friday, July 18, 2003

Reported by:
RACHEL FERRIER

CSR No. 6948

Job No. 44447

Esquire Deposition Services
415.288.4280

CONFIDENTIAL

| | | |
|---|---|---|
| | 1 | graduate studies at Davis? |
| 09:17 | 2 | A   I was a systems engineering intern at Sun |
| | 3 | Microsystems from about May 1998 through August 1998. |
| 09:17 | 4 | Q   Was that a summer position? |
| 09:17 | 5 | A   It was kind of -- it was not really a summer |
| | 6 | position, but it was an intern -- classified as an |
| | 7 | intern position, so -- |
| 09:17 | 8 | Q   That's a temporary position -- |
| 09:18 | 9 | A   Temporary, right.  You are an employee of Sun |
| | 10 | Microsystems, but you are not a full-time employee. |
| 09:18 | 11 | Q   What did you do after ending that internship? |
| 09:18 | 12 | A   I took a job as an associate attorney at Brinks |
| | 13 | Hofer Gilson & Lione in Chicago. |
| 09:18 | 14 | Q   When did you start work there? |
| 09:18 | 15 | A   About probably September of 1998. |
| 09:18 | 16 | Q   When did you leave Brinks? |
| 09:18 | 17 | A   January of 2000. |
| 09:18 | 18 | Q   When you started working at Brinks, were you |
| | 19 | assigned to any particular group or practice area? |
| 09:18 | 20 | A   I was in the I guess patent -- patent area. |
| | 21 | You know, I focused on patents and also I focused on I |
| | 22 | guess the electrical computer area.  But I wasn't -- I |
| | 23 | think if there was an assignment, I think that was it. |
| 09:18 | 24 | Q   Okay. |
| 09:18 | 25 | A   Okay? |

10

CONFIDENTIAL

```
09:43  1      Q    Sure.
09:43  2           Is there anything that you can remember about
       3   any of the work that any of them had done that led you
       4   to conclude they should be listed as inventors, any of
       5   them?
09:44  6      A    I don't recall.  I can only -- I don't recall
       7   what specific contributions each inventor made.
09:44  8      Q    Okay.  Have you ever become aware that any
       9   errors were made in terms of identifying the inventors
       10  of what issued as the '361 patent?
09:44  11     A    No.  During my prosecution of this, I was not
       12  aware of any inventor errors.
09:44  13     Q    Have you subsequently become aware of any
       14  inventor errors?
09:44  15     A    I believe an inventor may have been added, but
       16  I -- I don't know the substance of that.
09:44  17     Q    Okay.  Do you have any understanding as to why
       18  inventors may have been added?
09:45  19     A    No.
09:45  20     Q    Do you know who those purported inventors are?
09:45  21     A    I recall that one was named -- one was Tom
       22  Soulanille.
09:45  23     Q    You had spoken with Tom Soulanille in -- strike
       24  that.
09:45  25          You had spoken with Tom Soulanille in
```

31

|       |    |                                                          |
|-------|----|----------------------------------------------------------|
|       | 1  | conjunction with drafting the original patent            |
|       | 2  | application; is that right?                              |
| 09:45 | 3  | A  Right.                                                |
| 09:45 | 4  | Q  Do you have any recollection of what it was           |
|       | 5  | that you and Mr. Soulanille had discussed?               |
| 09:45 | 6  | A  It was basically a very high-level technical          |
|       | 7  | discussion of what GoTo was -- you know, about GoTo's    |
|       | 8  | engineering efforts.                                     |
| 09:45 | 9  | Q  Okay.  Do you remember any specific technical         |
|       | 10 | feature that you discussed with him?                     |
| 09:45 | 11 | A  We didn't discuss any inventions, any -- you          |
|       | 12 | know, any specific technical features in detail.  It was |
|       | 13 | a very high-level discussion.                            |
| 09:46 | 14 | Q  Do you recall whether you spoke to                    |
|       | 15 | Mr. Soulanille once or more than once?                   |
| 09:46 | 16 | A  At least once.                                        |
| 09:46 | 17 | Q  Did you consider the question, in connection          |
|       | 18 | with drafting the patent application, whether            |
|       | 19 | Mr. Soulanille should be listed as an inventor?          |
| 09:46 | 20 | A  Yes, I believe I did.                                 |
| 09:46 | 21 | Q  What conclusion did you reach?                        |
| 09:46 | 22 | A  I believe that he -- as the claims as I had           |
|       | 23 | drafted -- I don't -- I don't recall, but I just recall  |
|       | 24 | discussing it with him.                                  |
| 09:46 | 25 | Q  Okay.  Well, does the fact that he wasn't             |

