# EXHIBIT A

LAW OFFICES
# KEKER & VAN NEST
## LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188
WWW.KVN.COM

CHRISTINE P. SUN
CPS@KVN.COM

October 17, 2003

**VIA FACSIMILE AND FIRST CLASS MAIL**

Charles M. McMahon, Esq.
Brinks Hofer Gilson & Lione
NBC Tower - Suite 3600
455 N. Cityfront Plaza Drive
Chicago, IL 60611
FAX (312) 321-4782

Re:   *Overture v. Google*

Dear Charlie:

   I write concerning Overture's privilege log, which based on our preliminary review contains many inaccurate designations. The following is a list of our concerns about Overture's designations and of categories of documents and individual documents that we believe may not be privileged. The list is not intended to be exhaustive and Google reserves the right to raise further objections to Overture's privilege log.

   1) Overture has designated each and every document on the log as protected by the attorney-client privilege, including numerous documents authored by J. Rauch and others which do not even purport to reflect privileged communications. *See, e.g.,* Page 18 entry for J. Rauch described as "Attorney notes regarding prosecution of U.S. patent application S/N 09/322,677;" Page 22 entry for J. Rauch and BHGL U.S. Docket Department described as "Correspondence regarding prosecution of U.S. patent application S/N 09/918, 241;" Page 21 entry for "BGHL" described as "Copy of the '361 patent with handwritten notes regarding the patent." Please carefully review the log and remove all improper designations of attorney-client privilege.

   2) Overture has designated as attorney-client privileged scores of "attorney notes" on a variety of topics without identifying who at Overture those attorneys purportedly communicated with. *See, e.g.,* Page 1 entries for J. Rauch and J. Naughton described as "Attorney notes reflecting privileged communication with client regarding prosecution of the '361 patent application." Please revise those entries to include the identity of the specific person(s) at Overture whose communications are purportedly reflected in the "attorney notes."

Charles M. McMahon, Esq.
October 17, 2003
Page 2

3) Overture has designated as attorney-client privileged scores of internal "correspondence" between and among Brinks Hofer attorneys and employees without identifying who at Overture those Brinks attorneys and/or employees purportedly communicated with. *See, e.g.*, Page 3 entries for J. Rauch and J. Naughton described as "Correspondence reflecting privileged communications with client regarding prosecution of the '361 patent application." Please revise those entries to include the identity of the specific person(s) at Overture whose communications are purportedly reflected in those internal communications between and among Brinks Hofer attorneys and staff members.

4) Overture has designated as attorney-client privileged scores of correspondence between Brinks Hofer and foreign patent counsel without identifying who at Overture those attorneys and/or employees purportedly communicated with. *See, e.g.*, Log at pp. 29-49. Please revise those entries to include the identity of the specific person(s) at Overture whose communications are purportedly reflected in the correspondence between Brinks and the foreign patent counsel.

5) To the extent that Overture no longer claims attorney-client privilege over documents (including attorney notes, internal correspondence, and drafts) related to the prosecution of the '361, its continuations, and foreign counterparts, please provide the legal and factual basis for Overture's claim that those documents are protected by attorney work product.

6) Overture has designated as attorney-client and work product privileged numerous internal communications between and among non-legal Overture employees. *See, e.g.*, Page 12 entries for T. Soulanille and P. Savitch described as "Correspondence reflecting privileged communication with client regarding prosecution of U.S. patent application S/N 10/061,388;" Page 62 entry for R. Bonney and D. Scholnick described as "Correspondence reflecting privileged communication with client regarding enforcement of patent rights." These communications on their face do not appear to be protected by either privilege. Thus, please produce them forthwith and provide the legal and factual basis for any remaining claims of privilege, including identifying the attorney(s) whose legal advice is purportedly reflected in these documents.

7) Overture has designated as attorney-client and work product privileged internal reports authored by P. Savich, who does not appear to have a law degree. *See, e.g.*, Page 9 and 10 entries for P. Savich described as "Internal report reflecting privileged communication with in-house counsel regarding Overture's intellectual property enforcement strategy." Please produce these reports forthwith and provide the legal and factual basis for any remaining claims of privilege, including identifying the specific attorney(s) and/or employee(s) at Overture whose communications are purportedly reflected in the reports.

8) Overture has designated as attorney-client and work product privileged communications and documents between Brinks Hofer and/or Overture employees with third parties B. Buck of Searchup.com, G. Thomas of Microsystems, and Xoom.com. Please produce

      these documents forthwith and provide the legal and factual basis for any remaining claims of privilege.

9) Overture has designated as attorney-client and work product privileged multiple drafts of various Overture agreements which were authored by "Overture" and are not purported to have been communicated to any Overture attorney. Please provide the legal and factual basis for your claims of privilege, including any claim that the documents constitute attorney work product.

10) Overture has designated as attorney-client and work product privileged multiple drafts of various Overture agreements which were authored by the "Overture Legal Team" and are not purported to have been communicated to any Overture employee. Please provide the legal and factual basis for your claims of privilege, including any claim that the documents constitute attorney work product.

11) There are multiple names on the log that are not identified in the "Privilege Log Names" key, including R. Turer, D. Idemoto, and J. Johnson. Please provide job title and company information for any and all individuals who appear on the privilege log.

