1  KEKER & VAN NEST, LLP
   JOHN W. KEKER - #49092
2  DARALYN J. DURIE - #169825
   CHRISTINE P. SUN - #218701
3  RAVIND S. GREWAL - #220543
   710 Sansome Street
4  San Francisco, CA 94111-1704
   Telephone: (415) 391-5400
5  Facsimile: (415) 397-7188

6  Attorneys for Defendant and Counterclaimant
   GOOGLE INC.
7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                         SAN FRANCISCO DIVISION

11

12 OVERTURE SERVICES, INC.,            | Case No. C 02-01991 JSW (EDL)

13     Plaintiff and Counterdefendant, | **REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND TESTIMONY RE: PROSECUTION OF THE '361 PATENT**

14     v.

15 GOOGLE INC.,

16     Defendant and Counterclaimant.  | Date:     August 24, 2004
                                       | Time:     9 a.m.
17                                     | Courtroom: E, 15th Floor
                                       | Judge:    Hon. Elizabeth D. Laporte

335757.02

REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS
AND TESTIMONY RE: PROSECUTION OF THE '361 PATENT
CASE NO. C 02-01991 JSW (EDL)

Dockets.Justia.com

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................. ii

I.  INTRODUCTION ..................................................................................................................... 1

II. ARGUMENT .............................................................................................................................. 1

    A.  Google met and conferred in good faith prior to filing its motion ........................... 1

        1.  Overture never informed Google that it had altered its position concerning the waiver and crime/fraud issues ............................................. 1

        2.  Overture improperly cites a protected communication to support its contention that Google's motion is premature .......................... 2

    B.  Overture waived the attorney-client privilege relating to the prosecution of the '361 patent ................................................................................. 4

        1.  Overture disclosed substantive attorney-client communications ................. 4

        2.  Overture's disclosures effect a broad privilege waiver .............................. 7

    C.  Overture has also waived the work-product protection ........................................... 8

    D.  Google has made a *prima facie* showing that the crime-fraud exception applies in this case ..................................................................................................... 10

        1.  Overture's pre-critical date system was not a mere prototype ................... 10

        2.  Mr. Rauch's mischaracterization of Mr. Davis' declaration constitutes *prima facie* evidence of deceptive intent ................................ 13

        3.  Mr. Davis' statements regarding the pre-critical date system .................... 14

    E.  Overture does not contest that Mr. Davis' statements in his Rule 102 Declaration waived privilege ................................................................................... 14

III. CONCLUSION ......................................................................................................................... 15

335757.02

REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS
AND TESTIMONY RE: PROSECUTION OF THE '361 PATENT
CASE NO. C 02-01991 JSW (EDL)

# TABLE OF AUTHORITIES

*ACLARA Biosciences, Inc. v. Caliper Techs. Corp.*,
  2001 WL 777083 (N.D. Cal. June 16, 2000) ................................................................... 6, 8, 9

*Advanced Cardiovascular System, Inc. v. C.R. Bard, Inc.*,
  144 F.R.D. 372 (N.D. Cal. 1992) ................................................................................................ 6

*Bio-Rad Laboratories, Inc. v. Pharmacia, Inc.*,
  130 F.R.D. 116 (N.D. Cal. 1990) ............................................................................................ 8, 9

*Conner Peripherals, Inc. v. Western Digital Corp.*,
  1993 WL 726815 at 5 (N.D. Cal. June 8, 1993) (same) ............................................................ 6

*Duplan Corp. v. Deering Milken, Inc.*,
  397 F. Supp. 1146 (D.S.C. 1974) ............................................................................................... 4

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*,
  234 F.3d 558 (Fed. Cir. 2000) ................................................................................................. 13

*Folb v. Motion Picture Industrial Pension & Health Plans*,
  16 F. Supp. 2d 1164 (C.D. Cal. 1998) ....................................................................................... 3

*Harrington Manufacturing Co. v. Powell Manufacturing Co.*,
  815 F.2d 1478 (Fed. Cir. 1986) ............................................................................................... 12

*In re Brigance*,
  792 F.2d 1103 (Fed. Cir. 1986) ............................................................................................... 12

*In re Regents of the University of California*,
  101 F.3d 1386 (Fed. Cir. 1996) ................................................................................................. 6

*Jack Winter, Inc. v. Karatron Co.*,
  50 F.R.D. 225 (N.D Cal. 1970) .................................................................................................. 5

*Keystone Ret. Wall System, Inc. v. Westrock, Inc.*,
  997 F.2d 1444 (Fed. Cir. 1993) ............................................................................................... 12

*Kingsland v. Dorsey*,
  338 U.S. 318 (1949) ................................................................................................................ 13

335757.02

REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS
AND TESTIMONY RE: PROSECUTION OF THE '361 PATENT
CASE NO. C 02-01991 JSW (EDL)

# TABLE OF AUTHORITIES

(continued)

*LaBounty Manufacturing, Inc. v. U.S. ITC*,
   958 F.2d 1066 (Fed. Cir. 1992) ..................................................................................................12

*Olam v. Congress Mortgage Co.*,
   68 F. Supp. 2d 1110 (N.D. Cal. 1999) ..........................................................................................3

*Paragon Podiatry Laboratories, Inc. v. KLM Laboratories, Inc.*,
   984 F.2d 1182 (Fed. Cir. 1993) ..........................................................................................13, 14