32

```
09:46   1    listed as one of the inventors in the original patent
        2    application lead you to believe that you had reached the
        3    conclusion that he should not be so listed?
        4        A    I can't really answer that.  I mean, I think --
        5    I do recall speaking with him, and I recall going
        6    through the analysis with him and discussing it also
        7    with several individuals involved in the patent
        8    prosecution.
09:47   9        Q    But can you remember anything -- you said you
       10    remember going through the analysis with Mr. Soulanille
       11    as to whether he was someone who would be an inventor;
       12    is that right?
09:47  13        A    I don't recall going through the analysis
       14    necessarily with him or -- but, we --
09:47  15        Q    Let me back up.
09:47  16             Do you remember considering the question
       17    whether Mr. Soulanille should be listed as an inventor?
09:47  18        A    I don't recall exactly, but I do recall that I
       19    discussed technical aspects with him.
09:47  20        Q    Okay.  Well, would it be your normal practice
       21    to -- if you spoke with an individual at a company who
       22    was involved in some way with an invention, to evaluate
       23    whether they were someone who ought to be listed as an
       24    inventor?
09:47  25        A    Sure.
```

33

Esquire Deposition Services
415.288.4280

|  |  |
|--|--|
| | 1   specific website, but it was publicly available. |
| 09:58 | 2   Q   Okay.  And to the extent that the -- that the |
| | 3   GoTo system had been available on GoTo's website, would |
| | 4   that fall within the penumbra of what you are defining |
| | 5   as publicly available? |
| 09:58 | 6   A   Yes. |
| 09:58 | 7   Q   Is there anything more specific that you can |
| | 8   recall about the information that you learned about when |
| | 9   it was that GoTo had a prior version of the GoTo system |
| | 10  available on the GoTo website or otherwise publicly |
| | 11  available? |
| 09:59 | 12  A   No. |
| 09:59 | 13  Q   Did you conduct any investigation into the |
| | 14  features of the system that were included within what |
| | 15  you have defined as this first release? |
| 09:59 | 16  A   I don't know if it was the first release. |
| 09:59 | 17  Q   Okay. |
| 09:59 | 18  A   I'm just saying -- |
| 09:59 | 19  Q   Fair enough.  In that case -- |
| 09:59 | 20  A   Okay. |
| 09:59 | 21  Q   -- do you recall conducting any investigation |
| | 22  into the features of the system that had previously been |
| | 23  made available on the GoTo website or otherwise made |
| | 24  publicly available? |
| 09:59 | 25  A   Yes. |

| | | |
|---|---|---|
| 09:59 | 1 | Q   Okay. What do you recall learning as a result |
| | 2 | of that investigation? |
| 09:59 | 3 | A   That there -- you know, I just learned about |
| | 4 | certain features that had been -- that were made |
| | 5 | publicly available and that they had -- they were |
| | 6 | working on a newer version that had some additional |
| | 7 | features. |
| 10:00 | 8 | Q   Okay. Can you remember any of the specific |
| | 9 | features that had been made publicly available |
| | 10 | previously? |
| 10:00 | 11 | A   No. |
| 10:00 | 12 | Q   Do you remember having conversations with |
| | 13 | anyone about whether it would be desirable to seek |
| | 14 | patent protection for any of those features? |
| 10:00 | 15 | A   Any of what features? |
| 10:00 | 16 | Q   The features that had previously been publicly |
| | 17 | available. |
| 10:00 | 18 | A   Prior to my speaking with them? |
| 10:00 | 19 | Q   Right. |
| 10:00 | 20 | A   I do recall discussing with them what can and |
| | 21 | cannot be patented related to those features. |
| 10:00 | 22 | Q   Okay. |
| 10:00 | 23 | A   You know, and what jurisdictions. |
| 10:00 | 24 | MS. DURIE: And I take it, Jason, that if I ask -- |
| | 25 | well, let me just make a record. |