In addition to our concerns about Overture's privilege log, I write to inform you that Google intends to move to compel all documents and communications related to the prosecution of the '361, should we be unable to resolve this matter informally. The information Google seeks includes all communications between and among the attorneys involved in the prosecution of the '361 patent application, all attorney work product documents related to the '361 prosecution, and all communications between and among Brinks Hofer and Overture/GoTo employees related the '361 prosecution. Google is entitled to privileged information related to the '361 prosecution for at least the following reasons.

First, Overture and Brinks Hofer have waived all claims of attorney-client and work product privilege by permitting John Rauch, Elaine Lee, and Darren Davis to testify about the substance of Brinks Hofer's work and communications between and among Brinks Hofer and Overture employees regarding the '361 patent prosecution. *See Aclara Biosciences, Inc. v. Caliper technologies Corp.*, 2001 WL 777083, *4-*9 (N.D. Cal. June 16, 2000). This testimony includes:

Deposition of John Rauch:

- Communications with Overture employees about the prior art search, 30;

- Impressions and communications with Elaine Lee about the preliminary amendment, 33-36;

- Investigation and communications with James Naughton regarding whether the claimed invention was in public use more than one year prior to the filing date of the '361 patent application, 46-50;

- Impressions and communications with Mr. Naughton about Darren Davis' Rule 132 declaration, 57-58, 77, 80, 83, 240;

- Impressions and communications with Mr. Davis about his Rule 132 declaration, 59, 85-86, 90-91, 171-176, 181-187, 234-235;

- Communications with Joshua Metzger, Esq., at GoTo about the '361 prosecution, 60;

- Impressions and communications with Thomas Soulanille about '361 inventorship issues, 65-66, 68-72; and

- Communications with Mr. Naughton about Naughton's telephone call to the supervisory patent examiner, 209.

Deposition of Elaine Lee:

- Communications with Mr. Naughton and GoTo employees about the pre-critical date system, 17-21;

- Impressions and communications with Mr. Naughton and GoTo employees, including Mr. Soulanille, about the determination of who to list as an inventor on the '361 application, 29-37, 126-128;

- Investigation and communications with GoTo employees, including Mr. Davis, regarding whether the claimed invention was in public use more than one year prior to the filing of the '361 application, 40-51, 112-113, 117-118, 125-126, 133-136;

- Impressions concerning the drafting of the '361 application to exclude prior art, 53-59, 164-166;

- Impressions and communications with GoTo employees about the prior art search, 61-64;

- Impressions and communications with Mr. Naughton and GoTo employees about the effect of the examiner's proposed amendments to claims, 71-72, 74-75;

- Impressions and communications with Mr. Naughton and GoTo employees, including Mr. Davis and Mr. Metzger, about the Davis declaration in support of petition to make special, 80-81, 85-88;

- Investigation and communications with GoTo employees regarding whether Mr. Davis was qualified to state whether the claimed invention was in public use more than one year prior to filing date, 90-95; and

Charles M. McMahon, Esq.
October 17, 2003
Page 5

- Impressions about the scope of the claims at the time of the petition to make special, 98-99.

Deposition of Darren Davis:

- Communications with counsel about prior art, 99-100, 186-187; and

- Communications with counsel about the determination of who to list as an inventor on the '361 application, 108, 113.

As Overture and Brinks Hofer have voluntarily disclosed otherwise privileged communications and work product regarding the prosecution of the '361 application, Google is entitled to all information on that subject matter.

Google is also entitled to all information on the subject matter of the '361 patent because any privilege over that material is abrogated by the crime-fraud exception. Based on the record thus far, Google believes that Overture and/or the prosecuting attorneys at Brinks Hofer made knowing, willful, and intentional material misrepresentations in connection with Mr. Davis' declaration in support of the petition to make special, and Mr. Rauch's representations in the April 6, 2000 Response – both of which were relied upon by the USPTO in issuing the patent. Specifically, with respect to the Davis declaration, Google believes that the prosecuting attorneys and Mr. Davis intentionally misrepresented to the patent office Mr. Davis' knowledge concerning the features of the potentially invalidating pre-critical date GoTo system. *See* Deposition of Darren J. Davis at 243-244 (admitting that he had no personal knowledge of the pre-critical date system). Regarding the April 6, 2000 Response, Google believes that the prosecuting attorneys intentionally misrepresented the content of Mr. Davis' Rule 132 declaration. Because privileged communications and work product material concerning the prosecution of the '361 patent are likely to have been used in furtherance of Brinks Hofer's and/or Overture's fraud on the patent office, that material is discoverable. *See General Am. Transp. Corp. v. Cryo-Trans, Inc.*, 159 F.R.D. 543, 545-46 (D. Or. 1995); *Bulk Lift Int'l Inc. v. Flexcon & Systems, Inc.*, 122 F.R.D. 493, 496 (W.D. La. 1988).

Because Google would like to resolve this matter expeditiously, I would appreciate a response to this letter by **Friday, October 24, 2003**.

Very truly yours,

*[signature]*

CHRISTINE P. SUN

CPS/lhl

320320.01