*Pennwalt Corp. v. Akzona Inc.*,
   740 F.2d 1573 (Fed. Cir. 1984) ..................................................................................................12

*Space Systems/Loral, Inc. v. Lockheed Martin Corp.*,
   1999 WL 33268060 (N.D. Cal. May 14, 1999) ............................................................................6

**STATE STATUTES**

Cal. Evid. Code § 703.5 .......................................................................................................................3

Cal. Evid. Code §§ 1115-28 ................................................................................................................3

Cal. Evid. Code § 1119(b) ...................................................................................................................3

**MISCELLANEOUS**

Paul R. Rice, *Attorney-Client Privilege in the United States*, § 6:11 at 73
   (2d ed. 1999) .................................................................................................................................5

REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS
AND TESTIMONY RE: PROSECUTION OF THE '361 PATENT
CASE NO. C 02-01991 JSW (EDL)

335757.02

# I.  INTRODUCTION

In its opposition brief, Overture concedes that it acted in bad faith prior to the issuance of the '361 patent.  Overture claims, however, that its bad faith was directed not to the Patent Office—as Google alleges in its counterclaims for inequitable conduct and fraud—but to the public and Overture's investors.  Overture now argues that despite its public pronouncements of the success of its pay-for-performance search engine more than a year before it filed the '361 patent application, those public pronouncements were false.  Thus, Overture argues, it did not mislead the Patent Office when it argued that the pre-critical date system did not anticipate the claimed invention.

To buttress those assertions during discovery in this case, Overture permitted testimony about the substance of its prosecuting attorneys' communications with its employees, as well as discovery into the mental impressions and legal analyses of its lawyers.  Despite these selective disclosures, Overture continues to maintain a blanket assertion of privilege over hundreds of related documents.  Thus, Google cannot test the *bona fides* of Overture's story.

The Court should not countenance Overture's attempts to stymie Google's legitimate discovery attempts.  It should grant Google's motion to compel.

# II.  ARGUMENT

**A.  Google met and conferred in good faith prior to filing its motion**

Overture initially opposes Google's motion on the ground that it is premature, because Google purportedly filed its motion without first meeting and conferring in good faith.  But Google did not move to compel until after the parties had conferred at length and both agreed that their dispute was intractable.

**1.  Overture never informed Google that it had altered its position concerning the waiver and crime/fraud issues**

Google complied with its obligations to meet and confer prior to filing its motion.  Google initiated the meet and confer process by detailing the legal and factual bases of its waiver contentions in a letter to Overture in October 2003.  *See* Supplemental Declaration of Christine P. Sun ("Supp. Sun Decl."), ¶ 3 and Exh. A.  The parties exchanged additional letters outlining

1

REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS
AND TESTIMONY RE: PROSECUTION OF THE '361 PATENT
CASE NO. C 02-01991 JSW (EDL)

335757.02

1  their respective positions. *Id.*, ¶¶ 4-6 and Exhs. B-D. Counsel for the parties then held a
2  telephone conference, in November 2003, to discuss Google's wavier and crime-fraud
3  contentions. At the end of the call, counsel for Google stated that because the parties could not
4  resolve their dispute, Google would file a motion to compel. One of Overture's attorneys
5  responded that Google should go ahead and file its motion. *Id.*, ¶ 8.

6      Google delayed for a number of months before filing the motion because the parties were
7  preoccupied with claim construction briefing, and because Google wanted to take the deposition
8  of Mr. Naughton, the third prosecuting attorney, before filing its motion. Declaration of
9  Ravind S. Grewal in Support of Reply Brief ("Grewal Reply Decl."), ¶ 2. At no point during this
10 period did Google state that it no longer intended to file the motion to compel. *Id*. And Overture
11 never indicated that its position on the wavier and crime-fraud issues had changed during the
12 time that it was on notice of Google's intention to file the motion. Supp. Sun Decl., ¶ 9. To the
13 contrary, during Mr. Naughton's deposition, Overture's attorney took an even more restrictive
14 view of what testimony would be allowed, and repeatedly instructed the witness not to answer
15 questions about communications with his colleagues at Brinks Hofer, as well as his client.
16 Overture's contention that Google should then have renewed its efforts to meet-and-confer, on a
17 matter that the parties had already exhausted, is puzzling. Overture's belated offer—after
18 Google had already filed it motion—of further discovery on issues of inventorship and the prior
19 art search conducted by GoTo.com's attorney ignores matters central to Google's inequitable
20 conduct claim, including documents relating to communications between the prosecuting
21 attorneys and inventors. *See* Declaration of Michael P. Wickey ("Wickey Decl."), Exh. D.
22 Thus, even if Google did somehow have an obligation to restart negotiations after both parties
23 agreed that their attempts to meet and confer had failed, those further negotiations would have
24 been fruitless.

25     **2.  Overture improperly cites a protected communication to support its contention that Google's motion is premature**
26

27     In arguing that Google's motion is premature, Overture notes that Google provided
28 Overture with a draft of the current motion as an attachment to its May 28, 2004 mediation brief,

2

REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS
AND TESTIMONY RE: PROSECUTION OF THE '361 PATENT
CASE NO. C 02-01991 JSW (EDL)

335757.02


and that Overture did not react to this draft motion because it "believed that no action would be taken on the motion unless the negotiations failed." Opp., p. 3; *see also* Wickey Decl., ¶ 5 and Exhs. B-C. Overture's reference to a written communication from Google that arose in the context of a Court-sponsored mediation is improper, and should be stricken.