43

CONFIDENTIAL

| | | |
|---|---|---|
| | 1 | made publicly available? |
| 10:09 | 2 | MR. WHITE: I'm going to object to that as being |
| | 3 | vague with respect to "the GoTo system." |
| 10:09 | 4 | BY MS. DURIE: |
| 10:09 | 5 | Q  "The GoTo system" as we have defined it, |
| | 6 | pay-for-placement system for advertising. |
| 10:10 | 7 | MR. WHITE: Same objection. |
| 10:10 | 8 | THE WITNESS: That was publicly available? |
| 10:10 | 9 | BY MS. DURIE: |
| 10:10 | 10 | Q  That was publicly available, whatever it was. |
| 10:10 | 11 | A  Okay. I recall that at the time of filing I |
| | 12 | believed that those claims encompassed new material that |
| | 13 | was not part of the GoTo system as we have defined it. |
| 10:10 | 14 | Q  Why is it that you remember that? |
| 10:10 | 15 | A  Because I do recall discussing this at length |
| | 16 | with various of the inventors. |
| 10:10 | 17 | Q  Was there any reason that you drafted the |
| | 18 | claims in such a way that they included features that |
| | 19 | you believed were not present in the original GoTo |
| | 20 | system that had been publicly released? |
| 10:11 | 21 | A  Yes. One reason would be to make this |
| | 22 | application eligible for foreign filing. |
| 10:11 | 23 | Q  Can you explain that to me. |
| 10:11 | 24 | A  If you file -- if you establish a priority date |
| | 25 | by filing in the U.S. Patent Office before the first |

50

CONFIDENTIAL

| | | |
|---|---|---|
| | 1 | contained within this IDS? |
| 10:36 | 2 | A   I believe a lot of the information came |
| | 3 | directly from GoTo employees. |
| 10:36 | 4 | Q   Okay.  Do you remember conducting or |
| | 5 | instructing that a search be conducted for relevant |
| | 6 | prior art? |
| 10:36 | 7 | A   Can you specify what you mean by "search." |
| 10:37 | 8 | Q   Well, any attempt to uncover relevant prior |
| | 9 | art. |
| 10:37 | 10 | A   Relevant -- |
| 10:37 | 11 | Q   Prior art. |
| 10:37 | 12 | A   I believe we asked -- |
| 10:37 | 13 | MR. WHITE:  Be careful not to reveal any |
| | 14 | attorney-client communications that you may have had. |
| 10:37 | 15 | THE WITNESS:  Right. |
| 10:37 | 16 | MR. WHITE:  You can answer "Yes" or "No." |
| 10:37 | 17 | THE WITNESS:  Okay.  Yes. |
| 10:37 | 18 | BY MS. DURIE: |
| 10:37 | 19 | Q   Okay.  Was that search conducted in part by |
| | 20 | individuals at GoTo? |
| 10:37 | 21 | A   They provided -- they provided information to |
| | 22 | me.  I don't know what activities they did to get that |
| | 23 | information. |
| 10:37 | 24 | Q   Did you independently conduct any search for |
| | 25 | potentially relevant prior art? |