The mediation in this case was conducted under the auspices of the standard JAMS confidentiality agreement. *See* Grewal Reply Decl., Exh. A. That agreement states that "[t]his mediation process is to be considered settlement negotiations for the purpose of all state and federal rules protecting disclosures made during such process from later discovery and/or use in evidence." *Id.*, § 1. The agreement explicitly incorporates the rigorous safeguards for the confidentiality of mediation communications set out in §§ 703.5 and 1115-28 of the California Evidence Code. *Id.*, § 2; *see also Olam v. Congress Mortgage Co.*, 68 F. Supp. 2d 1110, 1122 (N.D. Cal. 1999) (noting that California's "strong statutory protections for mediation communications" may exceed the scope of protections for mediation communications offered by this district's local rules or any federal common law mediation privilege). The statute protects from disclosure any writing "that is prepared for the purpose of, in the course of, or pursuant to, a mediation, or a mediation consultation[.]" Cal. Evid. Code, § 1119(b). Any party to a court-sponsored voluntary mediation has standing to enforce a prohibition on the disclosure or use of a protected communication by invoking the rule before the sponsoring court. *Olam*, 68 F. Supp. 2d at 1120 n.15.[1]

The mediation brief to which Overture refers is unquestionably a communication "prepared for the purpose of" a mediation. *See* Cal. Evid. Code § 1119(b). Overture's reference to Google's draft motion attached as an exhibit to that brief thus violates the mediation privilege, and must be stricken. Overture cannot rely on Google's provision of the draft brief during

---

[1] Even in the absence of the JAMS confidentiality agreement, Overture would be prohibited under the Northern District's Local Rules and federal common law from disclosing the contents of Google's mediation statement. *See* ADR-LR 6-11 ("[A]ll counsel and parties . . . shall treat as 'confidential information' the contents of the written Mediation Statements[.] 'Confidential information shall not be: . . . (2) disclosed to the assigned judge; or (3) used for any purpose . . . in any pending or future proceeding in this court."); *Folb v. Motion Picture Indus. Pension & Health Plans*, 16 F. Supp. 2d 1164, 1180 (C.D. Cal. 1998) (federal mediation privilege protects communications made in preparation for and during the course of a mediation).

3
REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS
AND TESTIMONY RE: PROSECUTION OF THE '361 PATENT
CASE NO. C 02-01991 JSW (EDL)

335757.02

1  settlement talks to explain its own failure to inform Google that it was purportedly willing to
2  reopen meet and confer discussions prior to Google's filing of this motion.  To the extent the
3  Court concludes otherwise, Google is prepared to address this issue at the hearing.

**B.    Overture waived the attorney-client privilege relating to the prosecution of the '361 patent**

### 1. Overture disclosed substantive attorney-client communications

Overture concedes—as it must—that Mr. Rauch and Ms. Lee disclosed the content of their communications with Overture employees during the prosecution of the '361 patent at least 11 separate times in their depositions.  *See* Opp. at 17-19.[2]  As set forth in greater detail in Google's opening brief, in these disclosures Mr. Rauch described Mr. Davis' statements that certain features of the claimed invention did not exist prior to the critical date, described his discussion with Mr. Davis concerning an appropriate response to the examiner's "final" rejection of all 68 claims of the '361 application in June 2000, and stated that he made representations to the Patent Office based on those conversations.  *See* Supplemental Declaration of Ravind S. Grewal ("Supp. Grewal Decl."), Ex. D at 85:8-20; 90:9-17; 173:16-175:24; 203:2-11.  Ms. Lee similarly described the content of her conversations with Mr. Davis as to the differences between the claimed invention and the pre-critical date system, and testified that she relied on information obtained in those conversations in prosecuting the patent application.  *See id.*, Ex. C at 92:24-93:4.

Overture attempts to distinguish a number of other instances wherein Mr. Rauch and Ms. Lee disclosed the substance of conversations they had with the inventors on the ground that these excerpts concerned the testifying attorney's understanding of a communication, rather than the

---

[2] Somewhat bizarrely, Overture argues at length that its disclosure of the mental impressions of and communications among its attorneys did not effect a waiver of the attorney-client privilege.  *See* Opp. at 16-17.  But Google does not argue that these disclosures—unless they concerned information obtained from a client—waived the attorney-client privilege.  Instead, the testimony of Mr. Rausch and Ms. Lee as to their legal opinions and conclusions effected a waiver of the work-product protection.  *See* Mot. at 17-19.  Of course, to the extent that Mr. Rauch and Ms. Lee testified as to internal attorney communications that concerned confidential client communications, that also effected a privilege waiver.  *See Duplan Corp. v. Deering Milken, Inc.*, 397 F. Supp. 1146, 1193 (D.S.C. 1974) (confidential client communications retain their privileged nature when disclosed from one attorney to another within a firm).

1  communication itself.  *See* Opp. at 17.  But this is too fine a distinction.  In each case, Mr. Rauch

2  or Ms. Lee disclose statements from their clients arising in the context of the '361 patent

3  prosecution while describing their understanding of the import of those statements.  For example,

4  Mr. Rauch testified that he understood that one limitation of Claim 1 and the entirety of Claim 15

5  of the '361 application were not present in the pre-critical date system because Mr. Davis told

6  him so:

7       Q.  [W]hen Mr. Davis told you with respect to Claim 15 a system as a whole is
         new, what you understood that to mean was the system as a whole had some
8           novelty; is that right?