61

CONFIDENTIAL

| | | |
|---|---|---|
| 10:37 | 1 | A  I may have conducted a search or asked that a |
| | 2 | search be conducted, but I don't recall exactly. |
| 10:37 | 3 | Q  You don't remember one way or the other? |
| 10:38 | 4 | A  I don't remember one way or the other. |
| 10:38 | 5 | Q  Okay.  Do you have any knowledge as to whether |
| | 6 | anyone else at Brinks conducted such a search? |
| 10:40 | 7 | A  No. |
| 10:40 | 8 | Q  Okay.  Let me show you what's previously been |
| | 9 | marked as Exhibit 10. |
| 10:40 | 10 | A  Mm-hmm. |
| 10:40 | 11 | Q  Have you had a chance to look at Exhibit 10? |
| 10:40 | 12 | A  Yeah. |
| 10:40 | 13 | Q  Have you seen it before? |
| 10:40 | 14 | A  I don't recall exactly. |
| 10:40 | 15 | Q  Do you have any recollection as to whether you |
| | 16 | had ever seen Exhibit 10 as of the date that the IDS was |
| | 17 | submitted? |
| 10:41 | 18 | A  I don't recall.  To the extent -- I mean, I do |
| | 19 | recall looking at press releases. |
| 10:41 | 20 | Q  Okay.  Do you have any understanding -- I will |
| | 21 | represent to you that Exhibit 10 is not listed on the |
| | 22 | IDS. |
| 10:41 | 23 | A  Okay. |
| 10:41 | 24 | Q  Do you have any understanding as to why that |
| | 25 | would be? |

62

10:41  1    A    No.
10:41  2    Q    Do you know whether GoTo provided a copy of
3    Exhibit 10 to Brinks Hofer prior to the submission of
4    the IDS?
10:41  5    A    Do I know whether they provided a copy of this
6    to us?
10:41  7    Q    Yeah.
10:41  8    A    No, I don't know. My general practice was, I
9    think I asked for press releases and they provided me
10   with -- whatever they provided me with I filed as -- I
11   included in the information disclosure statement.
10:41  12        So my -- you know, if I didn't receive it, I
13   obviously can't file what I didn't receive.
10:42  14   Q    Okay. But you don't know one way or the other
15   whether you did receive it; is that right?
10:42  16   A    Right.
10:42  17   Q    And I take it you also don't know one way or
18   the other whether you conducted any independent search
19   for press releases?
10:42  20   A    I worked with GoTo employees and they provided
21   me with press releases, yeah.
10:42  22   Q    So is it therefore fair to say that you did not
23   conduct any independent search for press releases apart
24   from relying on the information that was provided to you
25   by GoTo employees?

63

CONFIDENTIAL

| | | |
|---|---|---|
| 10:42 | 1 | A   Apart from GoTo and what was on the website. |
| 10:42 | 2 | Q   Okay. I would like you to -- I see that you |
| | 3 | still have Exhibit 3 in front of you. If you could have |
| | 4 | Claim 1 in front of you. |
| 10:43 | 5 | A   Right. |
| 10:43 | 6 | Q   And I would like to talk to you a little bit |
| | 7 | about Claim 1 and this press release that is Exhibit 10. |
| 10:44 | 8 | A   Mm-hmm. |
| 10:44 | 9 | Q   If you could turn to -- if you could take a |
| | 10 | look at the -- at Claim 1, the first element after the |
| | 11 | "Comprising," "Maintaining a database including a |
| | 12 | plurality of search listings wherein each search listing |
| | 13 | is associated with a bid amount and a search term." |
| 10:44 | 14 | A   Right. |
| 10:44 | 15 | Q   You had previously indicated that you weren't |
| | 16 | sure whether or not that element was met by the system |
| | 17 | that had been in prior public use. |
| 10:44 | 18 | A   Right. |
| 10:44 | 19 | Q   You see that the date of this press release is |
| | 20 | May 19th, 1998? |
| 10:44 | 21 | A   Mm-hmm. |
| 10:44 | 22 | Q   And the application was filed on May 28th, |
| | 23 | 1999, the patent application? |
| 10:44 | 24 | A   Okay. |
| 10:44 | 25 | Q   And I'll represent that to you, and you can see |