9       A.  Right.

10       Q.  Okay.  Is there any reason that you – with respect to Claim 1 specified a
         limitation and with respect to Claim 15 simply said the invention as a whole – the
11           invention claimed as a whole is new?

12       A.  There is a reason.

13       Q.  Which is what?

14       A.  That's what Darren [Davis] told me.

15  Supp. Grewal Decl., Exh. D at 185:15-186:3; *see also id.* at 175:11-24, 184:21-185:2; 196:17-

16  197:6 (Rauch stating that his understanding of the features of the pre-critical date system and his

17  understanding of Davis' competence to file the Rule 132 Declaration derived from his

18  conversations with Davis); Exh. C at 42:21-43:7; 50:11-16 (Lee stating that the inventors told

19  her "at length" that the '361 claims included features not present in the pre-critical date system).

20       Overture argues that none of this testimony effects a privilege waiver because the

21  privilege does extend to factual information passed from applicant to attorney en route to the

22  patent office.  In such cases, Overture claims, the attorney is acting only as a "conduit."  *See*

23  Opp. at 18 (citing *Jack Winter, Inc. v. Karatron Co.*, 50 F.R.D. 225, 228 (N.D. Cal. 1970)).  But

24  as one commentator notes, "there appears to be little left of the conduit theory in the patent

25  context."  Paul R. Rice, *Attorney-Client Privilege in the United States*, § 6:11 at 73 (2d ed.

26  1999).  Indeed, numerous decisions in this district have expressly disfavored *Jack Winter*.

27  "[I]nventors and their patent lawyers often engage in quite substantial private dialogue as part of

28  the process of shaping and focusing a patent application, and . . . it is reasonable for them to

5
REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS
AND TESTIMONY RE: PROSECUTION OF THE '361 PATENT
CASE NO. C 02-01991 JSW (EDL)

335757.02

1  expect that dialogue to remain confidential. . . . [C]ommunications from inventor to patent
2  lawyer, even those that are entirely technical, remain presumptively protected by the attorney-
3  client privilege." *Advanced Cardiovascular Sys., Inc. v. C.R. Bard, Inc.*, 144 F.R.D. 372, 378
4  (N.D. Cal. 1992) (expressly rejecting *Jack Winter* rule that such communications are generally
5  unprotected by the privilege); *Space Systems/Loral, Inc. v. Lockheed Martin Corp.*, 1999 WL
6  33268060 at **1-2 (N.D. Cal. May 14, 1999) (same); *Conner Peripherals, Inc. v. Western
7  Digital Corp.*, 1993 WL 726815 at *5 (N.D. Cal. June 8, 1993) (same); *see also In re Regents of
8  the Univ. of California*, 101 F.3d 1386, 1391 (Fed. Cir. 1996) ("[c]onsultation with counsel
9  during patent prosecution meets the criteria of compliance with law and meeting legal
10 requirements, thereby reducing or avoiding litigation, and is within the scope of subject matter
11 that is subject to the attorney-client privilege").

12        As set forth above, Mr. Rauch and Ms. Lee defended themselves from the suggestion that
13 they intended to deceive the Patent Office in part by testifying that they relied on the assurances
14 of Mr. Davis and the other inventors that the pre-critical date system did not practice the
15 inventions claimed in the '361 patent. Their disclosure of the contents of confidential client
16 communications—even if some of those communications focused on technical aspects of
17 Overture's pre-critical system—effects a paradigmatic privilege waiver. *See ACLARA
18 Biosciences, Inc. v. Caliper Techs. Corp.*, 2001 WL 777083 (N.D. Cal. June 16, 2000) (privilege
19 waiver effected where prosecution counsel of party accused of inequitable conduct testified as to
20 his conversations with inventors).

21        Overture's second assertion, that the cited testimony is too "opaque" a reference to
22 attorney-client communications to effect a privilege waiver, is even weaker. In none of the cited
23 deposition testimony does either Mr. Rauch or Ms. Lee advise Mr. Davis "to comply with the
24 law generally." *See* Opp. at 18-19. Instead, the two attorneys disclosed the content of their
25 communications with Mr. Davis to demonstrate that they had a good faith basis for relying on his
26 representations about the shortcomings of the pre-critical date system. The testimony
27 purportedly illuminates why Mr. Rauch and Ms. Lee argued to the Patent Office that the pre-
28 critical date system was not prior art to the '361 patent; it is not "opaque."