64

|       |    |                                                                |
|-------|----|----------------------------------------------------------------|
|       | 1  | the -- a year prior to the filing date of the                  |
|       | 2  | application or before?                                         |
| 11:35 | 3  |     A   No.                                                    |
| 11:35 | 4  |     Q   Did you draft paragraph 10?                            |
| 11:36 | 5  |     A   Yes.                                                   |
| 11:36 | 6  |     Q   Paragraph 10 does not state that it's being            |
|       | 7  | offered on information and belief; correct?                    |
| 11:36 | 8  |     A   I would have to -- I don't know.                       |
| 11:36 | 9  |     Q   Feel free to read it.                                  |
| 11:36 | 10 |     A   Okay.  Well, the phrase, "On information and           |
|       | 11 | belief" doesn't appear.                                        |
| 11:36 | 12 |     Q   Did you do anything to ascertain whether               |
|       | 13 | Mr. Davis had personal knowledge of the matters to which       |
|       | 14 | he was attesting in paragraph 10?                              |
| 11:36 | 15 |     A   I don't recall.  I would -- you know, my normal        |
|       | 16 | practice would be to make sure that everything that he's       |
|       | 17 | attesting to is truthful, so I would assume that I would       |
|       | 18 | have made -- I would have made that -- made certain of         |
|       | 19 | that.                                                          |
| 11:37 | 20 |     Q   Would it be your normal practice to ask an             |
|       | 21 | individual who is submitting a declaration whether they        |
|       | 22 | had personal knowledge of the statements that they were        |
|       | 23 | making?                                                        |
| 11:37 | 24 |     A   These statements say whether he knows or               |
|       | 25 | believes something and -- I mean, whether or not               |

92

|       |    |                                                                  |
|-------|----|------------------------------------------------------------------|
|       | 1  | something happened.  I mean, I think that's -- I think           |
|       | 2  | everything that he said -- I mean, I've -- I asked him           |
|       | 3  | if he's -- if he can attest to the truthfulness of those         |
|       | 4  | and he said, you know, he did.                                   |
| 11:37 | 5  |      MR. WHITE:  Careful not to reveal any specific              |
|       | 6  | communication.                                                   |
| 11:37 | 7  |      THE WITNESS:  Sure.                                         |
| 11:37 | 8  | BY MS. DURIE:                                                    |
| 11:37 | 9  |      Q   Let me ask you again.                                  |
| 11:37 | 10 |          Would it be your normal practice to ascertain          |
|       | 11 | whether a declarant had personal knowledge of the truth          |
|       | 12 | of the statements that he was making in the declaration?         |
| 11:37 | 13 |      A   I would ask him to ascertain that the                  |
|       | 14 | statements he's making are truthful.                             |
| 11:38 | 15 |      Q   Okay.  Would you -- would it be your practice          |
|       | 16 | to ask a declarant whether he had personal knowledge of          |
|       | 17 | the matters to which he was attesting in order to make a         |
|       | 18 | determination as to whether those matters should be              |
|       | 19 | stated on information and belief?                                |
| 11:38 | 20 |      A   If he has personal knowledge that -- you know,         |
|       | 21 | that information -- statements he was making on                  |
|       | 22 | information and -- you know, it's just if he has --              |
|       | 23 | whatever he has personal knowledge to, he should -- you          |
|       | 24 | know, he can attest to.                                          |
| 11:38 | 25 |      Q   Okay.  And so --                                       |

93

CONFIDENTIAL

| | | |
|---|---|---|
| 11:38 | 1 | A   Everything -- all the statements that he should |
| | 2 | make are truthful. |
| 11:38 | 3 | Q   Okay.  But you would then, I take it, try to |
| | 4 | find out what things he could say based on his own -- |
| | 5 | truthfully say based on his own personal knowledge and |
| | 6 | what things he could truthfully say based on information |
| | 7 | and belief, as your general practice? |
| 11:39 | 8 | A   Sure, to the -- yeah. |
| 11:39 | 9 | Q   Okay.  Do you have any reason to believe that |
| | 10 | you deviated from that general practice here? |
| 11:39 | 11 | A   No. |
| 11:39 | 12 | Q   Do you remember having discussions with anyone |
| | 13 | else at GoTo.com about whether they would be competent |
| | 14 | to submit a declaration in support of a petition to make |
| | 15 | special? |
| 11:39 | 16 | MR. WHITE:  Just a "Yes" or "No" answer to that |
| | 17 | question right now. |
| 11:39 | 18 | THE WITNESS:  Could you repeat the question. |
| 11:39 | 19 | BY MS. DURIE: |
| 11:39 | 20 | Q   Sure. |
| | 21 | Do you recall having discussions with anyone |
| | 22 | else at GoTo about whether they would be competent to |
| | 23 | submit a declaration in support of the petition to make |
| | 24 | special? |
| 11:39 | 25 | A   Yes. |