1    Overture's current lead counsel, which joined the case after Google had deposed Mr.
2    Rauch and Ms. Lee, evidently agrees that such testimony is shielded by to the attorney-client
3    privilege (or at least did agree, until Google filed the present motion).  Heller Ehrman
4    represented Mr. Naughton at his deposition.  At that deposition, counsel for Overture interposed
5    privilege objections to a number of questions, including the questions:  "What do you recall
6    discussing with Mr. Davis about the investigation into dates and features of GoTo.com's
7    business?;" "[W]hat did you and Mr. Davis discuss about Exhibit 10 [a press release describing
8    the pre-critical date system]?;" and "Did you ever ask Mr. Kurt whether the precritical date
9    system maintained logs of clicks?"  Declaration of Ravind S. Grewal ("Grewal Decl."), Ex. Q at
10   76:7-11; 166:20-23; 213:3-10.  Yet both Mr. Rauch and Ms. Lee disclosed the substance of their
11   conversations with Mr. Davis on these exact topics.  *See*, *e.g.*, Supp. Grewal Decl., Exh. D at
12   90:9-17 (Mr. Rauch testifying that Davis "told me that the beta system was just an editorial
13   driven system, that what they referred to as the DTC system or the on-line access provided to the
14   advertisers was—wasn't existing in the beta system"); Exh. C at 92:24-93:4 (Ms. Lee stating that
15   Davis told her that he was competent to testify about the differences between the pre-critical date
16   system and claimed invention).  To invoke again the standard analogy, the Court should not
17   permit Overture now to shield from disclosure what it earlier thrust into the litigation to
18   challenge Google's inequitable conduct counterclaim.  Or put differently, Overture cannot claim
19   that the testimony of Mr. Rauch and Ms. Lee as to their conversations with the inventors is
20   discoverable because it falls within the (now disfavored) "conduit" exception of *Jack Winter*, but
21   then refuse to apply that same exception to Mr. Naughton's conversations with those inventors
22   during the pendency of the '361 application.
23   **2.   Overture's disclosures effect a broad privilege waiver**
24   The scope of the waiver that Overture suggests is far too narrow.  Google's inequitable
25   conduct allegations concern the state of mind of both Overture's prosecutors and inventors.
26   Overture (at least at one stage in the litigation) sought to defend itself by disclosing a number of
27   communications between attorneys and inventors regarding the features of the alleged precursor
28   system, and Mr. Davis' competence to testify about the differences between the precursor

7
REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS
AND TESTIMONY RE: PROSECUTION OF THE '361 PATENT
CASE NO. C 02-01991 JSW (EDL)

335757.02

1 systems and claimed inventions.  Overture cannot now limit its disclosures of those prosecution-
2 related communications:  the waiver must extend to all communications between the prosecuting
3 attorneys and the client.  *See ACLARA Biosciences, Inc. v. Caliper Tech. Corp.*, 2001 WL
4 777083 at *6 (N.D. Cal. June 16, 2000) ("it would be unfair to allow disclosure of only the
5 communications that ACLARA chooses.")

6 Overture's argument that *ACLARA* does not apply because in that case the client, rather
7 than the attorney, disclosed privileged information, misstates the facts and holding of that case.
8 In response to an inequitable conduct counterclaim, the plaintiff ACLARA permitted one of the
9 attorneys who prosecuted its patent to testify in deposition as to privileged communications
10 relating to the prosecution.  *Id.* at *2.  The Court held that the attorney's testimony regarding
11 privileged communications constituted a "voluntary disclosure" by the client, because the client
12 had consented to it.  *Id.* at *6 n.4.  The Court stated that a narrower waiver only results when an
13 attorney discloses privileged information *without* client consent, pursuant to the "self-defense
14 exception" to privilege.  *Id.*

15 Like ACLARA, Overture voluntarily consented to its patent attorneys' disclosure of
16 confidential prosecution-related communications.  Overture's attorneys could well have
17 instructed Ms. Lee and Mr. Rauch not to answer questions seeking to discover such information
18 (as they later instructed Mr. Naughton).[3]  It was Overture's decision affirmatively to permit Ms.
19 Lee and Mr. Rauch to testify as to privileged communications, and Overture must accept the
20 broad subject matter waiver that will result.  *See ACLARA* at *6 (ordering plaintiff to produce all
21 communications with the law firm that prosecuted its patent, once it permitted one attorney at
22 that firm to disclose privileged communications).

23 **C.  Overture has also waived the work-product protection**

24 As Overture notes, work product is discoverable if the party seeking discovery makes a
25 showing that the "information is directly at issue and the need for production is compelling."

---

[3] Ms. Lee, Mr. Rauch and Mr. Naughton were all represented at their depositions by counsel that appeared on behalf of Overture.  *See* Grewal Reply Decl., Exh. B at 5:24-6:1; C at 3:18-19; D at 4:18-19.

8
REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS
AND TESTIMONY RE: PROSECUTION OF THE '361 PATENT
CASE NO. C 02-01991 JSW (EDL)

335757.02

1  *See Bio-Rad Labs., Inc. v. Pharmacia, Inc.*, 130 F.R.D. 116, 122 (N.D. Cal. 1990).  Overture
2  opposes Google's motion on the ground that it has not voluntarily placed the mental impressions
3  of its patent attorneys at issue.  Overture argues instead that Google injected these issues into the
4  case, by filing an inequitable conduct counterclaim and noticing Mr. Rauch's deposition.

5        Overture is wrong on the law.  If a party discloses the thoughts and impressions of one of
6  its attorneys to defend itself from an inequitable conduct charge, it voluntarily puts opinion work
7  product at issue.  *See ACLARA*, 2001 WL 777083 at *9 (by disclosing the thoughts and
8  impressions of one of its attorney's in response to an inequitable conduct claim, party placed
9  information ordinarily subject to work product protection "at issue"); *Bio-Rad Labs., Inc. v.*
10 *Pharmacia, Inc.*, 130 F.R.D. 116, 123 (N.D. Cal. 1990) (by engaging prosecuting patent attorney
11 as an expert consultant, party placed that attorney's thoughts and impressions at issue).