94

CONFIDENTIAL

11:42  1    A   Right, if they had that knowledge based on
       2    information and belief.
11:42  3    Q   Okay. So if Mr. Davis had told you that he
       4    didn't have personal knowledge of the features of the
       5    GoTo system more than a year prior to the filing date,
       6    based on your practice, do you believe that you would
       7    have drafted Exhibit 10 -- I mean, paragraph 10 of his
       8    declaration to reflect that the statements were being
       9    made on information and belief?
11:42  10       MR. WHITE:  Objection; calls for speculation.
11:42  11       THE WITNESS:  Can you ask the question again.
11:42  12   BY MS. DURIE:
11:42  13       Q   Sure.
11:42  14       MS. DURIE:  Can you read it back.
11:42  15          (Record read by Reporter as follows:
11:42  16          "Question:  So if Mr. Davis had told you that
       17          he didn't have personal knowledge of the
       18          features of the GoTo system more than a year
       19          prior to the filing date, based on your
       20          practice, do you believe that you would have
       21          drafted . . . paragraph 10 of his declaration
       22          to reflect that the statements were being made
       23          on information and belief?")
11:43  24       MR. WHITE:  Same objection.
11:43  25       THE WITNESS:  I may have drafted statement 10

97

|       |    |                                                                |
|-------|----|----------------------------------------------------------------|
|       | 1  | differently. Whether I would have said it's on                 |
|       | 2  | information and belief, I don't know.                          |
| 11:43 | 3  | BY MS. DURIE:                                                  |
| 11:43 | 4  | Q   Okay. In Mr. Davis's declaration, he states                |
|       | 5  | that he's made a rigid comparison of the claims of the         |
|       | 6  | patent application and the potentially infringing              |
|       | 7  | systems.                                                       |
| 11:43 | 8  | A   Mm-hmm.                                                    |
| 11:43 | 9  | Q   What is a rigid comparison?                                |
| 11:43 | 10 | A   I guess my understanding would be that you look            |
|       | 11 | at the claim elements and you also compare it -- you           |
|       | 12 | compare it to the system -- the system.                        |
| 11:44 | 13 | Q   Was it your understanding that any of the                  |
|       | 14 | claims in the patent application as it then -- as it           |
|       | 15 | existed as of the date of the petition to make special         |
|       | 16 | were limited to a system that charged advertisers on a         |
|       | 17 | cost-per-click basis?                                          |
| 11:44 | 18 | A   I'm sorry, can you repeat the question.                    |
| 11:44 | 19 | Q   Sure.                                                      |
| 11:44 | 20 |     Was it your understanding at the time you                  |
|       | 21 | submitted the petition to make special that any of the         |
|       | 22 | claims of the patent application, as it then existed,          |
|       | 23 | were limited to a system that charged advertisers on a         |
|       | 24 | cost-per-click basis?                                          |
| 11:45 | 25 | MR. WHITE: Objection; calls for a legal                        |

```
 1
 2
 3
 4              I, the undersigned, a Certified Shorthand
 5    Reporter of the State of California, do hereby certify:
 6              That the foregoing proceedings were taken
 7    before me at the time and place herein set forth; that
 8    any witnesses in the foregoing proceedings, prior to
 9    testifying, were placed under oath; that a verbatim
10    record of the proceedings was made by me using machine
11    shorthand which was thereafter transcribed under my
12    direction; further, that the foregoing is an accurate
13    transcription thereof.
14              I further certify that I am neither
15    financially interested in the action nor a relative or
16    employee of any attorney of any of the parties.
17              IN WITNESS HEREOF, I have this date
18    subscribed my name.
19
20    Dated:  _____AUG 0 5 2003_____
21
22
23                             _____
                               RACHEL FERRIER
24                             CSR No. 6948
25
```