12       In permitting Mr. Rauch to testify as to the reasons behind his decision not to conduct an
13 independent investigation into the pre-critical date system and the ground for his belief that Mr.
14 Davis was a competent witness to testify on the features of that system, and Ms. Lee to describe
15 the investigation she conducted while preparing submissions to the Patent Office, Overture
16 likewise has placed information ordinarily subject to the work product protection squarely at
17 issue.  *See* Supp. Grewal Decl., Exh. C at 42:21-43:7; 50:11-16; Exh. D at 46:13-47:20; 50:6-17;
18 57:21-58:2; 90:9-17.  Google now has a compelling need for the production of the withheld
19 documents, because otherwise Google will be unable to challenge Mr. Rauch's and Ms. Lee's
20 characterization of Overture's submissions to the Patent Office during the '361 prosecution.[4]  *See*
21 *Bio-Rad*, 130 F.R.D. at 123 (work product protection waived once patentee placed its patent
22 attorney's opinions at issue by hiring him as an expert; to hold otherwise would "effectively
23 preclude [the alleged infringer] from meaningful cross-examination").

24       Overture's request for a narrow waiver—should the Court grant Google's motion to

---

[4] Indeed, Overture's attorney instructed Mr. Naughton not to answer questions concerning the substance of his conversation with Mr. Rauch about a press release (describing Overture's pre-critical date system) cited as prior art by the examiner, but permitted Mr. Rauch to recount his version of the *identical* conversation.  *See* Grewal Decl., Exh. Q at 166:8-11; Supp. Grewal Decl., Exh. D at 46:21-47:20.

9
REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS
AND TESTIMONY RE: PROSECUTION OF THE '361 PATENT
CASE NO. C 02-01991 JSW (EDL)

335757.02

1 compel discovery of work product materials—ignores the facts.  The mental impressions of all
2 three attorneys involved in the prosecution are at issue here:  Ms. Lee's because she prepared and
3 submitted Mr. Davis' Rule 102 Declaration (in which Mr. Davis both testified that some existing
4 search services infringe must infringe claim 1 of the '361 patent because they displayed features
5 also contained in Overture's pre-critical date system, and represented that Overture had
6 conducted a thorough prior art search); Mr. Rauch's because he falsely asserted to the Patent
7 Office that Mr. Davis' Rule 132 Declaration specified limitations of each independent claim of
8 the '361 patent that were not present in the pre-critical date system; and Mr. Naughton's because
9 Mr. Rauch said that he relied on Mr. Naughton in forming his own understanding of the pre-
10 critical date system.  Thus, the Court should order Overture to open to discovery all work
11 product relating to the prosecution of the '361 patent.

**D.    Google has made a *prima facie* showing that the crime-fraud exception applies in this case**

      **1.    Overture's pre-critical date system was not a mere prototype**

15 Overture argues that Mr. Davis did not misrepresent the features of the pre-critical date
16 system to the patent office when he stated that the early search service did not contain all the
17 limitations of claim 1 of the '361 patent.  Overture now argues that the pre-critical date system
18 was a "crude prototype" that was more a testing ground for Overture's concept than a working
19 pay-for-performance search engine.  And Overture contends that Mr. Davis was correct in
20 representing that the system could not bill advertisers each time a user clicked on a search listing,
21 and so could not meet all of the limitations of claim 1 of the '361 patent.  Overture thus concedes
22 that "[t]he truth about revenues is critical to the issue of whether Mr. Davis misrepresented the
23 capability of the beta system to the Patent Office while the '361 patent was undergoing
24 prosecution.  *See* Opp. at 7.  We could not agree more:  but the testimony of Overture's own
25 attorneys, inventors and employees shows Overture's representations to the Patent Office were
26 false.
27 First, Overture's own employees testified that Overture was both able to track user click-
28 throughs and received revenues from advertisers for its paid-listing service prior to the critical

10
REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS
AND TESTIMONY RE: PROSECUTION OF THE '361 PATENT
CASE NO. C 02-01991 JSW (EDL)

335757.02

1   date.  By March 1998, the Overture search engine generated logs of activity on its website that
2   recorded a range of information, including the time that a user clicked on a search listing in
3   Overture's search results page, the URL of the advertiser's website, the user search term, the key
4   word and bid amount entered by the advertiser, and the rank of the search result in the search
5   listing page.  Grewal Reply Decl., Exh. E at 43:12-45:12; Exh. F.  Months prior to the critical
6   date, Overture's system could thus record retrieval request events and bid amounts and come up
7   with a total dollar amount to bill an advertiser.  *Id.*, Exh. E at 48:12-49:16.  Indeed, Overture was
8   generating cost-per-click billing reports by April 1998.  *Id.* at 51:13-52:6; *see also* Exh. G at
9   95:7-97:4 (testimony of Overture's Fed. R. Civ. Pr. 30(b)(6) witness on the features present in
10  the pre-critical date system that Overture could not only record clicks and bid amounts for
11  particular clients, but record different bid amounts for the same advertiser before the critical
12  date).  And, Overture indisputably received revenue from its advertisers in the pre-critical period.
13  Jay Gallinatti, a former Vice President of Sales and Service at GoTo.com, testified that
14  GoTo.com received checks from advertisers prior to June 1998.  Wickey Decl., Exh. J at 32:24-
15  33:23.  Overture also received emails from advertisers submitting billing information (including
16  credit card numbers) well before the critical date.  *See* Amended Declaration of Christine P. Sun
17  ("Amended Sun Decl."), Exh. A, 52-65.  And, as detailed at length in Google's opening Motion,
18  Overture trumpeted in press releases and a business plan that it had signed up dozens of
19  advertisers in the three months prior to the critical date whom it was charging on a cost-per-click
20  basis, and calculated how much revenue it had derived from them.[5]

21       Overture nevertheless claims that its undisputed capacity to record and ascribe revenue to
22  retrieval request events in a database, prior to the critical date, is irrelevant.  Overture now argues
23  for the first time that what is truly novel about the invention embodied in claim 1 of the '361
24  patent is that it records click-throughs not in a database, but in "an account database."  Overture
25  argues that because its "database" did not become an "account database" until the Fall of 1998,
26  the pre-critical date system could not have anticipated the claimed invention, and Mr. Davis

---

28  [5] Indeed, Overture first achieved $10 in virtual revenue from user click-throughs in April 1998.
    *See* Declaration of Christine P. Sun in Support of Reply Brief ("Sun Reply Decl."), Exh. A at

11
REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS
AND TESTIMONY RE: PROSECUTION OF THE '361 PATENT
CASE NO. C 02-01991 JSW (EDL)

335757.02

1   mischaracterized nothing to the Patent Office.[6]

2       Overture's reliance on the "account database" as the sole distinguishing feature of the
3   claimed invention over the pre-critical date system finds no support in the prosecution history.
4   Critically, Overture never told the Patent Office that the only thing new about claim 1 was that
5   the database in which clicks were recorded was now called an "account database." *See* Grewal
6   Decl., Exhs. F-G, J, L-N.[7]  Indeed it is difficult to conceive what Overture would have said.  The
7   database in which clicks were previously logged allowed Overture to generate reports on
8   individual accounts, showing their clicks (and associated dollars) on a daily basis.  Grewal Reply
9   Decl., Exh. E at 48:12-49:16; Exh. G at 95:7-97:4.  It is a little hard to imagine how this did not
10  constitute an "account database" and even harder to imagine how an "account database" would
11  not have been an obvious extension of the pre-critical date system.  *See Keystone Ret. Wall Sys.,*
12  *Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1451-52 (Fed. Cir. 1993) (Section 102(b) statutory bar to
13  patentability extends to obvious extensions of prior art device).  Certainly the examiner was

---

88:24-89:17.

[6] It now seems that Overture may also be suggesting that its pre-critical date system was an experimental use.  *See* Opp. at 12.  A patentee can escape the one-year "public use" bar to patentability imposed by section 102(b) if the prior use or sale of the claimed invention was experimental: "[A] use or sale is experimental for purposes of section 102(b) if it represents a bona fide effort to perfect the invention or to ascertain whether it will answer its intended purpose. . . . If any commercial exploitation does occur, it must be merely incidental to the primary purpose of experimentation to perfect the invention." *Pennwalt Corp. v. Akzona Inc.*, 740 F.2d 1573, 1580-81 (Fed. Cir. 1984).  But "[a]n inventor's expression of his subjective intent to experiment is, without more, of little value, particularly if expressed after initiation of litigation." *In re Brigance*, 792 F.2d 1103, 1108 (Fed. Cir. 1986); *see also Harrington Mfg. Co. v. Powell Mfg. Co.*, 815 F.2d 1478, 1481 n.3 (Fed. Cir. 1986) ("an inventor's subjective intent is immaterial when objective evidence points otherwise").  An inventor's "failure to communicate to any of the purchasers or prospective purchasers of his device that the sale or offering was for experimental use is fatal to his case." *LaBounty Mfg., Inc. v. U.S. ITC*, 958 F.2d 1066, 1072 (Fed. Cir. 1992).

  Overture represented that its pre-critical date system was just the opposite of an "experimental use."  It trumpeted the launching of a fully-functional "pay for performance" search engine in the press, and opened accounts and accepted checks from dozens of advertisers in the pre-critical period. *See* Grewal Decl., Exhs. B-D.  The system, of course, ran on a publicly-available website.  Mr. Rauch testified that he never considered the pre-critical date system to be an experimental use, and did not suggest that possibility to the patent office.  *See* Grewal Reply Decl., Exh. C at 51-53.  Indeed, none of Ms. Lee, Mr. Rauch nor Mr. Davis, in their many communications and declarations to the Patent Office, ever raised experimental use as a defense to the § 102 statutory bar.  *See* Grewal Decl., Exhs. F-G, J, L-N.

[7] Nor does the '361 patent specification describe the implementation of such an "account database."

---

12

REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS
AND TESTIMONY RE: PROSECUTION OF THE '361 PATENT
CASE NO. C 02-01991 JSW (EDL)

335757.02

never afforded an opportunity to consider whether an "account database" was a novel invention justifying patentability.

### 2. Mr. Rauch's mischaracterization of Mr. Davis' declaration constitutes *prima facie* evidence of deceptive intent

Overture argues that Mr. Rauch's response to the examiner's rejection of the '361 claims on the basis of the pre-critical date system shows no evidence either of materiality or of fraudulent intent. Yet the response evinces both these elements on its face.

Mr. Rauch falsely represented that Mr. Davis' Rule 132 Declaration "specified limitations" of each of the eight independent claims that were not present in the pre-critical date system. Mr. Davis' declaration did not disclose *any* specific limitations for four of those independent claims. At his deposition, Mr. Rauch testified that he was aware that a limitation is only "a feature or an aspect of a claim." Wickey Decl., Exh. M at 179:1; *see also Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 234 F.3d 558, 563 n. 1 (Fed. Cir. 2000) ("limitation" is synonymous with "element"). And Mr. Rauch testified that some of the elements of claim 15 undoubtedly were present in the pre-critical date system. Wickey Decl., Exh. M at 180:6-9 (Rauch did not understand Davis to be saying that all of the limitations in claim 15 were new); 182:1-184:6 (Rauch understood that Davis identified only one new limitation in Claim 1, which has many of the same limitations as claim 15). Thus Mr. Rauch's remarks were unquestionably false. Nor was that falsity an accident. Deceptive intent usually must be shown by circumstantial evidence. *Paragon Podiatry Lab., Inc. v. KLM Lab., Inc*., 984 F.2d 1182, 1189-90 (Fed. Cir. 1993) ("'smoking gun' evidence is not required in order to establish an intent to deceive"). Here, Mr. Rauch has admitted that his statement to the Patent Office was not a mistake. He read Mr. Davis' declaration before he submitted his remarks. And remarkably, even today, Mr. Rauch is unapologetic about his misrepresentation to the examiner. *See* Sun Reply Decl., Exh. B at 251:16-20. The evidence of deceptive intent is overwhelming.

Overture's response, in essence, is to argue that because the examiner could also review Mr. Davis' declaration itself, Mr. Rauch's mischaracterization was *per se* immaterial. First, this ignores that "the relationship of attorneys to the Patent Office requires the highest degree of

13
REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS
AND TESTIMONY RE: PROSECUTION OF THE '361 PATENT
CASE NO. C 02-01991 JSW (EDL)

335757.02

1   candor and good faith." *Kingsland v. Dorsey*, 338 U.S. 318, 319 (1949).  Second, the materiality
2   of Mr. Rauch's false statement is borne out by the fact that, after receiving his remarks, the
3   examiner abandoned his rejections based on the § 102(b) statutory bar, ultimately allowing the
4   '361 patent to issue.  Finally, this misrepresentation must be considered in conjunction with the
5   other evidence of fraud on the patent office in making a determination as to whether Google had
6   made a *prima facie* showing that the crime/fraud exception applies.

7          **3.    Mr. Davis' statements regarding the pre-critical date system**

8          Overture argues that Mr. Davis did not purport to give testimony to the Patent Office
9   regarding the pre-critical date system based on his personal knowledge, but instead merely
10  testified as to the limitations of the pending claims.  Overture is incorrect.  Mr. Davis claimed
11  personal knowledge that the invention defined by claim 1 of the '361 patent "was not in
12  existence in May, 1998, but only was implemented in the system after that time."  Grewal Decl.,
13  Exh. D at ¶ 4.  He could not, of course, claim any personal knowledge as to the features present
14  in the May 1998 system, because he did not yet work at Overture.  Mr. Davis' representation was
15  at best grossly misleading.  The examiner specifically asked for an affidavit rather than a
16  representation from an attorney, presumably because the examiner wanted testimony from a
17  person with actual knowledge.  And the Federal Circuit has held patents to be unenforceable
18  where an applicant failed to comply with a similar directive.  *See Paragon Podiatry Lab.*, *Inc. v.*
19  *KLM Lab., Inc.*, 984 F.2d 1182, 1191 (Fed. Cir. 1993) (sustaining trial judge's finding of
20  inequitable conduct summary judgment on the basis of submission of deceptive Rule 132
21  affidavit).

22         For these reasons, the Court should inspect the communications between Mr. Davis and
23  Mr. Rauch, as well as Mr. Rauch's notes concerning the '361 prosecution, to determine whether
24  Overture must produce these materials to Google under the crime-fraud exception.

25  **E.    Overture does not contest that Mr. Davis' statements in his Rule 102 Declaration waived privilege**
26

27         Overture does not oppose – and thus concedes – that Mr. Davis' representation in his
28  Rule 102 Declaration that Overture and its attorneys had disclosed all relevant prior art to the

14
REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS
AND TESTIMONY RE: PROSECUTION OF THE '361 PATENT
CASE NO. C 02-01991 JSW (EDL)

335757.02

1  Patent Office effects a privilege waiver. The Court should, therefore, compel Overture to
2  produce any documents and information relating to the prior art search that Overture conducted
3  prior to the submission of that October 22, 1999 declaration. The Court should also compel Mr.
4  Naughton to testify as to his communications with Mr. Davis about the prior art search reflected
5  in Overture's August 27, 1999 IDS. *See* Motion at 19.

### III.  CONCLUSION

For all of the reasons stated above, Google requests that the Court find that Overture has waived the attorney-client privilege and work product protection on the subject matter of the '361 patent prosecution. In the alternative, the Court should find that Google has made a prima facie showing that the crime-fraud exception applies, and conduct an *in camera* inspection of the communications between Mr. Davis and Mr. Rauch, as well as Mr. Rauch's notes concerning the '361 prosecution. Finally, to the extent that the Court has any remaining doubts about these issues, Google requests that the Court conduct an evidentiary hearing into whether the crime/fraud exception applies.

Dated:  July 30, 2004

RESPECTFULLY SUBMITTED,

KEKER & VAN NEST, LLP

By:   /s/ Darlyn J. Durie
DARALYN J. DURIE
Attorneys for Defendant and
Counterclaimant GOOGLE INC.

335757.02

15
REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS
AND TESTIMONY RE: PROSECUTION OF THE '361 PATENT
CASE NO. C 02-01991 JSW (EDL)